UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| IN RE PLATINUM-BEECHWOOD LITIGATION | ) ) ) ) ) ) | 18-cv-6658 (JSR) |
| SENIOR HEALTH INSURANCE COMPANY OF PENNSYLVANIA,<br><br>        Plaintiff,<br><br>v.<br><br>BEECHWOOD RE LTD., B ASSET MANAGER, L.P., BEECHWOOD BERMUDA INTERNATIONAL, LTD., BEECHWOOD RE INVESTMENTS, LLC, a/k/a BEECHWPPD RE INVESTORS, LLC, MOSHE M. FEUER a/k/a MARK FEUER, SCOTT A. TAYLOR, DAVID I. LEVY, and DHRUV NARAIN,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 18-cv-6658 (JSR) |

MARTIN TROTT and CHRISTOPHER )
SMITH, as Joint Official Liquidators and )
Foreign Representatives of PLATINUM )
PARTNERS VALUE ARBITRAGE FUND )
L.P. (in Official Liquidation) and )
PLATINUM PARTNERS VALUE )
ARBITRAGE FUND L.P. (in Official )   18-cv-10936 (JSR)
Liquidation), )
)
       Plaintiffs, )
)
v. )
)
PLATINUM MANAGEMENT (NY) LLC, )
MARK NORDLICHT, DAVID LEVY, )
ESTATE OF URI LANDESMAN, )
MURRAY HUBERFELD, DAVID )
BODNER, DANIEL SMALL, JOSEPH )
SANFILIPPO, DAVID OTTENSOSER, )
BERNARD FUCHS, MICHAEL )
NORDLICHT, MICHAEL KATZ, KEVIN )
CASSIDY, SETH GERSZBERG, EZRA )
BEREN, NAFTALI MANELA, DANIEL )
SAKS, MOSHE M. FEUER a/k/a MARK )
FEUER, SCOTT TAYLOR, DHRUV )
NARAIN, PLATINUM PARTNERS )
BLACK ELK OPPORTUNITIES FUND )
LLC, PLATINUM PARTNERS BLACK )
ELK OPPORTUNITIES FUND )
INTERNATIONAL LTD., MORRIS )
FUCHS, LEON MYERS, MN )
CONSULTING NY LLC, ESTATE OF )
JULES NORDLICHT, ESTATE OF )
SOLOMON ENGLANDER, ESTATE OF )
GERTRUDE ENGLANDER, ROCKWELL )
FULTON CAPITAL, DITMAS PARK )
CAPITAL L.P., PLATINUM F.I. GROUP, )
LLC, FCBA TRUST, AARON PARNES, )
SARAH PARNES, SHMUEL FUCHS )
FOUNDATION, SOLOMON WEDIGER, )
OLIVE TREE HOLDINGS, LLC, )
MERIDIAN CAPITAL FOUNDATION, )
HUANG LAI TSU HSIA, HUBERFELD )
FAMILY FOUNDATION, MIND, BODY )
AND SOUL CO. LIMITED, TWOSONS )
CORPORATION, GRD ESTATES LTD., B )

ii

ASSET MANAGER LP, B ASSET )
MANAGER II LP, BEECHWOOD RE )
INVESTMENTS, LLC, BEECHWOOD RE )
HOLDINGS, INC., BEECHWOOD RE )
LTD., BEECHWOOD BERMUDA )
INTERNATIONAL LTD., BAM )
ADMINISTRATIVE SERVICES LLC, )
ILLUMIN CAPITAL MANAGEMENT LP, )
BRE BCLIC PRIMARY, BRE BCLIC SUB, )
BRE WNIC 2013 LTC PRIMARY, BRE )
WNIC LTC SUB, BBIL ULICO 2014 )
TRUST, BEECHWOOD TRUST NO. 1, )
BEECHWOOD TRUST NO. 2, )
BEECHWOOD TRUST NO. 3, )
BEECHWOOD TRUST NO. 4, )
BEECHWOOD TRUST NO. 5, )
BEECHWOOD TRUST NO. 6, )
BEECHWOOD TRUST NO. 15, )
BEECHWOOD TRUST NO. 16, )
BEECHWOOD TRUST NO. 17, )
BEECHWOOD TRUST NO. 18, )
BEECHWOOD TRUST NO. 19, )
BEECHWOOD TRUST NO. 20, )
BEECHWOOD RE INVESTMENTS, LLC )
SERIES A, BEECHWOOD RE )
INVESTMENTS, LLC SERIES B, )
BEECHWOOD RE INVESTMENTS, LLC )
SERIES C, BEECHWOOD RE )
INVESTMENTS, LLC SERIES D, )
BEECHWOOD RE INVESTMENTS, LLC )
SERIES E, BEECHWOOD RE )
INVESTMENTS, LLC SERIES F, )
BEECHWOOD RE INVESTMENTS, LLC )
SERIES G, BEECHWOOD RE )
INVESTMENTS, LLC SERIES H, )
BEECHWOOD RE INVESTMENTS, LLC )
SERIES I, JOHN DOES 1-100, MEADOWS )
CAPITAL LLC, ABRAHAM C. )
GROSSMAN, DAVID GICHTIN, ORA )
GICHTIN, GOLDA WILK, THE ESTATE )
OF MARCOS KATZ, ADELA KATZ, )
ROCKWELL FULTON CAPITAL, L.P. )
)
Defendants. )

iii

MELANIE L. CYGANOWSKI, as Equity Receiver for PLATINUM PARTNERS CREDIT OPPORTUNITIES MASTER FUND LP, PLATINUM PARTNERS CREDIT OPPORTUNITIES FUND (TE) LLC, PLATINUM PARTNERS CREDIT OPPORTUNITIES FUND LLC, PLATINUM PARTNERS CREDIT OPPORTUNITIES FUND INTERNATIONAL LTD., PLATINUM PARTNERS CREDIT OPPORTUNITIES FUND INTERNATIONAL (A) LTD., and PLATINUM PARTNERS CREDIT OPPORTUNITIES FUND (BL) LLC,

     Plaintiffs,

v.

BEECHWOOD RE LTD., BEECHWOOD RE INVESTMENTS, LLC, B ASSET MANAGER LP, B ASSET MANAGER II LP, BEECHWOOD RE HOLDINGS, INC., BEECHWOOD BERMUDA INTERNATIONAL, LTD., BEECHWOOD BERMUDA LTD., BAM ADMINISTRATIVE SERVICES LLC, BRE BCLIC 2013 LTC PRIMARY, BRE BCLIC 2013 LTC SUB, BRE WNIC 2013 LTC PRIMARY, BRE WNIC 2013 LTC SUB, MOSHE M. FEUER a/k/a MARK FEUER, FEUER FAMILY TRUST, TAYLOR-LAU FAMILY TRUST, SCOTT A. TAYLOR, SENIOR HEALTH INSURANCE COMPANY OF PENNSYLVANIA, FUZION ANALYTICS, INC., BANKERS CONSECO LIFE INSURANCE COMPANY, WASHINGTON NATIONAL INSURANCE COMPANY, CNO FINANCIAL GROUP, INC. 40/86 ADVISORS, INC., JOHN DOES 1-100,

     Defendants.

18-cv-12018 (JSR)

iv

| | |
|---|---|
| WASHINGTON NATIONAL INSURANCE COMPANY and BANKERS CONSECO LIFE INSURANCE COMPANY, | ) ) ) |
| | ) |
|     Cross-Claim Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| MOSHE M. FEUER a/k/a MARK FEUER, FEUER FAMILY TRUST, SCOTT A. TAYLOR, TAYLOR-LAU FAMILY TRUST, BEECHWOOD RE LTD, BEECHWOOD RE HOLDINGS, INC., B ASSET MANAGER LP,  BAM ADMINISTRATIVE SERVICES LLC, BEECHWOOD BERMUDA LTD., BEECHWOOD BERMUDA INTERNATIONAL, LTD., | ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
|     Cross-Claim Defendants. | ) ) ) |

WASHINGTON NATIONAL INSURANCE )
COMPANY and BANKERS CONSECO )
LIFE INSURANCE COMPANY, )
                                                        )
     Third-Party Plaintiffs, )
                                                        )
v. )
                                                        )
MARK NORDLICHT, MURRAY )
HUBERFELD, DAVID BODNER, )
DAVID LEVY, RICK HODGDON, WILL )
SLOTA, DANIEL SMALL, DAVID LEFF, )
NAFTALI MANELA, DAVID )
OTTENSOSER, HOKYONG KIM a/k/a )
STEWART KIM, DANIEL SAKS a/k/a )
DANNY SAKS, PAUL POTEAT, DHRUV )
NARAIN, BEECHWOOD CAPITAL )
GROUP, LLC, PB INVESTMENT )
HOLDINGS LTD., BEECHWOOD RE )
INVESTMENTS, LLC, SERIES A, )
BEECHWOOD RE INVESTMENTS, LLC, )
SERIES B, BEECHWOOD RE )
INVESTMENTS, LLC, SERIES C, )
BEECHWOOD RE INVESTMENTS, LLC, )
SERIES D, BEECHWOOD RE )
INVESTMENTS, LLC, SERIES E, )
BEECHWOOD RE INVESTMENTS, LLC, )
SERIES F, BEECHWOOD RE )
INVESTMENTS, LLC, SERIES G, )
BEECHWOOD RE INVESTMENTS, LLC, )
SERIES H, BEECHWOOD RE )
INVESTMENTS, LLC, SERIES I, )
BEECHWOOD TRUST NO. 1, )
BEECHWOOD TRUST NO. 2, )
BEECHWOOD TRUST NO. 3, )
BEECHWOOD TRUST NO. 4, )
BEECHWOOD TRUST NO. 5, )
BEECHWOOD TRUST NO. 6, )
BEECHWOOD TRUST NO. 7, )
BEECHWOOD TRUST NO. 8, )
BEECHWOOD TRUST NO. 9, )
BEECHWOOD TRUST NO. 10, )
BEECHWOOD TRUST NO. 11, )
BEECHWOOD TRUST NO. 12, )
BEECHWOOD TRUST NO. 13, )
BEECHWOOD TRUST NO. 14, )

| | |
|---|---|
| BEECHWOOD TRUST NO. 15, | ) |
| BEECHWOOD TRUST NO. 16, | ) |
| BEECHWOOD TRUST NO. 17, | ) |
| BEECHWOOD TRUST NO. 18, | ) |
| BEECHWOOD TRUST NO. 19, | ) |
| BEECHWOOD TRUST NO. 20, | ) |
| and LINCOLN INTERNATIONAL LLC, | ) |
| | ) |
| Third-Party Defendants. | ) |

## ANSWER, CROSS-CLAIMS AND THIRD-PARTY COMPLAINT OF BANKERS CONSECO LIFE INSURANCE COMPANY and <u>WASHINGTON NATIONAL INSURANCE COMPANY</u>

ALSTON & BIRD LLP
Adam J. Kaiser
John M. Aerni
Daniella P. Main
Jenna C. Polivy
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
(212) 210-9400

## TABLE OF CONTENTS

**Page**

Jurisdiction and Venue ......................................................................................................7

The Receiver's Allegations ...............................................................................................7

Claims for Relief ...........................................................................................................63

Affirmative Defenses .....................................................................................................63

First Affirmative Defense (Failure to State a Claim upon Which Relief May be
Granted) ...........................................................................................................64

Second Affirmative Defense (Statute of Limitations) ................................................64

Third Affirmative Defense (*In Pari Delicto*) .............................................................64

Fourth Affirmative Defense (Laches) .......................................................................64

Fifth Affirmative Defense (Estoppel) .......................................................................64

Sixth Affirmative Defense (Waiver) .........................................................................64

Seventh Affirmative Defense (Ratification) ...............................................................64

Eighth Affirmative Defense (Unclean Hands)............................................................64

Ninth Affirmative Defense (Failure to Mitigate)........................................................65

Tenth Affirmative Defense (Standing) ......................................................................65

Eleventh Affirmative Defense (Good Faith)...............................................................65

Twelfth Affirmative Defense (Election of Remedies)..................................................65

Thirteenth Affirmative Defense (No Causation) ........................................................65

Fourteenth Affirmative Defense (Release or Discharge of Claims)...........................65

Fifteenth Affirmative Defense (Accord and Satisfaction)..........................................66

Sixteenth Affirmative Defense (Lack of Personal Jurisdiction)................................66

v

Seventeenth Affirmative Defense (Assumption of Risk/Culpable Conduct) .............66

Eighteenth Affirmative Defense (Alleged Damages Caused by Other Parties) ..........66

Nineteenth Affirmative Defense (Failure to Plead with Specificity)..........................66

Twentieth Affirmative Defense (The *Wagoner* Rule) ................................................66

Twenty-First Affirmative Defense (Obligations Met)..................................................67

Twenty-Second Affirmative Defense (RICO Claims Based on Securities

Transactions)...............................................................................................................67

Twenty-Third Affirmative Defense (Arbitration)........................................................67

Twenty-Fourth Affirmative Defense (No Conveyance) ...............................................67

Twenty-Fifth Affirmative Defense (Security Interest) ................................................67

Twenty-Sixth Affirmative Defense (No Standing)........................................................68

Reservation of Rights to Assert Additional Defenses..................................................67

Cross-Claims and Third-Party Claims ............................................................................68

Introduction......................................................................................................................68

Jurisdiction and Venue.....................................................................................................71

The Cross-Claim and Third-Party Plaintiffs ..........................................................72

The Racketeers, the Structure of their Conspiracy and a Sampler of their Roles and

Faudulent Acts .................................................................................................................72

Statement of Facts............................................................................................................95

  A.  The Start of the Conspiracy ....................................................................................95

  B.  The Co-Conspirators Defraud WNIC and BCLIC....................................................100

      a.  Misrepresentations about the Control and Ownership of Beechwood.............101

      b.  Misrepresentations about Beechwood's Capital ...............................................103

      c.   Misrepresentations about Beechwood's Investment Plans ..............................106

         1.   The leveraging scheme .............................................................106

         2.   The false promise of safe investments ........................................110

         3.   The lie about Beechwood's investment process ..........................111

         4.   The lie about Levy's qualifications.............................................112

         5.   The lie about "independent" valuations .....................................114

      d.   Misrepresentations about the Beechwood Management Team .......................115

C.   Key Provisions of the Reinsurance Agreements.........................................................123

D.   The Fraud Continues after the Reinsurance Agreements are Signed ........................128

      a.   Continuing Misrepresentations about Ownership and Control of
         Beechwood .........................................................................................131

      b.   Continuing Misrepresentations about Beechwood's "Capital".....................133

      c.   Continuing Misrepresentations about Beechwood's Management Team.......137

      d.   Continuing Misrepresentations about How Beechwood Invested Trust
         Assets ...............................................................................................140

E.   Secreting the Proceeds of the Racketeering Activity.................................................150

F.   Beechwood Re's Many Breaches of the Reinsurance (and Accompanying)
     Agreements ..............................................................................................................151

G.   The Platinum House of Cards Collapses and Beechwood is Revealed as
     Integrated with It......................................................................................................159

H.   The EDNY Indictment and SEC Complaint.............................................................162

I.   Beechwood Re Is Placed Into Controllership ...........................................................163

J.   Beechwood Bermuda's Assets Are Sold ..................................................................164

K.  Lincoln Actively Participates in the Fraud ................................................................164

    a.  Platinum Engages Lincoln to Further the Fraud ...........................................164

        1.  ██████████████████████████████████████
██████████████████████████████████████
████ ...............................................................................................165

        2.  ████████████████████████████████████████████
████████████ ..........................................................................169

    b.  ████████████████████████████████████████████
██████████ ............................................................................170

        1.  ████████████████████████████████████████████
████████████ ..........................................................................171

        2.  ████████████████████████████████████████████
██████████████ .....................................................................181

        3.  █████████████████████████████████████████████ ....184

        4.  ███████████████████████████████████████ ..........192

    c.  Lincoln Terminates the Relationship ...........................................................195

Claims for Relief ...................................................................................................205

    Count One .........................................................................................................205

    Count Two ........................................................................................................208

    Count Three ......................................................................................................210

    Count Four ........................................................................................................213

    Count Five.........................................................................................................215

    Count Six ..........................................................................................................217

Count Seven ................................................................................................................219

Count Eight .................................................................................................................223

Count Nine ..................................................................................................................226

Count Ten.....................................................................................................................227

Count Eleven................................................................................................................228

Count Twelve...............................................................................................................231

Count Thirteen .............................................................................................................234

Count Fourteen.............................................................................................................236

Count Fifteen ...............................................................................................................239

Count Sixteen...............................................................................................................240

Count Seventeen ..........................................................................................................241

Count Eighteen.............................................................................................................242

Count Ninteen ..............................................................................................................243

Washington National Insurance Company ("**WNIC**") and Bankers Conseco Life Insurance Company ("**BCLIC**"), by and through their counsel, hereby respond as follows to the Complaint of Melanie L. Cyganowski (the "**Receiver**"):

1.     WNIC and BCLIC deny each and every allegation in Paragraph 1[1], except admit that (a) "by this action," the Receiver "joins the chorus of complaints seeking redress for the massive fraudulent scheme masterminded by the now indicted and/or convicted insiders of Platinum (collectively consisting of the PPCO Funds, the PPVA Funds (defined below) and affiliated entities) – *e.g.,* Mark Nordlicht, Murray Huberfeld and David Levy," (b) "[t]he scheme was fueled by the money ploughed into Platinum and its portfolio companies that were frequently speculative, unprofitable or distressed by their self-created, fraudulent vehicle . . . 'Beechwood,' fronted by fellow fraudsters, Moshe M. Feuer and Scott Taylor," and (c) "[o]ther complaints filed in this district alleging the same fraudulent scheme (and which corroborate the allegations of the Equity Receiver based on her own investigation) include: *Trott, et al. v. Platinum Management (NY) LLC, et al.,* 18 Civ. 10936- JSR (the **'PPVA Complaint'**); *Senior Health Insurance Co. of Pa. v. Beechwood Re Ltd., et al.,*18 Civ. 10936-JSR (as amended, the **'SHIP Complaint'**); and *Bankers Conseco Life Ins. Co., et. al. v. Moshe M. Feuer, et al.,* 16 Civ. 07646-ER (stayed) (the **'BLIC Complaint,'** and, with the PPVA Complaint, the SHIP Complaint, and this Complaint, the **'Complaints'**)."

2.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2, except (a) admit that "the object of the fraudulent scheme – indeed, what everyone now agrees was a racketeering enterprise – was the personal

---

[1] "Paragraph __" – with a capital "P" – refers to the numbered paragraph in the Receiver's Complaint.

enrichment of the Platinum and Beechwood insiders, who collectively generated for themselves tens of millions of dollars in management fees, incentive fees, false profits and other remuneration over the years," and (b) to the extent that Paragraph 2 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

3.      WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3, except to the extent that Paragraph 3 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

4.      WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4, except (a) admit that "the [I]nsiders' desperate need for capital to stave off redemption requests and to fund increasingly cash-thirsty portfolio companies led to the creation of Beechwood in or around 2013," that Beechwood was a "reinsurance company fronted by two previous reinsurance professionals, Feuer and Taylor, [was] conceived as the solution to [Platinum's] growing liquidity crisis," and that "[b]y obtaining access to hundreds of millions of dollars in insurance assets, the [I]nsiders would be able to channel into [Platinum] and its distressed portfolio companies the much-needed cash to fund redemptions and meet portfolio company demands without having to worry about redemption requests that inevitably would follow the procurement of new investor money or having to sell distressed, illiquid assets in order to generate liquidity," and (b) to the extent that Paragraph 4 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC

2

have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

5.     WNIC and BCLIC deny each and every allegation in Paragraph 5, except (a) admit that "Beechwood was capitalized and staffed by [Platinum] insiders and employees" and that "Beechwood [] and their related entities were formed as a mechanism to funnel money into Platinum [], a Manhattan-based hedge fund founded by Mark Nordlicht[], Murray Huberfeld[], and David Bodner [] to prolong their existing Ponzi-like scheme [h]idden in plain sight," (b) deny knowledge or information sufficient to form a belief as to the fraudsters' state of mind, and (c) to the extent that Paragraph 5 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

6.     WNIC and BCLIC state that, to the extent that Paragraph 6 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents and admit that "[h]aving procured BCLIC's, WNIC's and SHIP's funds, Beechwood – exactly according to plan – proceeded to channel hundreds of millions of dollars, often through [Platinum], primarily into investments in [Platinum] and their flagging portfolio companies to meet redemption requests and other operating needs of [Platinum]."

7.     WNIC and BCLIC deny each and every allegation in Paragraph 7, except that, to the extent that Paragraph 7 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

8.      Because Paragraph 8 sets forth (a) legal conclusions and/or, (b) the Receiver's requests for relief, WNIC and BCLIC state that they have no obligation to respond to this Paragraph.  To the extent that WNIC and BCLIC have any obligation to respond to this Paragraph, they deny that the Receiver is entitled to the relief she requests.

9.      WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9, except to the extent that Paragraph 9 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

10.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10, except to the extent that Paragraph 10 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

11.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11, except to the extent that Paragraph 11 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

12.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12.

13.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13.

14.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14.

15.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15.

16.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17.

18.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18, except admit the existence of "a group of now indicted, convicted and/or otherwise malfeasant individuals, including Mark Nordlicht, Murray Huberfeld, David Bodner, David Levy, Daniel Small, Uri Landesman and Joseph SanFilippo (the "**Platinum Insiders**")."

19.     WNIC and BCLIC admit the allegations of Paragraph 19.

20.     WNIC and BCLIC admit the allegations of Paragraph 20.

21.     WNIC and BCLIC admit the allegations of Paragraph 21.

22.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22.

23.     WNIC and BCLIC admit the allegations of Paragraph 23.

24.     WNIC and BCLIC admit the allegations of Paragraph 24.

25.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25, except admit that Beechwood Bermuda Ltd. is and, at all material times hereinafter mentioned, was an entity organized under Bermuda law, and

was a reinsurance company that was licensed as an insurer in Bermuda and regulated by the

Bermuda Monetary Authority.

26.    WNIC and BCLIC admit the allegations of Paragraph 26.

27.    WNIC and BCLIC deny each and every allegation in Paragraph 27.

28.    To the extent that Paragraph 28 identifies the persons or entities that the Receiver

includes under the names "Beechwood," "Beechwood Entities" or "Beechwood Insiders," WNIC

and BCLIC have no obligation to respond to this Paragraph, but WNIC and BCLIC admit that

"Beechwood was a fraudulent vehicle . . . as a reinsurance company created by the Platinum

Insiders, in conjunction with Moshe Feuer and Mark Taylor . . . to gain access to insurance

[funds] that would then be channeled into the Platinum Funds, which, in varying degrees,

required liquidity to meet redemption requests and continue funding its distressed portfolio."

29.    WNIC and BCLIC admit the allegations of Paragraph 29.

30.    WNIC and BCLIC admit the allegations of Paragraph 30.

31.    WNIC and BCLIC admit the allegations of Paragraph 31.

32.    WNIC and BCLIC admit the allegations of Paragraph 32.

33.    To the extent that Paragraph 33 identifies the persons or entities that the Receiver

includes under the names "Individual Beechwood Defendants" and "Beechwood Defendants,"

WNIC and BCLIC have no obligation to respond to this Paragraph.

34.    WNIC and BCLIC admit the allegations of Paragraph 34.

35.    WNIC and BCLIC admit the allegations of Paragraph 35.

36.    WNIC and BCLIC deny each and every allegation in Paragraph 36, except admit

that BCLIC is an insurance company domiciled in New York.

37.    WNIC and BCLIC admit the allegations of Paragraph 37.

38.     WNIC and BCLIC admit the allegations of Paragraph 38.

39.     WNIC and BCLIC admit the allegations of Paragraph 39.

40.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40.

## JURISDICTION AND VENUE

41.     Because Paragraph 41 sets forth legal conclusions, WNIC and BCLIC state that they have no obligation to respond to this Paragraph.

42.     Because Paragraph 42 sets forth legal conclusions, WNIC and BCLIC state that they have no obligation to respond to this Paragraph.

43.     Because Paragraph 43 sets forth legal conclusions, WNIC and BCLIC state that they have no obligation to respond to this Paragraph.

## THE RECEIVER'S ALLEGATIONS

44.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 44, except admit that "the 'PPCO Funds'" is a "group of funds that were managed by several entities led by Nordlicht and sometimes collectively referred to as 'Platinum Partners.'"

45.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 45.

46.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46, except admit that the Platinum funds "and entities that operated them – sometimes collectively referred to as 'Platinum Partners' – were founded by three individuals: Nordlicht, Murray Huberfeld [] and David Bodner []."

47.     WNIC and BCLIC admit the allegations of Paragraph 47.

48.     WNIC and BCLIC admit the allegations of Paragraph 48, except deny knowledge or information sufficient to form a belief as to the truth of last sentence of Paragraph 48, except admit that David Levy is Huberfeld's nephew.

49.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 49.

50.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50.

51.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51.

52.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52.

53.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53.

54.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 54.

55.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55.

56.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56.

57.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57.

58.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 58.

59.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59.

60.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 60.

61.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 61.

62.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 62.

63.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 63.

64.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64.

65.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 65.

66.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 66.

67.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67.

68.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68.

69.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 69, except admit that certain of the Platinum "[f]unds' investments were so illiquid, so overvalued, and had no ready market."

9

70.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70.

71.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71.

72.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72.

73.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73.

74.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74.

75.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 75.

76.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76.

77.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77.

78.      WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78, except to the extent that Paragraph 78 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

79.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79, except to the extent that Paragraph 79 purports to

10

paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

80.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80.

81.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81, except to the extent that Paragraph 81 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

82.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82, except to the extent that Paragraph 82 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

83.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83.

84.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84.

85.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85.

86.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86.

87.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87.

88.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 88.

89.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89, except admit that "the Platinum Insiders were engaged in fraud" and that "there were individuals in place who could have stopped the wrongdoing."

90.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90.

91.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91.

92.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92.

93.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93.

94.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 94, except to the extent that Paragraph 94 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

95.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 95, except to the extent that Paragraph 95 purports to

paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

96.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96, except to the extent that Paragraph 96 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

97.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 97, except admit that certain of the Platinum "[f]unds' assets [were] primarily made up of illiquid Level 3 assets [and] some of the largest positions were significantly overvalued."

98.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98.

99.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 99, except to the extent that Paragraph 99 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

100.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 100.

101.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 101.

13

102.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 102, except admit that certain of the Platinum "[f]unds' assets were highly illiquid Level 3 assets."

103.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 103, except to the extent that Paragraph 103 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

104.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 104, except to the extent that Paragraph 104 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

105.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105, except to the extent that Paragraph 105 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

106.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 106, except admit that certain of the assets in Platinum "[f]und's investment portfolio . . . were greatly overstated and the companies in which it invested required constant and significant infusions of capital."

14

107. WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 107, except admit that certain of the Platinum funds' "assets were concentrated in illiquid Level 3 assets that were grossly overvalued by the Platinum Defendants and did not provide [Platinum] with a source of readily available and adequate liquidity to meet its needs."

108. WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 108, except (a) admit that certain of the Platinum funds' "securities assets were in highly illiquid (and overvalued) limited liability companies and debt interests in overvalued companies in the volatile energy industry," and (b) to the extent that Paragraph 108 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

109. WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 109, except to the extent that Paragraph 109 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

110. WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 110.

111. WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 111, except (a) admit that Platinum "also greatly overrepresented the value of its debt and equity positions in Golden Gate Oil," and (b) to the extent that Paragraph 111 purports to cite to or paraphrase the contents of documents that speak

for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

112.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 112, except to the extent that Paragraph 112 purports to cite to or paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

113.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 113, except (a) admit that the Platinum funds "overreported their income" and that "the principals of Platinum Partners paid themselves distributions, fees and other compensation from the [Platinum] [f]und[s] based, in part, upon returns," and (b) to the extent that Paragraph 113 purports to cite to or paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

114.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114, except admit "[t]he illiquid nature of [certain of] the [Platinum] [f]unds' investments, which were overvalued and underwater investments in need of constant infusions of capital."

115.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115, except to the extent that Paragraph 115 purports to cite to or paraphrase the contents of documents that speak for themselves, WNIC and BCLIC

have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

116.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 116, except to the extent that Paragraph 116 purports to cite to or paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

117.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 117, except admit that "[t]he Platinum Insiders relied . . . on wildly inflated valuations . . . to conceal the growing liquidity crisis at [Platinum] and to prop it up, while the [I]nsiders collected significant management fees."

118.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 118, except to the extent that Paragraph 118 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

119.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 119, except admit that "[t]he highly inflated valuations . . . resulted in ever increasing management fees" and that "[t]he management fees were excessive as they were based on highly inflated valuations."

120.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 120, except admit that "[t]he Platinum Insiders took advantage of the excessive management fee[s] to pay themselves."

17

121.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 121.

122.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 122, except to the extent that Paragraph 122 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

123.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123.

124.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124, except admit that "[t]he accrual and payments of management and incentive fees to the . . . Platinum Insiders based on inflated valuations approved by the Platinum Insiders epitomize the self-dealing and conflicts disregarded by the Platinum Insiders."

125.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 125, except (a) admit that "[b]y 2013," the Platinum funds had a "liquidity crisis" and "needed [ ] cash infusions to prop them up and support growing redemptions from outside investors they could not control, as well as overvalued and illiquid assets that required increasing capital infusions," (b) admit that "Nordlicht, Huberfeld, Levy and Bodner could not attract investments directly from institutional investors because of their history of criminal convictions and civil liability," (c) admit that "[f]or years, Platinum had little success attracting insurance-company money and considered starting a reinsurer to do so," and (d) to the extent that Paragraph 125 purports to paraphrase the contents of documents that speak for

themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

126.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 126, except (a) admit that "Huberfeld and Nordlicht partnered and conspired with Defendants Moshe M. Feuer, Scott Taylor and David Levy to form a reinsurance company, Beechwood Re Ltd. ('Beechwood')," (b) admit that "[t]he co-conspirators established Beechwood with the objective of entering into one or more reinsurance treaties with insurance companies, so that they could take control of reinsurance trust fund assets and use those assets to benefit Platinum, thereby enriching Platinum's and Beechwood's owners," (c) admit that "the Beechwood Insiders hoped to create a permanent source of capital that, unlike capital from the [Platinum] [f]unds' current investors, was unlikely to be withdrawn, in order to shore up the [Platinum] [f]unds and the portfolio companies in which the [Platinum] had invested, and (d) to the extent that Paragraph 126 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

127.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 127, except (a) admit that Beechwood was "formed as a mechanism to funnel money into Platinum . . . founded by [Nordlicht, Huberfeld and Bodner] to prolong their existing Ponzi-like scheme," (b) admit that, "[i]n 2013, co-conspirators Nordlicht, Huberfeld, Bodner, Levy, Feuer, and Taylor formulated a scheme to create a new entity that would present the false appearance of being unrelated to Nordlicht, Huberfeld, or Bodner in order the attract institutional investors that Platinum itself could not attract directly,"

19

and (c) to the extent that Paragraph 127 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

128.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128, except (a) admit that "[i]n addition to Beechwood's undisclosed role in propping up Platinum Partners, Feuer, Taylor, and Levy personally profited from the artificial and fraudulent valuation of Beechwood's asset holdings," (b) admit that "Beechwood was established with both reinsurance and investment advisory businesses," and (c) to the extent that Paragraph 128 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

129.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 129, except (a) admit that "Beechwood was a [] vehicle [] to prop up the [Platinum] [f]unds and prevent them from failing, by funneling money into them in order to enable them to keep pace with ongoing requests for investor redemptions and funding needs for portfolio investments," (b) admit that "Beechwood was a [] vehicle [] to engage in further transactions designed to prop up the [Platinum] [f]unds," (c) admit that "Beechwood was a [] vehicle [] to falsely inflate the reported net value of the [Platinum] [f]unds in order to justify overcharging the [Platinum] [f]unds for unearned partnership shares and fees to insiders," (d) admit that "Beechwood was a [] vehicle [] to provide a new business into which to transfer the assets of the [Platinum] [f]unds, if those funds failed," and (e) to the extent that Paragraph 129 purports to paraphrase the contents of documents that speak for themselves,

WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

130.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 130, except (a) admit that "[t]he effort to create Beechwood was coordinated by Nordlicht, Levy, Huberfeld, Taylor, Feuer and Bodner," (b) admit that "Huberfeld and Nordlicht found [in] Feuer and Taylor [] two professionals with excellent reputations who could serve as front men for a purported reinsurance company and which could, through reinsurance agreements, obtain control of trust assets for the benefit of furthering the Platinum fraud scheme and enriching scheme participants and that that company was Beechwood, and (c) to the extent that Paragraph 130 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

131.   WNIC and BCLIC admit the allegations of Paragraph 131.

132.   WNIC and BCLIC admit the allegations of Paragraph 132.

133.   WNIC and BCLIC admit the allegations of Paragraph 133, except deny knowledge or information sufficient to form a belief as to whether Rick Hodgdon remained on Platinum's payroll for the months of May and June 2015.

134.   WNIC and BCLIC admit the allegations of Paragraph 135, except add that Beechwood was also "owned and controlled" in part by Scott Taylor and that Beechwood was "devoted to the purposes of obtaining a more permanent source of capital for" Platinum funds generally.

135.   WNIC and BCLIC admit the allegations of Paragraph 135.

136.    WNIC and BCLIC admit the allegations of Paragraph 136.

137.    WNIC and BCLIC admit the allegations of Paragraph 137, except deny knowledge or information sufficient to form a belief as to whether all "members of Beechwood Investments were entities controlled . . . through trusts."

138.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 138, except admit that "BAM [] served as investment advisor[ ] for Beechwood Re . . . and w[as] controlled by Nordlicht, Bodner, Huberfeld and Levy through trusts."

139.    WNIC and BCLIC admit the allegations of Paragraph 139.

140.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 140, except admit that "BAM Administrative served as agent for" WNIC's and BCLIC's reinsurance trusts "and as agent and signatory on behalf of [] Beechwood Re . . . in connection with certain transactions."

141.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141.

142.    WNIC and BCLIC deny each and every allegation Paragraph 142, except admit that BAM Administrative, among others, managed WNIC's and BCLIC's reinsurance trusts.

143.    WNIC and BCLIC admit the allegations of Paragraph 143.

144.    WNIC and BCLIC admit the allegations of Paragraph 144.

145.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 145, except admit that "Taylor (through [a] trust[]) owned common stock in Beechwood and had managerial authority over the Beechwood Entities"

22

and further aver that the Taylor's "managerial authority" was subject to instructions he received from his co-conspirators to further the fraud scheme against WNIC and BCLIC.

146.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 146, except admit that (a) "[b]eginning in 2013, Levy was instrumental in the creation of Beechwood and served as chief financial officer and secretary of Beechwood Re," (b) "[h]e was also chief investment officer of BAM [], the Beechwood asset management entity until 2014," (c) "Beechwood marketed Levy to potential clients as a member of its management team and specifically highlighted Levy's [ ] years of experience with Platinum Management as key to Beechwood's future success," and (d) "[i]n late 2014, in the wake of the 'Black Elk' scheme . . . Levy returned to Platinum Management, yet remained an owner of Beechwood."

147.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 147, except admit that "Feuer (through [a] trust[]) owned common stock in various Beechwood Entities and had managerial authority over the Beechwood Entities" and further aver that the Feuer's "managerial authority" was subject to instructions he received from his co-conspirators to further the fraud scheme against WNIC and BCLIC.

148.     WNIC and BCLIC admit the allegations of Paragraph 148.

149.     WNIC and BCLIC admit the allegations of Paragraph 149.

150.     WNIC and BCLIC admit the allegations of Paragraph 150.

151.     WNIC and BCLIC admit the allegations of Paragraph 151.

152.     WNIC and BCLIC admit the allegations of Paragraph 152.

153.     WNIC and BCLIC admit the allegations of Paragraph 153.

154.    WNIC and BCLIC admit the allegations of Paragraph 154.

155.    WNIC and BCLIC admit the allegations of Paragraph 155.

156.    WNIC and BCLIC admit the allegations of Paragraph 156.

157.    WNIC and BCLIC admit the allegations of Paragraph 157.

158.    WNIC and BCLIC deny each and every allegation of Paragraph 158, except admit that "each of the Beechwood Defendants, the Beechwood Trusts, and the Beechwood Series LLCs, had a complete, or nearly complete, identity of managers, failed to adhere to any corporate formalities (such as meetings of the members or managers) and were alter egos of each other, and the Beechwood Insiders, with the Feuer FT and Taylor-Lau FT, completely disregarded the corporate separateness of, and were alter egos of, the entities in order to distribute proceeds to themselves."

159.    WNIC and BCLIC admit the allegations of Paragraph 159.

160.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160, except admit that "[i]n the materials used to market the Beechwood reinsurance companies, the Beechwood Insiders indicated that they were capitalized with cash provided by Feuer, Taylor, [and] Levy."

161.    WNIC and BCLIC admit the allegations of Paragraph 161, but further aver that Levy, Feuer and Taylor were not alone in creating the Unaudited Balance Sheet identified in this Paragraph.

> *Starting on p. 40 of her Complaint, the Receiver has sloppily re-used and mislabeled paragraphs, designating certain new paragraphs as Paragraphs "151" through "161," even though paragraphs with those numbers have already appeared, as noted above.  For purposes of consistency, WNIC and BCLIC respond to the Receiver's improperly numbered paragraphs in the order they appear and are denominated.*

24

**Second Paragraph 151**:  WNIC and BCLIC admit the allegations of the second Paragraph 151.

**Second Paragraph 152**:  WNIC and BCLIC admit the allegations of the second Paragraph 152.

**Second Paragraph 153**:  WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in the second Paragraph 153, except to the extent that the second Paragraph 153 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

**Second Paragraph 154**:  WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in the second Paragraph 154, except (a) admit that, "[o]n or around April 17, 2013, Taylor drafted a memorandum," and (b) to the extent that the second Paragraph 154 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

**Second Paragraph 155**:  WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in the second Paragraph 155, except to the extent that the second Paragraph 155 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

**Second Paragraph 156**:  WNIC and BCLIC admit the allegations in the second Paragraph 156.

**Second Paragraph 157**:  WNIC and BCLIC admit that "[o]n or about May 31, 2013, Crystal O'Sullivan sent Levy an invoice for $25,000 for filing, licensing, legal, and administrative services in connection with the creation of the Beechwood Re [], so that Platinum [] could pay such fees on behalf of Beechwood," and, to the extent that the second Paragraph 157 purports to paraphrase the contents of this document that speaks for itself, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the document referenced for a full and accurate rendition of its contents.

**Second Paragraph 158**:  WNIC and BCLIC admit the allegations in the second Paragraph 158.

**Second Paragraph 159**:  WNIC and BCLIC admit that "[o]n June 12, 2013, Taylor emailed Nordlicht, seeking Nordlicht's approval in regard to several potential 'deal' opportunities for the Beechwood Re," and, to the extent that the second Paragraph 159 purports to paraphrase the contents of this document that speaks for itself, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the document referenced for a full and accurate rendition of its contents.

**Second Paragraph 160**:  WNIC and BCLIC admit that "[o]n June 12, 2013, Taylor sent Levy a [] document," and, to the extent that the second Paragraph 160 purports to paraphrase the contents of this document that speaks for itself, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the document referenced for a full and accurate rendition of its contents.

**Second Paragraph 161**:  WNIC and BCLIC admit the allegations of the second Paragraph 161.

26

162.    WNIC and BCLIC state that, because Paragraph 162 paraphrases the contents of a documents that speaks for itself, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the document referenced for a full and accurate rendition of its contents.

163.    WNIC and BCLIC admit the allegations of Paragraph 163.

164.    WNIC and BCLIC admit the allegations of Paragraph 164.

165.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165, except admit that "[a]t certain times, the management team[ ] of Beechwood served and worked at the sole discretion of Beechwood's ultimate beneficial owners – Nordlicht, Bodner, Huberfeld and Levy – and functioned as the alter ego of Platinum."

166.    WNIC and BCLIC admit the allegations of Paragraph 166.

167.    WNIC and BCLIC admit the allegations of Paragraph 167.

168.    WNIC and BCLIC admit the allegations of Paragraph 168.

169.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 169, except admit that, for at least "two years, additional Platinum [] employees also worked at Beechwood or otherwise directed the activities of Beechwood."

170.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 170, except admit that "Stewart Kim, an employee of Platinum [], simultaneously worked for Beechwood as its Chief Risk Officer [], having been hired by Feuer and Taylor as [] Beechwood [R]e[]' Chief Risk Officer."

171.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 171, except admit that "Ezra Beren, Huberfeld's son-in-law, was hired in January 2014 to be a portfolio manager at Beechwood after serving [] at Platinum."

172.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 172, except admit that "[a]fter Levy left Beechwood to return to Platinum [], Saks [] replace[d] Levy as CIO of BAM."

173.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 173, except admit that "Manela and Eli Rakower, both employees of Platinum [], provided extensive and regular [] services to Beechwood while also employed by Platinum."

174.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 174.

175.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 175.

176.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 176, except admit that "Beechwood Insiders . . . fuel[ed] a fraud" and that Beechwood was "a startup reinsurer."

177.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 177.

178.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 178, except that, to the extent that Paragraph 178 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC

28

have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

179.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 179, except that, to the extent that Paragraph 179 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

180.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 180, except that, to the extent that Paragraph 180 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

181.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 181.

182.    WNIC and BCLIC state that, because Paragraph 182 purports to set forth a generic description of reinsurance, as opposed to alleging facts tied to actual reinsurance transactions, they have no obligation to respond to this Paragraph.  If WNIC and BCLIC have any obligation to respond to this Paragraph, WNIC and BCLIC deny the allegations of Paragraph 182 because the generic description does not apply uniformly to all reinsurance transactions, except that WNIC and BCLIC specifically deny that a direct insurer is "referred to as the cendant."

183.    WNIC and BCLIC state that, because Paragraph 183 purports to set forth a generic description of reinsurance, as opposed to alleging facts tied to actual reinsurance

transactions, they have no obligation to respond to this Paragraph.  If WNIC and BCLIC have any obligation to respond to this Paragraph, WNIC and BCLIC deny the allegations of Paragraph 183 because the generic description does not apply uniformly to all reinsurance transactions.

184.     WNIC and BCLIC state that, because Paragraph 184 purports to set forth a generic description of reinsurance, as opposed to alleging facts tied to actual reinsurance transactions, they have no obligation to respond to this Paragraph.  If WNIC and BCLIC have any obligation to respond to this Paragraph, WNIC and BCLIC deny the allegations of Paragraph 184 because the generic description does not apply uniformly to all reinsurance transactions.

185.     WNIC and BCLIC deny each and every allegation in Paragraph 185.

186.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 186, except that, to the extent that Paragraph 186 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

187.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 187, except that, to the extent that Paragraph 187 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

188.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 188, except that, to the extent that Paragraph 188 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC

have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

189.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189.

190.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 190, except that, to the extent that Paragraph 190 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

191.    WNIC and BCLIC deny each and every allegation in Paragraph 191.

192.    WNIC and BCLIC deny each and every allegation in Paragraph 192, except that, to the extent that Paragraph 192 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

193.    WNIC and BCLIC deny each and every allegation in Paragraph 193, except that, to the extent that Paragraph 193 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

194.    WNIC and BCLIC deny each and every allegation in Paragraph 194, except that, to the extent that Paragraph 194 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

195.   WNIC and BCLIC deny each and every allegation in Paragraph 195, except that, to the extent that Paragraph 195 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

196.   WNIC and BCLIC deny each and every allegation in Paragraph 196, except that, to the extent that Paragraph 196 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

197.   WNIC and BCLIC deny each and every allegation in Paragraph 197.

198.   WNIC and BCLIC deny each and every allegation in Paragraph 198, except that, to the extent that Paragraph 198 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

199.   WNIC and BCLIC deny each and every allegation in Paragraph 199, except deny knowledge and information sufficient to form a belief as to whether "SHIP's directors and are [sic] primarily insurance regulators."

200.   WNIC and BCLIC deny each and every allegation in Paragraph 200, except that, to the extent that Paragraph 200 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

201.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 201, except (a) admit that SHIP is in runoff and domiciled in Pennsylvania, and (b) state that, to the extent that Paragraph 201 purports to

paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

202.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 202.

203.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 203, except admit that SHOT is organized under the laws of the state of Pennsylvania and is governed by a Board of Trustees.

204.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 204, except that, to the extent that Paragraph 204 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

205.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 205, except that, to the extent that Paragraph 205 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

206.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 206, except (a) admit that Fuzion has "act[ed] as a third-party policy and claims administrator for policies of long-term care business issued by . . . BCLIC and WNIC," and (b) to the extent that Paragraph 206 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this

Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

207.    WNIC and BCLIC deny each and every allegation in Paragraph 207.

208.    WNIC and BCLIC deny each and every allegation in Paragraph 208.

209.    WNIC and BCLIC deny each and every allegation in Paragraph 209, except (a) admit that CNO, like all public companies, is "run for the benefit of [their] shareholders," and (b) deny knowledge or information sufficient to form a belief as to the allegations of the last two sentences of Paragraph 209.

210.    WNIC and BCLIC deny each and every allegation in Paragraph 207 except admit that 40/86 Advisors manages certain investment portfolios of certain insurance companies.

211.    WNIC and BCLIC deny each and every allegation in Paragraph 211.

212.    WNIC and BCLIC deny each and every allegation in Paragraph 212.

213.    WNIC and BCLIC deny each and every allegation in Paragraph 213, except that, to the extent that Paragraph 213 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

214.    WNIC and BCLIC state that, because the allegations in Paragraph 214 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

215.    WNIC and BCLIC state that, because the allegations in Paragraph 215 purport to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC

have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

216.   WNIC and BCLIC state that, because the allegations in Paragraph 216 purport to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

217.   WNIC and BCLIC deny each and every allegation in Paragraph 217, except that, to the extent that Paragraph 217 purports to list the products that BCLIC, WNIC and Colonial Penn "distributed and marketed" and that "[t]he Other CNO Business segment consisted of," such listing is dependent on the specific time to which the allegation refers, and thus WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to documents specific to the given time period for a full and accurate listing of such products.

218.   WNIC and BCLIC deny each and every allegation in Paragraph 218, except that, to the extent that Paragraph 218 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

219.   WNIC and BCLIC state that, because the allegations in Paragraph 219 purport to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

220.   WNIC and BCLIC deny each and every allegation in Paragraph 220, except admit that "Beechwood's founders . . . planned to perpetrate" a "fraud."

221.  WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 221.

222.  WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 222.

223.  WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 223.

224.  WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 224.

225.  WNIC and BCLIC deny each and every allegation in Paragraph 225.

226.  WNIC and BCLIC deny each and every allegation in Paragraph 226, except (a) admit that, in early 2013, Rick Hodgdon was "an employee of Willis Re Inc. ("Willis Re") and later a Platinum and Beechwood employee," (b) admit that, in early 2013, Michael Kaster was with "Willis Re, then a reinsurance subsidiary of Willis Group Holdings plc," (c) admit that, at that time, " Beechwood Re [], by all appearances, [had] no existing business," and (d) that, to the extent that Paragraph 226 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

227.  WNIC and BCLIC deny each and every allegation in Paragraph 227, except that, to the extent that Paragraph 227 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

228.  WNIC and BCLIC deny each and every allegation in Paragraph 228, except that, to the extent that Paragraph 228 purports to paraphrase or quote the contents of documents that

speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

229.    WNIC and BCLIC state that, to the extent that Paragraph 229 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

230.    WNIC and BCLIC deny each and every allegation in Paragraph 230, except that, to the extent that Paragraph 230 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

231.    WNIC and BCLIC deny each and every allegation in Paragraph 231, except that, to the extent that Paragraph 231 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

232.    WNIC and BCLIC state that, to the extent that Paragraph 232 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

233.    WNIC and BCLIC admit that "[i]n November 2013, BCLIC and WNIC sent a team to meet with Beechwood" and further state that, to the extent that Paragraph 233 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

234.    WNIC and BCLIC deny each and every allegation in Paragraph 234, except that, to the extent that Paragraph 234 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

235.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 235, except (a) admit that in December 2015, "Beechwood was anxious to get BCLIC's and WNIC's money into Platinum," and (b) state that, to the extent that Paragraph 235 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

236.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 236, except (a) admit that, around February 1, 2014, Fuzion entered into a Master Services Agreement with Beechwood Re, and (b) state that, to the extent that Paragraph 236 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

237.    WNIC and BCLIC deny each and every allegation in Paragraph 237, except that, to the extent that Paragraph 237 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

238.    WNIC and BCLIC deny each and every allegation in Paragraph 238, except that, to the extent that Paragraph 238 purports to paraphrase the contents of documents that speak for

themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

239.     WNIC and BCLIC admit that (a) "Beechwood Re was an unauthorized offshore reinsurer," (b) Beechwood Re was "domiciled outside the states of New York and Indiana where BCLIC and WNIC were domiciled," (c) Beechwood Re was "required to create on-shore reinsurance trusts [for] the assets received in the reinsurance transaction[s]," (d) "Wilmington Trust was the trustee for each of the [reinsurance trusts]," (e) "BAM was [Beechwood's agent and investment] manager" for the reinsurance trust assets, and (f) "Fuzion was chosen to be the [claims] administrator."  WNIC and BCLIC further state that, to the extent that Paragraph 239 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

240.     WNIC and BCLIC state that, to the extent that Paragraph 240 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

241.     WNIC and BCLIC state that, to the extent that Paragraph 241 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

242.     WNIC and BCLIC state that, to the extent that Paragraph 242 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no

obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

243.    WNIC and BCLIC deny each and every allegation in Paragraph 243, except that, to the extent that Paragraph 243 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

244.    WNIC and BCLIC state that, to the extent that Paragraph 244 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

245.    WNIC and BCLIC state that, to the extent that Paragraph 245 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

246.    WNIC and BCLIC state that, to the extent that Paragraph 246 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

247.    WNIC and BCLIC deny each and every allegation in Paragraph 247, except that, to the extent that Paragraph 247 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

248.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 248.

249.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 249.

250.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 250.

251.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 251.

252.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 252.

253.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 253.

254.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 254.

255.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 255.

256.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 256.

257.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 257.

258.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 258.

259.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 259.

260.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 260.

261.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 261.

262.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 262.

263.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 263.

264.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 264.

265.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 265.

266.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 266.

267.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 267.

268.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 268.

269.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 269.

270.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 270.

271.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 271.

272.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 272.

273.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 273, except specifically deny the allegation that "BCLIC and WNIC were already invested by Beechwood in Platinum Partners investments."

274.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 274, except admit that they transferred more than "$592 million to Beechwood pursuant to the Reinsurance Agreements."

275.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 275, except admit that "[a]fter entering into the Reinsurance Agreements and taking control of the assets in the [reinsurance trusts established under the Reinsurance Agreements] . . . , Beechwood immediately began using the [reinsurance trust assets] to prop up the [Platinum] funds."

276.    WNIC and BCLIC deny each and every allegation in Paragraph 276, except (a) admit that "[t]he Reinsurance Agreements required Beechwood to provide reports, at least on a quarterly basis," (b) "Beechwood provided these reports to BCLIC and WNIC using the mails and wires of interstate commerce," and (c) Beechwood's reports "overinflated true values" of certain assets "so as to avoid having to 'top off'" the reinsurance trusts "and further so as to withdraw sums as 'surplus' for its own benefit.'"  WNIC and BCLIC further state that, to the

extent that Paragraph 276 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

277.    WNIC and BCLIC deny each and every allegation in Paragraph 277, except (a) admit that Beechwood's reports "included the Platinum [] name," (b) admit that they knew, at certain points in time, that "Beechwood was investing trust assets with [Platinum] funds," and (c) state that, to the extent that Paragraph 277 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

278.    WNIC and BCLIC state that, to the extent that Paragraph 278 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

279.    WNIC and BCLIC deny each and every allegation in Paragraph 279, except (a) admit that they "specifically discussed with Beechwood the millions of dollars of trust assets being invested [in] Platinum [f]unds and their portfolio entities," (b) admit that they had "specific knowledge," at certain points in time, "that trust assets were being invested by Beechwood in [] Platinum Partners-related investments," and (c) state that, to the extent that Paragraph 279 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

280.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 280, except that, to the extent that Paragraph 280

purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

281.   WNIC and BCLIC state that, to the extent that Paragraph 281 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

282.   WNIC and BCLIC deny each and every allegation in Paragraph 282, except that, to the extent that Paragraph 282 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

283.   WNIC and BCLIC deny each and every allegation in Paragraph 283, except that, to the extent that Paragraph 283 purports to paraphrase or quote the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

284.   WNIC and BCLIC deny each and every allegation in Paragraph 284, except state that, to the extent that Paragraph 284 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

285.   WNIC and BCLIC deny each and every allegation in Paragraph 285.

286.    WNIC and BCLIC deny each and every allegation in Paragraph 286.

287.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 287.

288.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 288.

289.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 289.

290.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 290.

291.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 291.

292.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 292.

293.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 293.

294.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 294.

295.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 295.

296.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 296.

297.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 297.

298.   WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 298.

299.   The Complaint contains no Paragraph 299.

300.    The Complaint contains no Paragraph 300.

301.    The Complaint contains no Paragraph 301.

302.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 302, except admit that, "between February 2014 and December 2015, the Beechwood Insiders caused the Beechwood Entities to use funds transferred by BCLIC or WNIC into the [] [r]einsurance [t]rusts to make certain investments, including . . . "LP interests in the PPCO funds . . . [and] a [] loan to Credit Strategies, LLC."

303.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 303.

304.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 304.

305.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 305.

306.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 306.

307.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 307.

308.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 308.

309.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 309.

310.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 310.

311.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 311.

312.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 312.

313.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 313, except admit that, "between February 2014 and December 2015, the Beechwood Insiders caused the Beechwood Entities to use funds transferred by BCLIC or WNIC into the [] [r]einsurance [t]rusts . . . to make . . . loans to portfolio companies of the [Platinum] [f]unds."

314.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 314, except admit that, "the Beechwood Insiders caused the [] [r]einsurance [t]rusts . . . to invest . . . in [Platinum] portfolio companies . . . includ[ing] Black Elk Energy [] Offshore Operations, LLC, Golden Gate Oil, LLC, PEDEVCO, Implant Sciences, Northstar Offshore Group . . . and China Horizon."

315.    WNIC and BCLIC deny each and every allegation in Paragraph 315, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 315.

316.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 316.

317.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 317.

318.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 318.

319.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 319.

320.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 320.

321.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 321.

322.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 322, except admit that, "the Beechwood Insiders caused the [r]einsurance [t]rusts . . . to provide support to Black Elk" and that "the [r]einsurance [t]rusts were made to provide Black Elk with a [] line of credit."

323.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 323.

324.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 324.

325.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 325.

326.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 326.

327.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 327.

328.     WNIC and BCLIC admit the allegations in Paragraph 328.

329.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 329, except admit that "after engineering

Beechwood's purchase of the Senior Secured Notes and voting those in favor of the Platinum

scheme, Levy left his position at Beechwood."

330.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 330.

331.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 331.

332.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 332, except admit that "[t]here are numerous emails

evidencing the intimate involvement of Levy, Small and the Platinum Insiders in the Black Elk

[s]cheme," and refer the Court to those emails for a full and accurate rendition of their contents.

333.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 333.

334.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 334.

335.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 335.

336.    WNIC and BCLIC deny each and every allegation in the first and last sentences

of Paragraph 336 and deny knowledge or information sufficient to form a belief as to the truth of

the allegations in the remainder of Paragraph 336.

337.    WNIC and BCLIC deny each and every allegation in the last sentence of

Paragraph 337 and deny knowledge or information sufficient to form a belief as to the truth of

the allegations in the remainder of Paragraph 337.

338.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 338.

339.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 339.

340.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 340.

341.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 341.

342.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 342.

343.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 343, except specifically deny that "CNO, BCLIC [or] WNIC" had a "PEDEVCO investment" and that they "knew or should have known about the dire financial condition of their [non-existent] PEDEVCO investment and looked for ways to alleviate their [non-existent] exposure over time."

344.    WNIC and BCLIC deny each and every allegation in the last sentence of Paragraph 344 and deny knowledge or information sufficient to form a belief as to the truth of the allegations in the remainder of Paragraph 344.

345.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 345.

346.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 346.

51

347.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 347.

348.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 348.

349.    WNIC and BCLIC deny each and every allegation in the last sentence of Paragraph 349 and deny knowledge or information sufficient to form a belief as to the truth of the allegations in the remainder of Paragraph 349.

350.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 350.

351.    WNIC and BCLIC deny each and every allegation in Paragraph 351, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first and last sentences of Paragraph 351.

352.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 352.

353.    WNIC and BCLIC deny each and every allegation in Paragraph 353, except deny knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 353.

354.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 354.

355.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 355.

356.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 356.

357.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 357.

358.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 358.

359.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 359.

360.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 360.

361.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 361.

362.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 362.

363.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 363.

364.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 364.

365.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 365.

366.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 366.

367.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 367.

368.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 368.

369.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 369.

370.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 370.

371.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 371.

372.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 372.

373.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 373.

374.     Because Paragraph 374 sets forth legal conclusions, WNIC and BCLIC state that they have no obligation to respond to this Paragraph.

375.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 375.

376.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 376.

377.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 377.

378.     WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 378.

379.     WNIC and BCLIC deny each and every allegation in Paragraph 379.

380.    WNIC and BCLIC deny each and every allegation in Paragraph 380(c) and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 380.

381.    Because Paragraph 381 sets forth legal conclusions, WNIC and BCLIC state that they have no obligation to respond to this Paragraph.

382.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 382.

383.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 383.

384.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 384.

385.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 385.

386.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 386.

387.    WNIC and BCLIC deny each and every allegation in the second sentence of Paragraph 387 and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 387.

388.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 388.

389.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 389.

390.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 390.

391.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 391.

392.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 392.

393.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 393.

394.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 394.

395.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 395.

396.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 396.

397.    WNIC and BCLIC deny each and every allegation in Paragraph 397.

398.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 398.

399.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 399.

400.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 400.

401.    WNIC and BCLIC deny each and every allegation in Paragraph 401.

402.    WNIC and BCLIC deny each and every allegation in Paragraph 402.

403.    WNIC and BCLIC deny each and every allegation in Paragraph 403.

404.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 404.

405.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 405.

406.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 406.

407.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 407.

408.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 408.

409.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 409.

410.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 410.

411.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 411.

412.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 412.

413.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 413.

414.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 414.

415.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 415.

416.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 416.

417.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 417.

418.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 418.

419.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 419.

420.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 420.

421.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 421.

422.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 422.

423.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 423.

424.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 424.

425.    WNIC and BCLIC deny each and every allegation in Paragraph 425.

426.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 426.

58

427.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 427.

428.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 428.

429.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 429.

430.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 430.

431.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 431.

432.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 432.

433.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 433.

434.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 434.

435.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 435.

436.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 436, except to the extent that Paragraph 436 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

59

437.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 437.

438.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 438.

439.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 439.

440.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 440.

441.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 441.

442.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 442.

443.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 443.

444.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 444.

445.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 445.

446.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 446.

447.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 447.

448.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 448, except that, to the extent the word "Defendants" includes WNIC and/or BCLIC, WNIC and BCLIC deny each and every allegation in Paragraph 448.

449.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 449.

450.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 450.

451.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 451, except that, to the extent that Paragraph 451 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

452.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 452.

453.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 453.

454.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 454.

455.    WNIC and BCLIC admit the allegations in Paragraph 455.

456.    WNIC and BCLIC deny knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 456, except that, to the extent that Paragraph 456 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC

have no obligation to respond to this Paragraph and refer the Court to the documents referenced

for a full and accurate rendition of their contents.

457.    WNIC and BCLIC admit the allegations in Paragraph 457.

458.    WNIC and BCLIC admit the allegations in Paragraph 458 and, to the extent that

Paragraph 458 purports to paraphrase the contents of documents that speak for themselves,

WNIC and BCLIC refer the Court to the documents referenced for a full and accurate rendition

of their contents.

459.    WNIC and BCLIC admit the allegations in Paragraph 459 and, to the extent that

Paragraph 459 purports to paraphrase the contents of documents that speak for themselves,

WNIC and BCLIC refer the Court to the documents referenced for a full and accurate rendition

of their contents.

460.    WNIC and BCLIC admit the allegations in Paragraph 460 and, to the extent that

Paragraph 460 purports to paraphrase the contents of documents that speak for themselves,

WNIC and BCLIC refer the Court to the documents referenced for a full and accurate rendition

of their contents.

461.    WNIC and BCLIC admit the allegations in Paragraph 461.

462.    WNIC and BCLIC deny each and every allegation in Paragraph 462, except admit

that "Beechwood Re, BBIL, BAM [and] Beechwood Investments are enterprises within the

meaning of the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961."

463.    WNIC and BCLIC deny each and every allegation in Paragraph 463, except admit

that "[t]he primary purpose was to use the vehicles of Beechwood Re, BBIL, BAM [and]

Beechwood Investments to obtain funds from institutional investors, particularly insurance

companies," "including BCLIC [and] WNIC."

464.     WNIC and BCLIC deny each and every allegation in Paragraph 464 to the extent that the words "Defendants" or "co-conspirators'" is intended to include WNIC and/or BCLIC.

465.     WNIC and BCLIC deny each and every allegation in Paragraph 465 to the extent they include CNO, BCLIC or WNIC in the "enterprises" or "scheme."

466.     WNIC and BCLIC deny each and every allegation in Paragraph 466 to the extent that the words "Defendants" or "co-conspirators" is intended to include WNIC and/or BCLIC.

467.     Because Paragraph 467 purports to paraphrase the contents of documents that speak for themselves, WNIC and BCLIC have no obligation to respond to this Paragraph and refer the Court to the documents referenced for a full and accurate rendition of their contents.

468.     WNIC and BCLIC deny each and every allegation in Paragraph 468 to the extent that the words "Defendants" or "co-conspirators" is intended to include WNIC and/or BCLIC.

## CLAIMS FOR RELIEF

469.     WNIC and BCLIC have moved to dismiss all of the Receiver's Claims for Relief under Fed. R. Civ. P. 8, 9(b), and 12(b)(6).  Accordingly, WNIC and BCLIC do not need to respond to Paragraphs 469 to 584 of the Complaint.

## AFFIRMATIVE DEFENSES

WNIC and BCLIC set forth below their affirmative defenses.  Each defense is asserted as to all claims against WNIC and BCLIC.  By setting forth these affirmative defenses, WNIC and BCLIC do not assume the burden of proving any fact, issue, or element of a claim where such burden properly belongs to the Receiver.

As separate and distinct affirmative defenses, WNIC and BCLIC state as follows:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim upon Which Relief May Be Granted)

The Complaint fails to state a claim, in whole or in part, upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Statute of Limitations)

The Receiver's claims are barred, in whole or in part, by applicable statutes of limitations.

## THIRD AFFIRMATIVE DEFENSE

### (*In Pari Delicto*)

The Receiver's claims are barred, in whole or in part, by the *in pari delicto* doctrine.

## FOURTH AFFIRMATIVE DEFENSE

### (Laches)

The Receiver's claims are barred, in whole or in part, by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

### (Estoppel)

The Receiver's claims are barred, in whole or in part, by the doctrine of estoppel.

## SIXTH AFFIRMATIVE DEFENSE

### (Waiver)

The Receiver's claims are barred, in whole or in part, by the doctrine of waiver.

## SEVENTH AFFIRMATIVE DEFENSE

### (Ratification)

The Receiver's claims are barred, in whole or in part, by the doctrine of ratification.

## EIGHTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

The Receiver's claims are barred, in whole or in part, by the doctrine of unclean hands.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

The Receiver's claims are barred, in whole or in part, by their failure to mitigate, minimize or avoid any damages she may be claiming.

## TENTH AFFIRMATIVE DEFENSE

### (Standing)

The Receiver's claims are barred, in whole or in part, because she lacks standing to bring the claims she has brought against WNIC and BCLIC.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Good Faith)

The Receiver's claims are barred, in whole or in part, because WNIC and BCLIC at all times acted in good faith.

## TWELFTH AFFIRMATIVE DEFENSE

### (Election of Remedies)

The Receiver's claims are barred, in whole or in part, by the doctrine of election of remedies.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (No Causation)

The Receiver's claims are barred, in whole or in part, because the parties whose interests the Receiver represents and the parties in whose shoes the Receiver stands have sustained no injury in fact or damages caused by any act or omission of WNIC or BCLIC.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Release or Discharge of Claims)

The Receiver's claims are barred, in whole or in part, because they have been released, discharged, compromised and settled.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Accord and Satisfaction)

The Receiver's claims are barred, in whole or in part, by accord and satisfaction.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Lack of Personal Jurisdiction)

The Receiver's claims against all CNO Defendants except BCLIC are barred, in whole or in part, due to lack of personal jurisdiction.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Assumption of Risk/Culpable Conduct)

The Receiver's claims are barred, in whole or in part, based on doctrines of assumption of risk and/or culpable conduct on the part of the Receiver, the parties whose interests she represents and/or the parties in whose shoes she stands.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Alleged Damages Caused by Other Parties)

The Receiver's claims are barred, in whole or in part, because any damages she claims that were incurred by the parties whose interests the Receiver represents and the parties in whose shoes the Receiver stands were due to the acts or omissions of parties other than WNIC or BCLIC.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Failure to Plead with Specificity)

The Receiver's claims are barred, in whole or in part, because she has failed to plead claims against WNIC and/or BCLIC with the specificity required under Fed. R. Civ. P. 9(b).

## TWENTIETH AFFIRMATIVE DEFENSE

### (The *Wagoner* Rule)

The Receiver's claims are barred, in whole or in part, based on the rule articulated in *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991).

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Obligations Met)

The Receiver's claims are barred, in whole or in part, because WNIC and BCLIC met all of their obligations under their Agreements with Beechwood Re.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (RICO Claims Based on Securities Transactions)

The Receiver's claims under the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. § 1961, *et seq.* ("RICO"), are barred because they are based on securities transactions, which is impermissible under RICO.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Arbitration)

The Receiver's claims are subject to arbitration under the Reinsurance Agreements between Beechwood, on the one hand, and BCLIC and WNIC, on the other hand, because, among other reasons, the Receiver has admitted that the Platinum entities and Beechwood were alter egos and agents of each other.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (No Conveyance)

The Receiver's claims are barred because no Platinum entity conveyed anything to any CNO Defendant, and hence there is no conveyance to set aside.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Security Interest)

The Receiver's claims are barred because BCLIC and WNIC had a security interest in all assets in the reinsurance trusts and were thus entitled by law and contract to recapture the trust assets free and clear of claims of alleged competing creditors to the trusts.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

### (No Standing)

The Receiver lacks standing to pursue fraudulent transfer claims because only Platinum's creditors, as opposed to a Platinum Receiver, may assert such claims.

## RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES

WNIC and BCLIC have not knowingly or intentionally waived any applicable defenses, and they reserve the right to assert and rely upon other applicable defenses that may become available or apparent during discovery in this matter.  WNIC and BCLIC reserve the right to amend or seek to amend their Answer, Affirmative Defenses, Cross-claims and Third-party claims.

## CROSS-CLAIMS AND THIRD-PARTY CLAIMS

Cross-claim and third-party plaintiffs Washington National Insurance Company ("**WNIC**") and Bankers Conseco Life Insurance Company ("**BCLIC**"), by and through their counsel, hereby allege as follows for their cross-claims and third-party claims:

## INTRODUCTION

470.    This case concerns an audacious and calculated fraud against WNIC, BCLIC, their ultimate parent company, CNO Financial Group, Inc. ("**CNO**") and other insurance companies.  The fraud – which Platinum has admitted through its Receiver and Liquidators – was perpetrated by the Platinum[2] and Beechwood[3] enterprises that the Co-conspirators have now

---

[2]  "**Platinum**" means Platinum Partners, L.P. and its many affiliates, including Platinum Partners Credit Opportunities Master Fund, LP ("**PPCO**"), Platinum Partners Value Arbitrage Fund L.P. ("**PPVA**") and Platinum Management (NY) LLC.

[3]  "**Beechwood**" means Beechwood Re Ltd ("**Beechwood Re**") and its many affiliates, including its parent company, Beechwood Re Holdings, Inc. ("**Holdings**"), and the following Beechwood entities that are joined as defendants in this pleading: (a) Beechwood Capital Group LLC ("**Beechwood Capital**"), the platform from which Beechwood Re was launched; (b) B Asset Manager LP ("**BAM**") and BAM Administrative Services LLC ("**BAM Administrative**"),

admitted were "integrated."[4]  The Receiver and plaintiffs Martin Trott and Christopher Smith in

the related action, *Trott v. Platinum Management (NY) LLC, et al.*, Case No. 18-cv-10936 (the

"**PPVA Action**"), all expressly admit that Platinum and Beechwood were "alter egos."[5]  And,

they should know.  They are the Receiver and Joint Official Liquidators for the various Platinum

funds.  They have access to the vast repository of Platinum documents establishing that Platinum

and Beechwood were integrated and alter egos.

471.  For years the Co-conspirators assiduously hid from their victims, as well as the

Securities and Exchange Commission (the "**SEC**") and the rest of the outside world, that

Platinum's founders formed, owned and controlled Beechwood and that the two were integrated

for the express purpose of carrying out a fraud.  And, whenever outsiders confronted the Co-

conspirators concerning any relationship between the two, the Co-conspirators vehemently

---

Beechwood entities that served as agents and investment managers for Beechwood Re; (c) "**Beechwood Bermuda**," which includes Beechwood Bermuda Ltd. ("**BBL**"), Beechwood Bermuda International Ltd. ("**BBIL**"), and PB Investment Holdings Ltd. ("**PB Investment**"), as successor-in-interest to Beechwood Bermuda Investment Holdings Ltd. ("**BBIH**"); (d) Beechwood Trust Nos. 1 through 20 (each a "**Beechwood Trust**" and collectively, the "**Beechwood Trusts**"), through which Nordlicht, Bodner, Huberfeld and, to a lesser extent, Levy (Beechwood Trust No. 20 only) owned and controlled Beechwood; and (e) Beechwood Re Investments LLC, Series A through I, each a "**Beechwood Series**" and collectively "**Beechwood Investments**," through which Nordlicht, Bodner and Huberfeld controlled Beechwood via the purchase of Beechwood debt and ownership of preferred stock in various Beechwood entities.

[4]  The "**Co-conspirators**" include, but are not limited to, the following individual cross-claim and third-party defendants: Platinum founders Mark Nordlicht, Murray Huberfeld and David Bodner; Beechwood founders Moshe M. Feuer a/k/a Mark Feuer and Scott Taylor; and the principals and senior managers of Platinum and Beechwood who secretly shuttled back and forth through the revolving door of the integrated Platinum/Beechwood enterprise, David Levy, Rick Hodgdon, Will Slota, Daniel Small, David Leff, Naftali Manela, David Ottensoser, Stewart Kim, Danny Saks and Paul Poteat.  The Co-conspirators also include the non-natural persons sued herein, including but not limited to Lincoln International LLC ("**Lincoln**").

[5]  WNIC and BCLIC hereby incorporate the allegations of in the complaints in this action and the PPVA Action that the Platinum and Beechwood entities were alter egos, including Exhibit 31 to the First Amended Complaint in the PPVA Action where Co-conspirators Huberfeld and Bodner admit that Platinum and Beechwood were "integrated."

denied any relationship.  For example, when a senior manager at CNO questioned Co-

conspirator Mark Feuer about Feuer's repeated denials of any relationship between Platinum and

Beechwood, Feuer became extremely heated and responded, "are you calling me a liar?"[6]

472.    In fact, the Co-conspirators have now admitted their fraud, which has also been

confirmed in indictments and civil actions.  In their secret correspondence, Co-conspirators and

Platinum founders David Bodner and Murray Huberfeld confessed what all of the Co-

conspirators feared (emphasis added): they were "really concerned that if Ed Bonach [the CEO]

from CNO Financial Group Finds [sic] out we invested beechwoods [sic] money into platinum

with its illiquid investments (since it didn't exactly fit their investment objective) *he won't trust*

*us and he will take off the aprox [sic] 500 mil, he has invested in beachwood [sic] Out*.  That

means beechwood would either implode or not be able to function fiancialy [sic] and may have

to be dissolved . . . *We weren't exactly honest with [CNO's CEO] Ed [Bonach] about the*

*original investment or that beechwood and platinum really are integrated*.  I'm concerned."

*See* Ex. 31 to the First Amended Complaint in the PPVA Action (the "**Co-conspirators'**

**Confession Email**").  Beechwood principals Feuer and Taylor, as well as Narain, have also

admitted that ███████████████████████████████████████████████

████████████████████████████████████████

473.    The Co-conspirators' house of cards began to collapse in the summer of 2016,

starting with the arrest of Murray Huberfeld and the accompanying FBI investigation.  Later that

summer, the SEC opened a new investigation into Platinum, Beechwood and the Co-

---

[6]  The Receiver has alleged that interchanges such as this between the four CNO entities she has
sued (CNO, WNIC, BCLIC and 40/86 Advisors, Inc.) make these CNO entities co-conspirators
in the Platinum-Beechwood conspiracy.  She alleges that "turning a blind eye" to Platinum-
Beechwood racketeering makes one a racketeer, as well.  These allegations are a Rule 11
violation and an abuse of process.

conspirators' frauds.[7]  By late September 2016, when glimpses of the secret Platinum-Beechwood integration began being revealed to the public, CNO, WNIC and BCLIC did exactly what the Co-conspirators had feared: they terminated their arrangements with Beechwood and recaptured the reinsurance trust funds that they had entrusted to Beechwood.

474.    By then, however, the damage had already been done to WNIC and BCLIC.  The Co-conspirators had used large portions of the funds that WNIC and BCLIC had entrusted to Beechwood as a piggybank for Platinum, all the while denying vehemently (and falsely) that Platinum had any ownership interest in (or influence over) Beechwood.

475.    The vehicle through which the Co-conspirators committed the fraud – Beechwood Re – is now insolvent and being liquidated.  WNIC and BCLIC seek to hold the Co-conspirators and the entities they owned and controlled liable for the more than $100 million in damages that they proximately caused WNIC and BCLIC to suffer with their fraud and racketeering.

## JURISDICTION AND VENUE

476.    This Court has subject matter jurisdiction of the matters set forth in this pleading under 28 U.S.C. § 1331 and 18 U.S.C. §§ 1961 and 1962(c) and (d).  In addition, the Court has supplemental jurisdiction of the matters set forth in this pleading in that WNIC's and BCLIC's claims are so related to the Receiver's claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United

---

[7]  The SEC had thoroughly investigated Platinum in the several years before the summer of 2016, including Platinum's relationship to Beechwood, but had not reported any discovery of the Platinum-Beechwood integration or their frauds as a result of that investigation.  The SEC's failure to discover or report on any Platinum-Beechwood integration and their frauds utterly destroys the claims that the Receiver has brought against CNO and its affiliates here, including BCLIC and WNIC, that CNO and its affiliates "turned a blind eye" to Beechwood's frauds.  If the SEC, with its massive investigative resources, failed to discover the Platinum-Beechwood frauds despite its thorough investigation, then the Receiver's claims that CNO or its affiliates should have succeeded in doing so where the SEC failed is frivolous.

States Constitution.  In addition, WNIC's and BCLIC's claims in this pleading are also so related to the claims in the consolidated PPVA Action (and within the original jurisdiction of that action) that they form part of the same case or controversy under Article III of the United States Constitution.

477.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events, actions or omissions giving rise to this matter occurred in this District.

## THE CROSS-CLAIM AND THIRD-PARTY PLAINTIFFS

478.    Cross-claim/third-party Plaintiff **WNIC** is an insurance company domiciled in Indiana, with its principal place of business in Carmel, Indiana.  The Co-conspirators perpetrated a deceptive scheme to enrich themselves by inducing WNIC to enter into a reinsurance transaction with Beechwood Re, using deceptive devices designed to conceal that Platinum controlled Beechwood Re.

479.    Cross-claim/third-party Plaintiff **BCLIC** is an insurance company domiciled in New York, with its principal place of business in Jericho, New York.  The Co-conspirators perpetrated a deceptive scheme to enrich themselves by inducing BCLIC to enter into a reinsurance transaction with Beechwood Re, using deceptive devices designed to conceal that Platinum controlled Beechwood Re.

## THE RACKETEERS, THE STRUCTURE OF THEIR CONSPIRACY AND A SAMPLER OF THEIR ROLES AND FRAUDULENT ACTS

480.    Cross-claim/third-party defendant **Mark Nordlicht** was a Platinum co-founder, the owner of several of the Beechwood entities (including Beechwood Re, Holdings and BAM), the individual who ultimately controlled Beechwood Re, BAM and BAM Administrative's investments of WNIC's and BCLIC's reinsurance trust assets and a mastermind of the Platinum-Beechwood racketeering scheme.  He is also a defendant in the PPVA Action.  Nordlicht had

72

offices and email addresses at both Platinum and Beechwood, from which Nordlicht directed the Co-conspirators.[8]  For example, in a ████████████ meeting, the month that Beechwood Re signed the reinsurance agreements with WNIC and BCLIC (the "**Reinsurance Agreements**" or "**Agreements**"), Nordlicht ███████████████████████████████████████████

████████████████████████████████  When the Co-conspirators began ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████

481.     Cross-claim/third-party defendant **Murray Huberfeld** was a Platinum co-founder, a mastermind of the Platinum-Beechwood racketeering scheme and an individual who specifically directed certain of Beechwood Re, BAM and BAM Administrative's investments of WNIC's and BCLIC's reinsurance trust assets (*e.g.*, Ace Foundation, Quest Livery Leasing LLC ("**Quest Livery**"), JF Aircorp).  He is also a defendant in the PPVA Action.  In a ████████████ ████████████████████████████████████████████████████████████

████████████████████████  Like Nordlicht, Huberfeld maintained offices at both Platinum and Beechwood from which he directed the Co-conspirators.  ████████████████████████████████

████████████████████████████████████████████████████████████

---

[8] *See, e.g.*, ████████████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████  In this pleading, any reference to a communication involving one or more of the Co-conspirators is alleged to have been made using the mails and wires of interstate commerce, unless the reference specifically refers to the communication having been made at a face-to-face meeting.

██████████████████████████████████████████████ Often, however, given his

checkered history, Huberfeld conducted the conspiracy's day-to-day business via a secretary who

relayed his directives to other Co-conspirators.

482.   Cross-claim/third-party defendant **David Bodner** was a Platinum co-founder and

mastermind of the Platinum-Beechwood racketeering scheme.  He is also a defendant in the

PPVA Action.  Bodner and Huberfeld, among others, were parties to the Co-conspirators'

Confession Email where they expressed the Co-conspirators' concern "that if Ed Bonach [the

CEO] from CNO Financial Group Finds [sic] out we invested beechwoods [sic] money into

platinum with its illiquid investments (since it didn't exactly fit their investment objective) *he*

*won't trust us and he will take off the aprox [sic] 500 mil, he has invested in beachwood [sic]*

*Out*. That means beechwood would either implode or not be able to function fiancialy [sic] and

may have to be dissolved . . . *We weren't exactly honest with [CNO's CEO] Ed [Bonach] about*

*the original investment or that beechwood and platinum really are integrated*."  Ex. 31 to First

Amended Complaint in the PPVA Action.  As was the case with his Platinum co-founder

Huberfeld (given their checkered histories), Bodner conducted the conspiracy's day-to-day

business via a secretary who relayed his directives to other Co-conspirators.

483.   Cross-claim/third-party defendant **Mark Feuer**[9] was a founder and CEO of

Beechwood Re as well as the principal of most Beechwood entities.  In accordance with the Co-

conspirators' agreement, Feuer served as the key front-man for the Co-conspirators' fraudulent

---

[9]  WNIC and BCLIC bring cross-claims against Mark Feuer and a number of other persons or
entities that the Receiver has joined as defendants in this action, but WNIC and BCLIC also refer
to this same group of defendants as "third-party defendants" because, if the Court dismisses all
claims against WNIC and BCLIC, WNIC and BCLIC intend to continue to maintain their claims
against this group of defendants in third-party actions.  Hence, for purposes of this pleading,
claims against those who are presently defendants in the Receiver's action are being asserted as
both cross-claims and third-party actions.

activities, lending a patina of respectability to Beechwood that the likes of Nordlicht, Huberfeld and Bodner could not. A critical part of the Co-conspirators' agreement was that Feuer and Taylor should deny that Beechwood was owned, controlled or funded by Platinum and take great pains to conceal those relationships, even though the Co-conspirators acknowledged to each other that Beechwood and Platinum were commonly owned and integrated enterprises. Feuer's and Taylor's vehement denials of the relationships between Beechwood and Platinum were critical ███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████ – but also because Platinum co-founders Nordlicht, Huberfeld and Bodner were known to be disreputable. Thus, throughout the fall of 2013, as Beechwood was negotiating the reinsurance transactions with WNIC and BCLIC, Feuer repeatedly misrepresented Beechwood Re's ownership structure, capitalization and management team to WNIC's and BCLIC's negotiating team, including Timothy Bischof, Fred Crawford and Eric Johnson. As noted above, ████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

484. Cross-claim/third-party defendant the **Feuer Family Trust** is a trust organized under New York law with Feuer's wife or other family members as beneficiaries. Feuer created the Feuer Family Trust as an asset protection vehicle for use in siphoning off and secreting the ill-gotten gains from the Co-conspirators' racketeering activities and placing them beyond the reach of his creditors.

485. Cross-claim/third-party defendant **Scott Taylor** was a founder and President of Beechwood Re as well as the principal of most Beechwood entities. In accordance with the Co-

conspirators' agreement, Taylor, along with Feuer, served as the key front-man for the Co-

conspirators' fraudulent activities, lending a patina of respectability to Beechwood that the likes

of Nordlicht, Huberfeld and Bodner could not.  As was the case with Feuer (and in accordance

with the Co-conspirators' plan), a critical part of the agreement was that Taylor deny that

Beechwood was owned, controlled or funded by Platinum and take great pains to conceal those

relationships, even though the Co-conspirators acknowledged to each other that Beechwood and

Platinum were integrated.

486.    The complete fraudulence of Taylor's denials are exemplified in   All the while, Taylor was denying to

WNIC and BCLIC that Beechwood and Platinum were related.

487.    Thus, throughout the fall of 2013, as Beechwood Capital and Beechwood Re were

negotiating the reinsurance transactions with WNIC and BCLIC, Taylor repeatedly

misrepresented Beechwood Re's ownership structure, capitalization and management team to

WNIC's and BCLIC's negotiating team, including Timothy Bischof, Fred Crawford and Eric

Johnson.  For example, on September 29, 2013, Taylor, on behalf of Beechwood Re and

Beechwood Capital (and with the agreement of the Co-conspirators), misrepresented to WNIC

and BCLIC that Beechwood Re was "[o]wned by three U.S. individuals [Feuer, Taylor and Levy]," was "[c]apitalized with [approx.] $130M of private funds, non-redeemable, with no connection to 'private equity' . . . and all the original capital as surplus ([approx.] $130M)." Those were all lies. ████████████████████████████████████

████████████████████████████████████████████████████████

████████████

488.     Cross-claim/third-party defendant the **Taylor-Lau Family Trust** is a trust organized under New York law with Taylor's wife or other family members as beneficiaries. Taylor created the Taylor-Lau Family Trust as an asset protection vehicle for use in siphoning off and secreting the ill-gotten gains from the Co-conspirators' racketeering activities and placing them beyond the reach of his creditors.

489.     Cross-claim/third-party defendant **David Levy** was a senior manager of both Platinum and Beechwood, sometimes simultaneously (unbeknownst to WNIC or BCLIC), as the Co-conspirators' needs dictated.  Throughout the fall of 2013, while Beechwood was negotiating the reinsurance transactions with WNIC and BCLIC, ██████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ As part of the Beechwood team negotiating with WNIC and BCLIC, Levy misrepresented Beechwood's ownership structure, capitalization and management team to WNIC's and BCLIC's negotiating team, including Timothy Bischof, Fred Crawford and Eric Johnson.  After the Reinsurance Agreements were signed in February 2014, Levy served as the Chief Investment Officer ("**CIO**") for Beechwood Re and BAM and directed the investment of WNIC's and BCLIC's reinsurance trust assets.  Unbeknownst to WNIC and BCLIC (and while owing fiduciaries duties to WNIC

and BCLIC), he secretly directed the Co-conspirators' fraudulent scheme to use WNIC's and BCLIC's reinsurance trust assets as a piggybank for Platinum, while under the secret control of Nordlicht and Platinum.  During that time, Levy served the conspiracy by, among other things, directing the Co-conspirators' manipulation of the consent solicitation of 13.75% Senior Secured Notes in Black Elk Energy Offshore Operations LLC ("**Black Elk**"), in which Levy and the Co-conspirators used WNIC and BCLIC trust assets to purchase millions of dollars in Black Elk senior secured notes, only to then force the trusts to surrender their priority interests in favor of Platinum, so Platinum could abscond with the proceeds (the "**Black Elk Note**" scandal).  Levy is currently being prosecuted for his role in the Black Elk Note scandal, along with Nordlicht, Small and others.[10]  Levy orchestrated the Black Elk Note scandal with the full knowledge of the Co-conspirators, including Feuer and Taylor, while simultaneously serving in senior management positions for both Platinum and Beechwood.

490.    Later, after Co-Conspirators Feuer and Taylor (mis)represented Levy as having "returned" to Platinum and having no further part in directing Beechwood's investment of WNIC's and BCLIC's trust assets, ███████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

---

[10]  The Black Elk Note scandal is described in detail in the indictment in *U.S. v. Nordlicht, et al.*, 16-CR-640 (E.D.N.Y.) (the "**EDNY Indictment**"), as well as the SEC's complaint against certain Platinum entities and Nordlicht, Levy, Small and others in *SEC v. Platinum Management (NY) LLC, et al.*, 16-cv-6848 (E.D.N.Y.) (the "**SEC Complaint**").  WNIC and BCLIC hereby incorporate the allegations of the EDNY Indictment and the SEC Complaint concerning the Black Elk Note scandal into these claims.

491. Third-party defendant **Rick Hodgdon** was a senior manager of Platinum ███

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████

████████████████████████ His Co-conspirators misrepresented Hodgdon as a senior

manager at Beechwood Re all the while he was employed as a senior manager of Platinum.

Hodgdon and his Co-conspirators lived this lie for the better part of two years, starting in July

2013, all the while that Hodgdon's paychecks were coming from Platinum.

492. From the date he started at Platinum in ████████████████████████

██████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████

493. Third-party defendant **Will Slota** was a senior manager of Platinum who, ███

██████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ His Co-

conspirators misrepresented Slota as the Chief Operating Officer of Beechwood Re ████████ all

the while he was employed as a senior manager of Platinum.  Slota and the Co-conspirators lived

this lie for several years, starting in November 2013, ██████████████████████████████

████████████████

494.    Moreover, Slota served as the enforcer within the integrated Platinum-Beechwood

conspiracy for maintaining the deception that Beechwood had no connection with Platinum,

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████

          ██████████████████████████

          ████████████████████████████████████

          ████████████████████████████████

          ████████████████████████████

          ████████████████████████████████

          ██████████████████████

195.    ███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ As discussed in

detail below, ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████" as required under the Reinsurance Agreements.  Lincoln nevertheless

proceeded to issue valuation reports for over a year ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ Slota and the Co-conspirators ██████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████

496.     Cross-claim/third-party defendant **Daniel Small** was a Managing Director of

Platinum who, ███████████████████████████████████████████

███████████████████████████████████████████

███████████████His Co-conspirators misrepresented Small as a Portfolio Manager for

Beechwood Re and BAM, all the while Small was employed as Platinum's Managing Director

███████████████████████.  Small and the Co-conspirators lived this lie for several

years, starting in November 2013, ████████████████████████████████

███████

497.     Small used his dual roles as Platinum's Managing Director and Beechwood Re's

and BAM's Portfolio Manager to direct some of Beechwood's most significant and notorious

investments of WNIC's and BCLIC's trust assets with Platinum-controlled entities.  From early

2014 into the summer of 2014, he directed the Black Elk Note scandal on behalf of the Platinum-

Beechwood Co-conspirators, with extensive help and coordination from Levy (using his Beechwood email address) and Nordlicht and Ottensoser (using their Platinum email addresses). In March 2014, ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ In June 2014, ████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████ As was always the case, none of the Co-conspirators disclosed this self-dealing to WNIC or BCLIC.

498.    Third-party defendant **David Leff** was a senior manager of Platinum who, ██████

█████████████████████████████████████████████

████████████████████████████████████████████████His Co-conspirators misrepresented Leff as a Portfolio Manager for Beechwood Re ███████████

█████████████████████████████████████████████████

As was also the case with Feuer and Taylor, ████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

499.    Leff and the Co-conspirators lived the lie that Leff was a Portfolio Manager for Beechwood Re and BAM for several years, starting in November 2013, ████████████████████

████████████████████████████████████████

█████████████████████████████████████████████████████

██████:



500.    Cross-claim/third-party defendant **Naftali Manela** was a senior manager of

Platinum who, ███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████ His Co-conspirators misrepresented Manela as a Portfolio Manager for

Beechwood Re ████████ all the while Manela was employed as a senior manager (Chief

Financial Officer) of Platinum.  Manela and the Co-conspirators lived this lie for several years,

starting in November 2013, ████████████████████████████████████████████ .

501.    For several years, while purportedly serving as a senior manager at Beechwood

Re and BAM ████████████████████████ [11] Manela was contemporaneously (and without

_____

[11] In a ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████ In any event, he epitomized the Co-conspirators'
admission that Platinum and Beechwood were "integrated," as his communications to Co-
conspirators ███████████████████████████████████████████████████

██████████████████████████████████████████████████████

disclosing the conflict of interest to WNIC or BCLIC) working on behalf of Platinum to further

the Co-conspirators' fraudulent schemes.  For example, ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████.

      502.     Cross-claim/third-party defendant **David Ottensoser** was the General Counsel of

Platinum who, ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████, he represented both parties in

transactions between the two entities, when Beechwood Re was acting ***in its fiduciary capacity***

in investing WNIC's and BCLIC's trust assets in Platinum-controlled entities.  On March 7,

2019, Ottensoser's own attorneys admitted Ottensoser's fraud on the record in open court.  On

--------------------------------

████████████████████████████████████████████████████████████

████████████████████████████████████

that date, Ottensoser's counsel represented that Ottensoser was *never* General Counsel for

Beechwood Re, even though ███████████████████████████████████

██████████████████████████████████████████████. For participating

in the Platinum-Beechwood fraud, among other actions, Ottensoser should be disbarred, in

addition to being held accountable for his racketeering and other liability discussed in this

pleading.

      503.    For example, ████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████, Ottensoser was employed as Platinum's General Counsel ███████

████████████████████.

504.    Cross-claim/third-party defendant **Daniel Saks a/k/a Danny Saks** was a senior

manager of Platinum who, ██████████████████████████████████████████████

██████████████████████████████████████. While purportedly serving in this role

and owing fiduciaries duties to WNIC and BCLIC, Saks directed the investment of WNIC's and

BCLIC's reinsurance trust assets and furthered the Co-conspirators' fraudulent scheme by using

WNIC's and BCLIC's reinsurance trust assets as a piggybank for Platinum, all the while being

under the secret control of Nordlicht and Platinum.  For example, while purportedly serving as

CIO for Beechwood Re and BAM, Saks was continuing to act for Platinum and used his dual

roles in furtherance of the Black Elk Note scandal that Nordlicht directed.  He was also

instrumental in the Co-conspirators' fraudulent scheme to overvalue Platinum-controlled entities,

referred to as "Scheme 1" in the PPVA Action, into which he and other Co-conspirators invested

WNIC's and BCLIC's trust assets.  As set forth below, after the Reinsurance Agreements were

signed, Saks was instrumental in continuing the fraud that Platinum and Beechwood were

unrelated parties.

505.    Third-party defendant **Hokyong Kim a/k/a Stewart Kim** was a senior manager

of Platinum who, ████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████His Co-conspirators misrepresented Kim as the Chief Risk Officer for

Beechwood Re and BAM, all the while Kim was employed as a senior manager of Platinum.

Kim and the Co-conspirators lived this lie starting in November 2013, ████████████████

███████████████████████████. Among other roles that Kim played in the conspiracy,

he was involved in the fraudulent scheme ██████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████.

506.    Third-party defendant **Paul Poteat** was a senior manager of Platinum who,

█████████████████████████████████████████████████████

███████████████████████████████████████████████His

Co-conspirators misrepresented Poteat as the Chief Technology Officer for Beechwood Re ████

████, all the while Poteat was employed as a senior manager of Platinum.  Poteat and the Co-

conspirators lived this lie for several years, ██████████████████████████████████

█████████████████████████████████████████

507.    ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████.  Of course, neither Poteat nor any of the Co-conspirators disclosed

the deceptive Platinum-Beechwood integration to WNIC or BCLIC.  ████████████████████

███████████████████████████████████████████████████████

█████████████████████

508.     Cross-claim/third-party defendant **Dhruv Narain** served as the CIO for

Beechwood Re and BAM starting in January 2016 and directed the investment of WNIC's and

BCLIC's reinsurance trust assets in Platinum-controlled funds and entities.  Within a month or

two of joining Beechwood Re and BAM ███████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████ ███████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[12]  The PPVA Liquidators, the Receiver and SHIP have all taken aim at Narain and his central
role in the Agera transactions, in which Narain invested WNIC's and BCLIC's trust assets.
WNIC and BCLIC hereby incorporate those allegations against Narain in this pleading.

██████████████████████████████████████████████████████████

████████████████████████████████.

509.    Cross-claim/third-party defendant **Beechwood Re** is and always has been an alien insurer not licensed to do insurance business in this state.  It was incorporated as a Cayman Islands insurer in June 2013.  Starting in or around July 2013 and into the summer of 2016, Feuer, Taylor and Levy, on behalf of Beechwood Re and other cross-claim/third-party defendants, repeatedly represented to WNIC and BCLIC, among others, that they owned and controlled Beechwood Re and that there were no other persons who had any material role in owning or controlling Beechwood Re.  These repeated representations were false, as Beechwood Re was owned and controlled by Platinum founders Nordlicht, Huberfeld and Bodner.  Although Feuer, Taylor and Levy represented that a "passive investor" held a minor ownership interest in Beechwood Re, they further represented that the passive investor did not control Beechwood Re and that a confidentiality agreement precluded them from disclosing the passive investor.  These representations were also false, as the "passive" investors – Platinum founders Nordlicht, Huberfeld and Bodner – owned a controlling stake in Beechwood Re and controlled Beechwood Re in fact.  Moreover, it turns out that there was no confidentiality agreement that precluded Beechwood Re, Feuer, Taylor or Levy from disclosing who owned and controlled Beechwood Re.  The Co-conspirators concealed these facts, misrepresented the ownership of Beechwood Re and made misrepresentations about non-existent confidentiality agreements because ███████████

██████████████████████████████████████████████████████████

████████████████████████████████.  After Beechwood Re signed the Reinsurance Agreements with WNIC and BCLIC, Beechwood Re continued perpetrating its fraudulent schemes on WNIC and BCLIC to prevent them from terminating the

Agreements.  Beechwood Re most often perpetrated these continuing fraudulent acts, including breaches of its fiduciary duties, through its designated agents, BAM and BAM Administrative.

510.    As an alien insurer not licensed to do insurance business in this state, Beechwood Re is subject to the provisions of New York Insurance Law Section 1213(c)(1)(A) (the "Security Statute"), which requires an alien insurer, including reinsurers such as Beechwood Re, to post security before it will be permitted to defend itself against insureds or ceding parties, such as WNIC and BCLIC, who seek damages against Beechwood Re.  The Security Statute provides that, before an alien insurer such as Beechwood Re files "***any pleading***" against WNIC or BCLIC, it must first (emphasis added) "deposit with the clerk of the court . . . cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, ***in an amount to be fixed by the court sufficient to secure payment of any final judgment which may be rendered in the proceeding.***"  Beechwood Re has not satisfied this prerequisite to its filing of any pleading against WNIC or BCLIC.

511.    Cross-claim/third-party defendant **Holdings** is and, at all times material to these cross-claims, was the parent company of Beechwood Re and a Delaware corporation with its principal place of business in New York, New York.  Starting in or around July 2013 and into the summer of 2016, Feuer, Taylor and Levy, on behalf of Holdings and others, repeatedly represented to WNIC and BCLIC, among others, that they and only they owned and controlled Beechwood Re, which by definition included Beechwood Re's parent company, Holdings.  These repeated representations were false, as Holdings was owned and controlled by Platinum founders Nordlicht, Huberfeld, and Bodner.  Although Feuer, Taylor and Levy represented that a "passive investor" held a minor ownership interest in Beechwood Re and its parent company, they further represented that the passive investor did not control Beechwood Re and that a

confidentiality agreement precluded them from disclosing the passive investor.  These representations were also false, as the passive investors – Platinum founders Nordlicht, Huberfeld and Bodner – owned a controlling stake in both Beechwood Re and its parent company and in fact controlled those entities.  Moreover, it turns out that there was no confidentiality agreement that precluded Holdings, Beechwood Re, Feuer, Taylor or Levy from disclosing who owned and controlled Beechwood Re and Holdings.  The Co-conspirators concealed these facts, misrepresented the ownership of Beechwood Re and Holdings and made misrepresentations about non-existent confidentiality agreements because ██████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████.

512.    Cross-claim/third-party defendant **Beechwood Capital** was an agent for Beechwood Re, among other Beechwood entities, and was a Delaware limited partnership with its principal place of business in New York, New York.  Starting in or around May 2013 and for several months thereafter, Beechwood Capital, in the persons of Feuer and Taylor, on behalf of Beechwood Re, BAM and others, repeatedly represented to WNIC and BCLIC, among others, that Feuer, Taylor and Levy owned and controlled Beechwood Re and BAM and that there were no other persons who had any material role in owning or controlling Beechwood Re and BAM. These repeated representations were false, as Beechwood Re and BAM were owned and controlled by Platinum founders Nordlicht, Huberfeld, and Bodner.

513.    Cross-claim/third-party defendant **BAM** is and, at all times material to these claims, was an agent and the investment manager for Beechwood Re, among other Beechwood entities, and was a Delaware limited partnership with its principal place of business in New York, New York.  Starting in the fall of 2013, Feuer, Taylor and Levy, on behalf of BAM and

others, repeatedly represented to WNIC and BCLIC, among others, that they owned and controlled BAM and that there were no other persons who had any material role in owning or controlling BAM.  These repeated representations were false, as BAM was owned and controlled by Platinum founders Nordlicht, Huberfeld, and Bodner.  Moreover, after Beechwood Re signed the Reinsurance Agreements with WNIC and BCLIC in February 2014, Beechwood Re continued perpetrating its fraudulent schemes on WNIC and BCLIC (and continued breaching its fiduciary duties to them), through Beechwood Re's designated agents, BAM and BAM Administrative.

514.   Cross-claim/third-party defendant **BAM Administrative** is and, at all times material to these claims, served as an agent for Beechwood Re and BAM, among other Beechwood entities, in administering all aspects of the Reinsurance Agreements with WNIC and BCLIC.  BAM Administrative was a limited liability company organized under Delaware law with its principal place of business in New York, New York.  As noted above, after Beechwood Re signed the Reinsurance Agreements with WNIC and BCLIC in February 2014, Beechwood Re continued perpetrating its fraudulent schemes on WNIC and BCLIC (and continued breaching its fiduciary duties to them), through Beechwood Re's designated agents, BAM and BAM Administrative.

515.   Cross-claim/third-party defendant **BBL** is and, at all times material to these claims, was an entity organized under Bermuda law, with its principal place of business in Bermuda and a place of business in New York.  BBL was a reinsurance company that was licensed as an insurer located in Hamilton, Bermuda, and regulated by the Bermuda Monetary Authority. ██████████████████████████████████████████

███████████Feuer, Taylor and Levy, had represented to WNIC and BCLIC would support

Beechwood Re's obligations to WNIC and BCLIC.  In 2014, however, ███████████ ███████████ diverted the so-called "capital" that supported Beechwood Re's obligations to WNIC and BCLIC ███████████ without disclosing the diversion to WNIC or BCLIC at the time of the diversion.

516.   Cross-claim/third-party defendant **BBIL** is and, at all times material to these claims, was an entity organized under Bermuda law, with its principal place of business in Bermuda and a place of business in New York.  ███████████ ███████████ Feuer, Taylor and Levy, had represented to WNIC and BCLIC would support Beechwood Re's obligations to WNIC and BCLIC.  In 2014, however, ███████████ diverted the so-called "capital" that supported Beechwood Re's obligations to WNIC and BCLIC ███████████ ███████ without disclosing the diversion to WNIC or BCLIC at the time of the diversion.

517.   Third-party defendant PB Investment Holdings Ltd. ("**PB Investment**") is the successor-in-interest to BBIH.  PB Investment is and, at all times material to these claims, was an entity organized under Bermuda law, with its principal place of business in Bermuda.  BBIH was a reinsurance and wealth management company domiciled in Bermuda that issued wealth management products for Beechwood entities.  ███████████ ███████████ Feuer, Taylor and Levy, had represented to WNIC and BCLIC would support Beechwood Re's obligations to WNIC and BCLIC.  In 2014, however, ███████████ diverted the so-called "capital" that supported Beechwood Re's obligations to WNIC and BCLIC ███████████ ███████ without disclosing the diversion to WNIC or BCLIC at the time of the diversion.

518.     This pleading will refer to BBL, BBIL and BBIH (and its successor-in-interest PB Investments) collectively as "**Beechwood Bermuda**."  Cross-claim/third-party defendants the **Beechwood Trusts** are and, at all times material to these claims, were trusts that were established and controlled by Platinum co-founders Nordlicht, Huberfeld or Bodner, except for Trust No. 20, which was established and controlled by Levy.  The Platinum co-founders and Levy created each of the Beechwood Trusts as an asset protection vehicle for use in siphoning off and secreting the ill-gotten gains from the Co-conspirators' racketeering activities and placing them beyond the reach of their creditors.  Each of the Beechwood Trusts is an alter ego of either Nordlicht, Bodner, Huberfeld or Levy (in the case of Trust No. 20 only).  Through Beechwood Trusts Nos. 1 through 19, Nordlicht, Huberfeld and Bodner owned and controlled Beechwood Re, Holdings and BAM, among other Beechwood entities.

519.     Cross-claim/third-party defendants **Beechwood Investments** is and, at all times material to these claims, was, a Delaware limited liability company with its principal place of business in New York, New York.  Beechwood Investments was managed and controlled by Nordlicht and Levy, its President, and the beneficial owners of each Beechwood Series was a Platinum co-founder, Nordlicht, Huberfeld or Bodner.  Nordlicht, as manager of Beechwood Investments, ███████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████.  The Platinum co-founders, with Levy's assistance, used Beechwood Investments as an asset protection vehicle for use in siphoning off and secreting the ill-gotten gains from the Co-conspirators' racketeering activities and placing them beyond the reach of their creditors.  Each Beechwood Series is an alter ego of either Nordlicht, Bodner, Huberfeld or Levy.

520.    Cross-claim/third-party defendants **Beechwood Series, A through I,** are and, at all times material to these claims, were vehicles that were established and controlled by Platinum co-founders Nordlicht, Huberfeld or Bodner for funding and controlling Beechwood.  The Platinum co-founders created each Beechwood Series as an asset protection vehicle for use in siphoning off and secreting the ill-gotten gains from the Co-conspirators' racketeering activities and placing them beyond the reach of their creditors.  Each Beechwood Series is an alter ego of either Nordlicht, Bodner or Huberfeld.  Through each Beechwood Series (and Beechwood Investments generally), Nordlicht, Huberfeld and Bodner owned and controlled Beechwood Re, Holdings and BAM, among other Beechwood entities.

521.    Moreover, Beechwood Investments and each Beechwood Series provided Beechwood Re and other Beechwood entities with the so-called "capital" that Beechwood Re, in the persons of Feuer, Taylor and Levy, had represented to WNIC and BCLIC would support Beechwood Re's obligations to WNIC and BCLIC.  In 2014, however, ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ entities diverted the so-called "capital" that supported Beechwood Re's obligations to WNIC and BCLIC ▮▮▮▮▮▮ ▮▮▮▮▮▮ without disclosing the diversion to WNIC or BCLIC at the time of the diversion.

## STATEMENT OF FACTS

### A.  The Start of the Conspiracy

522.    As has now been revealed in the EDNY Indictment, the SEC Complaint, the PPVA Action and the Complaint in this action, Platinum operated "one of the largest and most brazen investment frauds perpetrated on the investing public," earning Platinum founders and senior managers more than $100 million in fees, which "eventually led to Nordlicht and his Co-

Conspirators [including nine unnamed Co-Conspirators] operating Platinum like a Ponzi scheme, where they used loans and new investor funds to pay off existing investors."[13]

523.    From 2003 to 2015, Platinum reported steady, outsized returns, averaging 17% annually.  It also guaranteed its investors liquidity upon a short 60 to 90-days' notice.  Platinum's investment performance was overstated.  By 2013, however, its key investments and properties, including Black Elk and Golden Gate, were hemorrhaging red ink.  As a result, Platinum was relying almost exclusively on new investments and inter-fund loans to fund investor redemptions.  That is, Platinum was operating as a "Ponzi-esque scheme."

524.    Platinum co-founders Nordlicht, Huberfeld and Bodner were acutely aware of the need to attract significant sources of outside funding, particularly from institutional investors such as insurers and pension funds, to be able to continue to pay redemptions to investors and keep this Ponzi-esque scheme afloat.

525.    However, they also knew that the world of institutional investors was closed to Platinum.  Institutional investors, like CNO, WNIC and BCLIC, would not make significant (or any) investments in the high-risk Platinum funds, much less entrust trust assets to the kind of individuals associated with Platinum.  Huberfeld, Nordlicht and Bodner each had checkered pasts.

526.    Nordlicht, for example, had an entrenched reputation for making speculative investments with unsavory companies and individuals.  And Huberfeld and Bodner both had

---

[13] *Platinum Partners Execs Charged in $1B mini-Madoff Fraud*, December 19, 2016, USA Today, available at http://www.usatoday.com/story/money/2016/12/19/platinum-partners-execs-charged-1b-fraud/95605808/.

96

criminal records, having each pled guilty to possession of false identification with the intent to defraud after they had imposters take their Series 7 securities broker examination in their stead.[14]

527.    The number of strikes against the Platinum founders did not end there.  Around 1996, Huberfeld was the target of an SEC administrative complaint.  The SEC accused Huberfeld and his then-firm of buying unregistered shares of a Canadian company at a discount and mischaracterizing the purchase as a loan.  Huberfeld consented to the issuance of an order finding that he violated Section 5 of the Securities Act and agreed to disgorge over $425,000, representing profits he made on the transaction.[15]

528.    Around 1998, the SEC alleged that Huberfeld and Bodner had covertly received over 513,000 shares of restricted stock as collateral for a loan.  The two then allegedly sold the shares for a profit of $3.7 million in violation of the securities laws.  The two settled the case without admitting or denying liability, and were ordered to disgorge profits and interest exceeding $4.6 million and pay civil penalties of $15,000 each.[16]

529.    Nordlicht was involved in numerous scandals of his own.  In 2007, a fund he was operating, Optionable Inc., collapsed in a trading scandal.  In 2010, one of the fund's co-founders, Kevin Cassidy, was arrested and charged with two counts of securities fraud, two counts of wire fraud, one count of conspiracy to commit wire fraud and make false bank entries,

---

[14] Jacqueline Doherty and Bill Alpert, *Let's Make a Deal*, The Wall Street Journal, June 26, 2000, available at https://www.wsj.com/articles/SB961809089257919116; Ann Hagedorn, *U.S. Probes Alleged Scam in Broker's Test*, The Wall Street Journal, Mar. 15, 1990, available at https://www.deepcapture.com/wp-content/uploads/Scores-Obstfeld-Grin-and-More.pdf.  Also involved in this ring of fraudulent test takers were brothers Jacob and Aaron Elbogen. Hagedorn, *id*.  While secretly controlling Beechwood, Huberfeld had Beechwood invest substantial amounts of WNIC's and BCLIC's reinsurance trust assets in an enterprise led by the Elbogens, Ace Foundation.

[15] Doherty and Bill Alpert, *Let's Make a Deal*, *id*.

[16] *Id.*

and one count of aiding and abetting the making of false bank entries.  In August 2011, Cassidy

pleaded guilty to one count of committing wire fraud and was sentenced to 30 months of

imprisonment.  He had previously served two prior stints in prison.[17]  When he was released

from prison in 2014, Nordlicht had Cassidy installed as the *managing director* of Agera Energy,

a distressed company that Platinum had recently acquired.

530.    It was in this context that the Platinum-Beechwood conspiracy and fraud scheme

was born:  in or around 2013, Nordlicht, Huberfeld and Bodner, along with Huberfeld's nephew,

David Levy, devised a scheme to obtain institutional investor capital by defrauding institutional

investors like WNIC and BCLIC into entrusting their assets with front men who would hide their

relationship with Platinum and its founders.

531.    They found the willing front men and Co-conspirators in the persons of Mark

Feuer and Scott Taylor and their current enterprise, Beechwood Capital.

532.    In early 2013, .  The conspirators

agreed to establish a reinsurance company, Beechwood Re, and use it as the vehicle for

fraudulently inducing insurers to hand over funds to Beechwood, via reinsurance agreements or

otherwise, so that Beechwood could use those funds to keep Platinum afloat, thereby enriching

the Co-conspirators.  The Co-conspirators used the mails and wires of interstate commerce to

---

[17]  *See*, *e.g.*, Roddy Boyd, *It's All in the Family*, New York Post, Apr. 16, 2007, available at
https://nypost.com/2007/04/16/its-all-in-the-family-2; SEC Press Release: *SEC Charges Banker
and Brokerage Executives With Multi-Million Dollar Financial Fraud*, Nov. 18, 2008, available
at https://www.sec.gov/news/press/2008/2008-274.htm; Bill Singer, *Commodities CEO Gets 30
Months in Prison in Mark to Market Scheme*, Forbes, Apr. 26, 2012, available at
https://www.forbes.com/sites/billsinger/2012/04/26/commodities-ceo-gets-30-months-in-prison-
in-mark-to-market-scheme/#19bc4b370c88.

carry out these schemes. Beechwood Re served as the racketeering enterprise through which Nordlicht, Huberfeld, Feuer, Taylor, Levy, Bodner, Beechwood Capital and their many colleagues perpetrated a pattern of racketeering activity over several years aimed at WNIC, BCLIC, Senior Health Insurance Company of Pennsylvania ("**SHIP**") and other insurers, with Feuer, Taylor and Levy as the front men.

533.    The Co-conspirators agreed that ████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████.

534.    The Co-conspirators came to terms on their agreements in or around ████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

99

█████████████████████████████████████████████████████

██████████████████.

535.     It was in this context that Beechwood Re, the reinsurer critical to executing the fraud scheme, was established and integrated with Platinum.

**B.   The Co-Conspirators Defraud WNIC and BCLIC**

536.     By 2013, WNIC and BCLIC were in the market to reinsure certain blocks of their long-term care business.  In May 2013████████████████████████████████████ Feuer and Taylor presented themselves under the name of Beechwood Capital and represented that they were developing a "new entrant into the life and health reinsurance market," Beechwood Re.  They assiduously concealed that Platinum founders Nordlicht, Huberfeld and Bodner were controlling and bankrolling them.  On behalf of Beechwood Capital and the yet-to-be formed Beechwood Re, they stated their intention to submit a proposal for WNIC's and BCLIC's reinsurance business.  They held themselves out as legitimate businessmen who would establish a world-class reinsurance company, with at least $100 million in capital that they would prudently invest and manage WNIC's and BCLIC's reinsurance trust funds.  Ultimately, both WNIC and BCLIC entered into a reinsurance agreement with Beechwood Re (the Reinsurance Agreements), which incorporated as a Cayman Islands insurer in the summer of 2013.

537.     Feuer, Taylor and Levy induced WNIC and BCLIC to enter into the Reinsurance Agreements with a pack of lies.  The lies centered on four subjects.  Feuer, Taylor and Levy repeatedly misrepresented (a) who owned Beechwood Re and the other Beechwood entities; (b) Beechwood Re's capital; (c) how Beechwood Re would invest the assets that WNIC and BCLIC would transfer to Beechwood Re under reinsurance agreements; and (d) who would control and

operate Beechwood Re and other Beechwood affiliates.  In short, they lied about practically

everything that mattered for the reinsurance deals.

### a.  Misrepresentations about the Control and Ownership of Beechwood

538.    Beechwood Re and Beechwood Capital, in the persons of Feuer, Taylor and Levy,

██████████████████████████████████████████████████████████████████

████████████████████████████████████████.  Accordingly, from their

earliest contacts with WNIC and BCLIC in 2013 through the signing of the Reinsurance

Agreements in February 2014, Beechwood Capital, Beechwood Re, Feuer, Taylor and Levy

repeatedly misrepresented the ownership structure of Beechwood.  They misrepresented that

only Feuer, Taylor and Levy owned and controlled Beechwood Re, its parent company

(Holdings) and BAM.

539.    Beechwood Re, Beechwood Capital and BAM, in the persons of Feuer, Taylor,

Levy and Hodgdon, made these misrepresentations about the ownership structure and control of

Beechwood in several written presentations to WNIC and BCLIC.  On July 2, 2013, Taylor,

Hodgdon and Levy, on behalf of Beechwood Re, Holdings, Beechwood Capital and BAM, sent

WNIC and BCLIC a written presentation with these misrepresentations.[18]

540.    In that presentation, Feuer, Taylor, Hodgdon and Levy misrepresented that only

Feuer, Taylor and Levy owned and controlled Beechwood Re, its parent company and BAM.

█████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

---

[18]  ████████████████████████████████████████████████████████████
████.

541.    On September 29, 2013, the Co-conspirators made new sets of misrepresentations to WNIC and BCLIC about the ownership and control of Beechwood.  On that date Taylor, on behalf of Beechwood Re, its parent company, Beechwood Capital and BAM (and with the agreement of the Co-conspirators), misrepresented to WNIC and BCLIC in an email that Beechwood Re was "[o]wned by three U.S. individuals [Feuer, Taylor and Levy]."  He further misrepresented that Beechwood had "no connection to 'private equity.'"  In fact, at that time, Beechwood was funded, owned and controlled by private equity in the persons of Nordlicht, Huberfeld and Bodner.

542.    These representations were knowingly false.  The Co-conspirators'



.  Moreover, the Co-conspirators had no confidentiality agreement that precluded them from revealing Beechwood's ownership structure.  They misrepresented the ownership structure to WNIC and BCLIC and concealed                         control and ownership of Beechwood precisely because

.  WNIC and BCLIC would not enter into reinsurance deals with entities owned, controlled and funded                         particularly those with the checkered pasts that Nordlicht, Huberfeld and Bodner had.  In entering into the Reinsurance Agreements, WNIC and

102

BCLIC reasonably relied, to their detriment, on the misrepresentations by Beechwood Re, Beechwood Capital, Feuer, Taylor and Levy about the ownership structure of Beechwood.

### b.  Misrepresentations about Beechwood's Capital

543.    Beechwood Re, Beechwood Capital, Feuer, Taylor and Levy knew that acquiring WNIC's and BCLIC's insurance policy liabilities in reinsurance deals would expose Beechwood Re to financial risk and that, before entering into reinsurance deals, WNIC and BCLIC would need assurances from them that Beechwood Re had substantial capital to bear such risks. Accordingly, starting in the summer of 2013, through the signing of the Reinsurance Agreements in February 2014, Beechwood Capital and Beechwood Re, in the persons of Feuer, Taylor and Levy, repeatedly misrepresented to WNIC and BCLIC the capital of Beechwood Re and its corporate parent.  Beechwood Capital, Beechwood Re, Feuer, Taylor and Levy repeatedly misrepresented to WNIC and BCLIC that Beechwood had over $100 million in capital, when in fact Beechwood Re and Holdings had less than $300,000 in capital.

544.    The misrepresentations began in the summer of 2013.  On July 8, 2013, Beechwood Re, Beechwood Capital, Feuer, Taylor and Hodgdon sent WNIC and BCLIC a slide deck that falsely represented that Beechwood Re had over $100 million in "capital, with access and intent to fund up to $500 million additional over coming years."  This was a lie. ██████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████.  That was also a lie.  As described below, Beechwood was not capitalized with over $100 million.  It had less than $300,000 in capital.

545.    Instead, Beechwood Re, Beechwood Capital, Feuer, Taylor, Hodgdon and Levy, along with the Nordlicht Group, devised a scheme to have ████████████████████

issue a *demand note* in the amount of $100 million (the "**Demand Note**") and disguise the issuers of the note under the name ██████████████████ Beechwood Re, Beechwood Capital, Feuer, Taylor, Hodgdon and Levy continued to repeatedly represent to WNIC and BCLIC that Beechwood had over $100 million in capital and that most of that capital came from the individual funds of Feuer, Taylor and Levy.

546.    The Co-conspirators, led by Beechwood Capital, Beechwood Re, Feuer, Taylor, Levy and Hodgdon, hid the existence of the Demand Note from WNIC and BCLIC for at least two reasons: ████████████████████████████████████

████████████████████████████████████████████████

██████████    The Co-conspirators knew that WNIC and BCLIC would not enter into reinsurance deals in which ████████████████████████████████████████

██████████    So, Beechwood Re, Beechwood Capital, Feuer, Taylor, Levy and Hodgdon concealed the truth and misrepresented to WNIC and BCLIC that Feuer, Taylor and Levy themselves had over $100 million in "capital."

547.    In accordance with the agreement of the Co-conspirators, this deceptive scheme included their forwarding to WNIC and BCLIC a letter to David Levy, dated September 10, 2013, vouching that Beechwood Re had "between $100 million and $130 million" of "capital," and that "Beechwood Re Ltd is also investing $10 million in cash." Contemporaneously, Feuer and Taylor also provided WNIC and BCLIC with an "Unaudited Balance Sheet [dated] September 1, 2013," representing that Beechwood Re had total assets of $114,801,585, with no liabilities. In forwarding these documents to WNIC and BCLIC (and in perpetrating this deceptive scheme generally), the Co-conspirators used the mails and wires of interstate commerce. Feuer and Taylor, among other Co-conspirators, made the same or similar

representations to insurance regulators in New York, Indiana and other jurisdictions to convince the regulators to approve (or not disapprove) the Reinsurance Agreements that were ultimately signed.

548.    These representations were knowingly false.  First, Beechwood Re, Beechwood Capital, Feuer, Taylor and Levy ████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████ It was funded with less than $300,000 in cash, *i.e.*, capital.  ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████, which the Receiver and plaintiffs in the PPVA Action have acknowledged were fraudulently overvalued.  Co-conspirator Dhruv Narain described this collateral ██████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████.

549.    The falsity of the Co-conspirators' representations regarding Beechwood's capital has been confirmed by the people now in control of Beechwood Re.  In 2017, after the Cayman Islands insurance regulator, the Cayman Islands Monetary Authority ("**CIMA**"), assumed control of Beechwood Re and appointed Controllers to take the reins, the Controllers ████████

████████████████████████████████████████████████████████

████████████████████████████.  The Co-conspirators had misrepresented Beechwood's capital position to WNIC and BCLIC and concealed the true capital position of

Beechwood Re and its parent company precisely because they knew WNIC and BCLIC would not enter into $600 million in reinsurance deals with Beechwood if the Co-conspirators revealed that it was capitalized with less than $300,000.  WNIC and BCLIC reasonably relied on the Co-conspirators' misrepresentations, to their detriment, in entering into the Reinsurance Agreements – just as the Co-conspirators intended and knew would happen.

### c.   Misrepresentations about Beechwood's Investment Plans

550.    Under the Reinsurance Agreements between WNIC and BCLIC, on the one hand, and Beechwood Re, on the other hand, WNIC and BCLIC were to transfer almost $600 million in assets to Beechwood Re to ensure that future liabilities to policyholders were met, and Beechwood Re was to place those assets in reinsurance trust accounts to ensure that the assets would be preserved for that purpose.  Beechwood was to be responsible for investing these assets in the reinsurance trust accounts and safeguarding them for use in covering future policyholder liabilities.

551.    During the parties' negotiations, Beechwood and the Co-conspirators misrepresented Beechwood's intentions and abilities as to how it would invest the funds in those reinsurance trust accounts.  These misrepresentations took many forms, but all of these misrepresentations were made using the mails and wires of interstate commerce.

552.    *First*, █████████████████████████████████████████████████████ █████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████.

553.     Beechwood was required – under both the governing insurance laws and regulations and the Reinsurance Agreements – to grant WNIC and BCLIC "first priority security interests" in the assets in the trust accounts.  State insurance regulations in both New York and Indiana, among other jurisdictions, require significant protections for policyholders when an alien reinsurer, such as Beechwood Re, assumes ceded policyholder liabilities from licensed insurers such as WNIC and BCLIC.  When, as was the case here, the parties to the reinsurance transactions chose to protect policyholder interests by ensuring that the alien reinsurer preserve the transferred assets in reinsurance trusts, insurance laws require that the ceding insurers receive a "first priority security interest" in reinsurance trust accounts, so that the assets will be maintained for the payment of valid policy claims.

554.     ███████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████

555.     ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

556.   Specifically, Beechwood ████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

557.   ████████████████████████ By approximately February 2014, it had
entered into the Reinsurance (and accompanying) Agreements with WNIC and BCLIC, under
which Beechwood Re granted WNIC and BCLIC a "first priority security interest" in the
respective reinsurance trust accounts established with each insurer (as the law required), ██████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████



558.

559.

560.

[19] For example,

561. ███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████ And, that's exactly what Beechwood and the Co-

conspirators did ██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

███████████████████████

### 2. *The false promise of safe investments*

562.   *Second*, Beechwood Re, Beechwood Capital and BAM, in the persons of Feuer,

Taylor and Levy, ████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████

███████████████ They repeated those and similar representations to WNIC and BCLIC

throughout the parties' negotiations of the Reinsurance Agreements.

563.   All of these representations were false, and Feuer, Taylor, Levy and the other Co-

conspirators knew them to be false when they made them.  Unbeknownst to WNIC and BCLIC,

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████ so that Beechwood Re could access institutional investor funds, without the investors

knowing that Platinum was controlling those entities, and Beechwood Re and BAM would then

invest the fraudulently obtained funds in Platinum-controlled funds and investments.

564.    Feuer, Taylor and Levy, as well as the other Co-conspirators, knew that the

Platinum-controlled funds and entities into which they intended to invest WNIC's and BCLIC's

trust assets, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

*3.   The lie about Beechwood's investment process*

565.    *Third*, Beechwood Re, Beechwood Capital, Feuer, Taylor and Levy repeatedly

misrepresented to WNIC and BCLIC the process by which Beechwood would invest WNIC's

and BCLIC's reinsurance trust assets. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████

566.     These representations were false, and Feuer, Taylor, Levy and the other Co-conspirators (including Nordlicht, Bodner and Huberfeld) knew them to be false when they made them.  Long before ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

567.     And, ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ Beechwood never disclosed the true facts to WNIC or BCLIC.

### 4.  The lie about Levy's qualifications

568.     *Fourth*, during negotiations with WNIC and BCLIC, Beechwood Re and Beechwood Capital, in the persons of Feuer, Taylor and Levy, repeatedly misrepresented Levy's qualifications as the CIO that would purportedly lead the Beechwood team investing WNIC's and BCLIC's trust assets.  As noted above, Levy's title of "CIO" was a charade, a fraud.  ████

569.    These representations about David Levy's ███████████████

### 5. The lie about "independent" valuations

570.  *Fifth*, during negotiations with WNIC and BCLIC, Beechwood repeatedly represented that it would retain a valuation company to provide "independent" valuations for the investments of WNIC and BCLIC reinsurance trust assets that Beechwood Re made. Beechwood Re and Beechwood Capital, in the persons of Feuer, Taylor and Levy, made these representations to WNIC and BCLIC on several occasions.  First, they made them in a June 2013 Powerpoint presentation that they sent to WNIC and BCLIC.  Second, ███████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████

571.  These representations were false, and Feuer, Taylor, Levy and the other Co-conspirators knew them to be false when they made them.  In fact, ████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████

### d. Misrepresentations about the Beechwood Management Team

572.    Beechwood engaged in a continuous charade during the period that it negotiated reinsurance arrangements with WNIC and BCLIC (and for several years thereafter).  Beechwood continuously misrepresented its senior management team as being employed by Beechwood Re or its agent and investment manager, BAM, when in fact most of its senior management team was either employed by Platinum or shuttled back and forth between Beechwood and Platinum entities in a revolving door arrangement.  As the Co-conspirators stated in the Co-conspirators' Confession Email: "beechwood and platinum really are integrated."

573.    That, however, was not what Beechwood Re and Beechwood Capital told WNIC and BCLIC.  Instead, the Co-conspirators, led by Feuer, Taylor and Levy, represented individuals as being senior managers of Beechwood or BAM when they were in fact senior managers of Platinum ██████████████████████████████████████ And, after the Reinsurance Agreements were signed, when WNIC and BCLIC began noticing that Beechwood was investing trust assets in many Platinum-controlled funds and entities and inquired whether Beechwood and Platinum were connected, Beechwood, in the persons of Mark Feuer and Scott Taylor, vehemently denied any connection.

574.    The charade began ██████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████ He lived this lie for several years, as he

and his Co-conspirators kept up this charade with WNIC and BCLIC day-in and day-out.

575.   Levy joined in the charade around the same time.  From the moment he was

introduced to WNIC and BCLIC in 2013 until the end of the year, Levy represented himself as

Beechwood's and BAM's CIO.  Feuer, Taylor and Hodgdon played along, repeatedly making the

same representations.  The representations were all false.  ████████████████ Levy was

employed as a senior manager of Platinum ██████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

576.   ████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████

116

███████████████████████████████████████████████████████

███████████████████████████████████████████

577.    Accordingly, at the November 8 meeting, Beechwood Re, BAM and Beechwood Capital trotted out a roomful of so-called "Beechwood" senior managers to WNIC and BCLIC, when in fact most (other than Feuer and Taylor) were Platinum senior managers.  All of the following Co-conspirators played their part in this charade, ████████████████████ ███████████████████████████████████████████████ ████████████████████:

- Hodgdon, as noted above;

- Will Slota, represented to be the Chief Operating Officer of Beechwood Re, while being ███████ employed by Platinum;

- David Ottensoser, represented to be the General Counsel of Beechwood Re, while being ███████ employed ████████████████Platinum;

- Paul Poteat, represented to be the Chief Technology Officer of Beechwood Re, while being ███████ employed by Platinum. ████████████████████████ ██████████████████████████████████████ ████████████████████████

- ██████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████ ██████████

- David Leff, represented to be a Portfolio Manager for Beechwood Re, ████████████ ██████████████████████;

- Daniel Small, represented to be a Portfolio Manager for Beechwood Re, while being ██████ employed by Platinum.

578.   ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████.

579.   The Co-conspirators maintained this charade long after the Reinsurance Agreements were signed on February 10, 2014.  ████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████For

example, in late 2014, Levy left Beechwood, but returned to Platinum.  Nordlicht then replaced

Levy with Platinum's Danny Saks, who became Beechwood's and BAM's CIO.  ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████.

580.    Nothing changed when Saks left at the end of 2015 and Narain replaced him as

CIO for Beechwood Re and BAM in 2016.   ███████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████████  To

the contrary, Feuer, Taylor, Saks, Narain, Kim and the other Co-conspirators denied that there

was any relationship between Platinum and Beechwood – often vehemently, in the case of Feuer

– and totally concealed Platinum's control over Beechwood.  They hid from WNIC and BCLIC

what Co-conspirators admitted: that the two were "integrated."  *See* Ex. 31 to the First Amended

Complaint in the PPVA Action.

581.    As to each and every one of the Co-conspirators' misrepresentations identified

above, WNIC and BCLIC reasonably relied on the representation and were induced to enter into

the Reinsurance Agreements thereby.  WNIC and BCLIC each relied on each of the above misrepresentations, among others, to their detriment, and suffered damages as a result.

582. ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

583. ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████

584. ████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████

585. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████[20]

586. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

████████; and (d) that Platinum and Beechwood were integrated, with their senior managers

shuttling back and forth between Platinum and Beechwood.

587. ██████████████████████████████████████████

███████████████████ even in late 2016 as the SEC was serving subpoenas all over town

seeking more information about the Platinum-Beechwood relationship, and the media was

reporting on Platinum's problems as Huberfeld was arrested ██████████████████████

██████████████

---

[20] The SEC issued its Examination Findings on or about September 22, 2015.  Although the SEC investigated Platinum's relationship to Beechwood, the SEC's detailed report identifying dozens of violations on the part of Platinum does not even mention Beechwood.  The Co-conspirators apparently fooled their lawyers and the SEC about the Platinum-Beechwood relationship, just as they fooled WNIC and BCLIC.

588.   ███████████████████████████████████████████
████████████████████████████████████████
███████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████
█████████████████████████████████████

589.   That was a lie.   ████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████    ████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████

590.   ████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████████████████████████

---
[21] ████████████████████████████████████████████████
████████████████████████████



591.

That was a lie, of course.

592.     Conspiracies work only when they are kept secret.  The Co-conspirators went to extraordinary lengths to hide from everyone that Beechwood Re was, as the Receiver has admitted, part of Platinum and its alter ego.  Each of the cross-claim and third-party defendants sued herein intentionally and voluntarily took part in the conspiracy and the effort to keep it a secret, thus making them liable to BCLIC and WNIC.

**C.  Key Provisions of the Reinsurance Agreements**

593.     WNIC and BCLIC signed their respective Reinsurance (and accompanying) Agreements with Beechwood Re on February 10, 2014.

594.     Under the Reinsurance Agreements, Beechwood Re assumed control over claims administration for the ceded long-term care insurance policies, and WNIC and BCLIC transferred almost $600 million, largely in cash, into reinsurance trusts for each of WNIC and BCLIC, respectively, to be invested and managed by Beechwood Re and its agents, BAM and BAM Administrative, subject to investment guidelines prescribed by the Reinsurance

Agreements.  The assets in the trusts were intended to serve as reliable (*i.e.*, safe and liquid) collateral for Beechwood Re's obligations to reimburse WNIC and BCLIC for claims on the transferred liabilities, and for WNIC and BCLIC to obtain reserve credits in accordance with insurance regulations.  Beechwood Re's promises concerning the management and investment of the trust assets were essential to WNIC's and BCLIC's agreement to reinsure the transferred business with Beechwood Re.

595.    The Reinsurance Agreements and investment guidelines afforded Beechwood Re, BAM and BAM Administrative considerable discretionary authority to manage the assets in WNIC's and BCLIC's trust accounts.  However, there were various requirements pursuant to which Beechwood Re had no discretion.

596.    *First*, Beechwood Re was required to deposit assets into the primary reinsurance trust accounts for WNIC and BCLIC with an aggregate fair market value of 102% of the statutorily required reserves (*i.e.*, policy liabilities) for each.  Beechwood Re was required to maintain these trust accounts so that they contained "Qualifying Trust Assets" meeting contractual thresholds. These trust account assets thus served as collateral for Beechwood Re's obligation to pay future claims on the reinsured policies.  For purposes of calculating whether contractual thresholds were met, only trust assets in compliance with the Reinsurance Agreements' investment guidelines qualified, and the Agreements defined "Qualifying Trust Assets" to include cash, certificates of deposit, or specific kinds of investments permitted under New York and Indiana insurance laws, not including investments in which either party or its affiliates had an interest, or investments in insolvent entities.  As it turned out, Beechwood Re routinely filled the reinsurance trusts with investments in Platinum-controlled funds and entities (among other non-arm's-length

investments), while valuing these investments as if they were "Qualifying Trust Assets," when in fact they were not; they were the product of self-dealing.

597. *Second*, Beechwood Re was required to provide to WNIC and BCLIC written valuation reports from an outside vendor that demonstrated the "fair market value" of assets in the trusts. "Fair market value" was defined as the "price for which an asset would be sold in a transaction on the open market between an unrelated buyer and seller." The reports were required to contain supporting detail and other information necessary for WNIC and BCLIC to verify that the assets were properly valued. Implicit in this requirement was that the outside vendor would independently prepare its valuation opinions. Beechwood Re, BAM and BAM Administrative routinely provided quarterly reports that were the antithesis of independent valuations by an outside vendor; instead, they were designed to support *Beechwood's* own internal valuations of its investments, which valued and treated its investments in Platinum-controlled funds and entities as if they had been negotiated "between an unrelated buyer and seller," when in fact they had not been. They were the product of self-dealing.

598. *Third*, at the end of each quarter, the Reinsurance Agreements required Beechwood Re to top-up the trusts in the event that the fair market value of the assets in the trusts fell below 102% of the amount of the statutory liabilities ceded to Beechwood Re. However, if the fair market value of the trust assets exceeded contractual thresholds, Beechwood Re was permitted to withdraw funds from the trusts as "surplus" and distribute them as it saw fit. Whether a "surplus" existed would be determined based on the valuations set forth in the outside vendor's valuation reports. Over the course of the parties' relationship, Beechwood Re routinely and repeatedly avoided its obligation to top-up the trusts under its (and BAM's and BAM Administrative's) bogus representations that the fair market value of the trust assets exceeded the contractual thresholds –

125

representations that were supported by Lincoln's bogus "independent" valuation reports. In fact, its "fair market valuations" – and those of the non-independent valuation and rating agencies it retained to support its bogus valuations – ignored that their valuations of the egregious investments in Platinum-controlled funds and entities assumed that such investments were made "between an unrelated buyer and seller," when in fact they had not been. They were the product of self-dealing.

599. *Fourth*, Beechwood Re was required to maintain supplemental trust accounts as overcollateralization of Beechwood Re's obligations. Under the Reinsurance Agreements, the Supplemental Trusts must contain assets with an aggregate fair market value equal to the greater of 5% of the trust amounts and the supplemental trust amounts. Both the WNIC and BCLIC supplemental trust accounts were governed by investment guidelines very similar to or the same as the investment guidelines governing the WNIC primary trust account. Beechwood Re routinely invested supplemental trust assets in Platinum-controlled funds and entities and treated those investments as if they were made "between an unrelated buyer and seller." They were instead the product of egregious self-dealing.

600. *Fifth*, Beechwood Re was permitted to seek the withdrawal of assets from the supplemental trusts, but only if, at the end of a quarter, the fair market value of the assets in the supplemental trusts exceeded the greater of 5% of the trust amounts and the supplemental trust amounts, and the value of "Qualifying Trust Assets" was determined to exceed 102% of the statutorily required reserves. If, however, at the end of the quarter, the fair market value of the assets in the supplemental trusts was less than the greater of 5% of the trust amounts and the supplemental trust amounts, then Beechwood Re was required to make deposits into the supplemental trusts to bring the aggregate fair market value of supplemental trust assets to no less than the greater of 5% of the trust amounts and the supplemental trust amount. Beechwood Re

demanded to withdraw assets from the supplemental trusts quarterly, under its bogus representations that the fair market value of the supplemental trust assets exceeded the contractual thresholds. In fact, its "fair market valuations" – and those of the non-independent valuation and rating agencies it retained to support its bogus valuations – ignored that their valuation of the investments in Platinum-controlled funds and entities assumed that such investments were made "between an unrelated buyer and seller," when those investments were instead the product of egregious self-dealing.

601. *Sixth*, both Reinsurance Agreements and their accompanying trust agreements (the "**Trust Agreements**") required that, when depositing assets or investments into the trust accounts, Beechwood Re was required to "execute assignments, endorsements in blank or transfer legal title to the trustee . . . in order [so that WNIC and BCLIC] may whenever necessary negotiate the trust assets without the consent or signature of [Beechwood Re] or any other entity." Beechwood Re failed to comply with these provisions.

602. Schedule 3.3 of the WNIC Reinsurance Agreement required Beechwood Re to provide WNIC and BCLIC annually with Beechwood Re's "audited financial statements." Beechwood Re failed to comply with these provisions.

603. In the event that the Reinsurance Agreements were terminated and WNIC and BCLIC were required to recapture the trust assets to pay claims, the Agreements provided that Beechwood Re was required to pay WNIC and/or BCLIC "cash or admitted invested assets having a fair market value equal to the statutory reserves attributable to the liability being recaptured." Beechwood Re was also required to repay a pro rata portion of the ceding commission WNIC paid upon execution of the Agreements. Beechwood Re failed to comply with these provisions.

127

**D. The Fraud Continues after the Reinsurance Agreements are Signed**

604.     After WNIC and BCLIC entered into their separate Reinsurance Agreements with
Beechwood Re in February 2014, the Co-conspirators continued perpetrating their frauds on
WNIC and BCLIC.  Shortly after signing the Agreements, WNIC and BCLIC began transferring
almost $600 million to the reinsurance trusts for Beechwood Re to invest.  Within *ten minutes* of
Beechwood Re's beginning to receive these assets, Feuer and Taylor contacted Huberfeld and
Nordlicht to notify them that the funds were pouring in.  Their scheme was working.[22] ███

██████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████

605.     The leaders of the conspiracy – ███████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████

---

[22] *Adviser With Ties to Hedge Fund Platinum Put Client Funds in It*, The Wall Street Journal,
Sept. 17, 2016, available at http://www.wsj.com/articles/adviser-with-ties-to-hedge-fund-
platinum-put-client-funds-in-it-1473997753 (the "**9/17 WSJ Article**") ("Less than 10 minutes
after Beechwood received word that money for its first transaction had arrived, Beechwood's
founders notified Nordlicht and Huberfeld, documents reviewed by the Journal show.").

606.    In the next two and a half years after the Reinsurance Agreements were signed,

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████ used the reinsurance trust assets as a piggybank to enrich themselves and

further the Platinum Ponzi-esque scheme, abusing their fiduciary duties to WNIC and BCLIC, as

the trust beneficiaries.  The Co-conspirators admitted owing these fiduciaries duties.  For

example, before the Reinsurance Agreements were signed, Hodgdon admitted as much in an

October 7, 2013 email he sent to Tim Bischof, copying Co-conspirators Feuer, Taylor and Levy

acknowledging that Beechwood Re and its affiliates had duties "to protect the asset base" of

WNIC's and BCLIC's reinsurance trusts due to "the fiduciary character of the insurance

business."

607.    After the Reinsurance Agreements were signed, ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████

608.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

609.     Instead of observing their fiduciary duties, however, the Co-conspirators abused their discretionary authority under the Reinsurance Agreements and the accompanying investment guidelines to invest the reinsurance trust assets in Platinum-controlled funds and entities in non-arm's-length transactions designed to benefit themselves and Platinum.  To the outside world, however, particularly WNIC and BCLIC, the Co-conspirators misrepresented these investments as being at arm's-length, repeatedly denying that Beechwood had any relationship to Platinum, even though, as Bodner and Huberfeld admitted to each other, Beechwood and Platinum were "integrated."  They similarly misrepresented the investments as being at arm's-length to regulators and the valuation and ratings companies they retained, except that

610.

These investments, like the ones in Platinum-controlled funds and entities, were not suitable for the investment of assets that backed insurance

130

policy liabilities. ███████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████ Investments

with these entities were similarly not suitable for assets that backed insurance policy liabilities.

a. **Continuing Misrepresentations about Ownership and Control of Beechwood**

611.     The Co-conspirators continued perpetrating their frauds on WNIC and BCLIC in the process of abusing the discretionary authority that Beechwood Re and its agents had over the transferred assets.  For example, they continued misrepresenting the ownership interests in and control over Beechwood.  Almost immediately after the Reinsurance Agreements were signed,

████████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ WNIC and BCLIC representatives noticed

these data points and began asking about it.  Over the telephone, Levy told WNIC and BCLIC representative Eric Johnson, among others, that there was no relationship between Beechwood and Platinum.

612.     When Johnson and other WNIC and BCLIC representatives continued noticing these data points – that is, Beechwood's investment of trust assets in funds or entities controlled by Platinum – they called for a meeting.  At a face-to-face meeting in New York in late March 2014, Feuer, Taylor and Levy specifically denied (again) the existence of any relationship between Beechwood and Platinum, even though Platinum co-founders Nordlicht, Huberfeld and

Bodner owned majority positions in and controlled Beechwood Re, Holdings (its parent

company), BAM and BAM Administrative.  The Co-conspirators continued concealing the truth

– that Beechwood and Platinum were commonly owned and controlled by the Platinum co-

founders – by telling the lie that Beechwood was investing in these Platinum positions because

Levy was familiar with them and believed they were valuable investments based on his ***former***

employment with Platinum.

613.    The Co-conspirators continued concealing and misrepresenting the ownership and

control of Beechwood to WNIC and BCLIC throughout the duration of the parties' relationship.

For example, in a face-to-face meeting in New York in 2015, when Eric Johnson once again

raised a question about whether Platinum and Beechwood were related (in light of Beechwood's

further investment of trust assets in Platinum-controlled funds and entities), Feuer vehemently

denied any such relationship, rising to his feet and raising his voice saying, "are you calling me a

liar?"  That's exactly what Feuer was, and so was Taylor, and Levy, and many others.  But

WNIC and BCLIC did not know that.

614.    ████████████████████████████████████

████████████████████████████████

█████████████████████████████████

█████████████████████████████████

████████████████████████████████

███████████████████████████████

██████████████████████████████████

██████████████

615.    The Co-conspirators made these continuing misrepresentations to WNIC and BCLIC about the ownership and control of Beechwood knowing such statements were false when making them, to induce WNIC and BCLIC not to terminate the Reinsurance (and accompanying) Agreements.  As to each of the Co-conspirators' misrepresentations, WNIC and BCLIC reasonably relied on the representation to their detriment, including by not terminating the Reinsurance Agreements or taking other actions that could have ameliorated the damages WNIC and BCLIC incurred as a result of these misrepresentations.

**b.   Continuing Misrepresentations about Beechwood's "Capital"**

616.    The Co-conspirators continued lying about Beechwood's so-called $100 million in "capital" until WNIC and BCLIC insisted upon understanding the nature and amount of such "capital."

617.    In mid-May 2014, just a few months after the Reinsurance Agreements were signed, the Co-Conspirators, ███████████████████ *unilaterally* reduced Beechwood Re's so-called "capital" that was backstopping Beechwood Re's obligations to WNIC and BCLIC, the amended and restated the Demand Note, downward *from $100 million to $25 million*.  They said nothing to WNIC and BCLIC.

618.    The Co-conspirators then fraudulently diverted this $75 million in "capital" ██ ███████████████████████████████████ ███████████████████████████████████ ████████████████████████████████ ███████████████████████████████████ ██████████████████████████████████(the "**Demand Note Transfer**").

619.    The Demand Note Transfer occurred on or about May ██, 2014, when the $100 million Demand Note supporting Beechwood Re was unilaterally changed to an Amended and Restated Demand Note for $25 million.  Of course, the Co-conspirators concealed the Demand Note Transfer from WNIC and BCLIC, as well.

620.    The Demand Note Transfer was designed to render, and succeeded in rendering, Beechwood Re insolvent and placed its "capital" beyond the reach of WNIC and BCLIC, so that Beechwood could continue its participation in the fraud scheme with impunity.  ████████████ ████████████████████████████████████████ There was no consideration for Beechwood Re's Demand Note Transfer of $75 million ████████████████████ The Transfer was to the detriment of WNIC and BCLIC.

621.    Despite Beechwood Re's unilateral reduction of the Demand Note, Feuer and Taylor continued repeatedly reassuring WNIC and BCLIC that Beechwood Re had over $100 million in "capital."  They repeated this lie to WNIC and BCLIC in both December 2014 and January 2015, some eight months after the Demand Note Transfer, stating at one point that Beechwood Re had "an irrevocable right to the assets within a Delaware Series LLC . . . valued in excess of $100M."  This statement was knowingly false and misleading.

622.    ████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████ ████████████████████████ Taylor was forced to reveal the truth to WNIC and BCLIC, in an email admitting for the first time that Beechwood had unilaterally reduced the Demand Note supporting its obligations under the Reinsurance Agreement from $100 million to $25 million.

623.   To keep WNIC and BCLIC from terminating the Reinsurance Agreements right then and there, Taylor assured WNIC and BCLIC that the "Beechwood Companies have an irrevocable right to the assets within a Delaware Series LLC" that are "valued in excess of $100M." ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

624.   ████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████  As they had intended, this kept WNIC and BCLIC from terminating the Reinsurance Agreements.

625.   Unbeknownst to WNIC and BCLIC, the Co-conspirators instead used the $75 million in Demand Note capacity that the Co-Conspirators had diverted from Beechwood Re ██

████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████  BBIL's executive vice president, David Lessing, to crow that BBIL was "on course for

135

record monthly sales" in June 2016 and thus June 2016 "will be our best month, and that has

been true for each month over the last couple of months."[23] ██████████████████████

████████████████████████████████████████████████████

██████████  At all relevant times, and in direct contradiction to what WNIC and BCLIC were

told, none of the money was ever available to Beechwood Re to satisfy its obligations under the

Reinsurance Agreements.

     626.    The Demand Note Transfer of $75 million from Beechwood Re ██████████

████████  left Beechwood Re a mere shell company, grossly undercapitalized and with assets that

were wholly inadequate to cover its obligations to WNIC and BCLIC under the Reinsurance

Agreements.  This undercapitalization eventually led to Beechwood Re being placed in

controllership in 2017, while Feuer, Taylor, Nordlicht, Levy and other Co-Conspirators enjoyed

their ill-gotten gains from their fraudulent scheme.

    627.    ████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████  The Co-conspirators made

these continuing misrepresentations to WNIC and BCLIC about Beechwood's "capital" to

induce WNIC and BCLIC not to terminate the Reinsurance (and accompanying) Agreements.

As to each of the Co-conspirators' misrepresentations, WNIC and BCLIC reasonably relied on

the representation to their detriment, including by not terminating the Reinsurance Agreements

---

[23] *See Guaranteed Products Gain In Volatile Markets, Says Beechwood*, International Advisor,
June 30, 2016, available at https://international-adviser.com/guaranteed-products-gain-volatile-
markets-beechwood/.

or taking other actions that could have ameliorated the damages WNIC and BCLIC incurred as a result of these misrepresentations.

**c.  Continuing Misrepresentations about Beechwood's Management Team**

628.   Once the Reinsurance Agreements were signed in February 2014, the Co-conspirators continued misrepresenting Platinum senior managers as Beechwood's senior management team, ██████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████.

629.   In addition, once the Reinsurance Agreements were signed, the number of individuals who began wearing both Beechwood and Platinum hats grew, as did the number of individuals who swung through the revolving door of the integrated Platinum-Beechwood enterprise.  The cast of individuals who shuttled back and forth between Platinum and Beechwood included Nordlicht, Levy, Slota, Hodgdon, Ottensoser, Poteat, Leff, Small, Manela, Saks and Kim.  Most of them had Beechwood email addresses and/or offices, along with Platinum email addresses and/or offices.  ██████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

630.   Throughout 2014, WNIC and BCLIC continued questioning the discretionary investments of trust assets that Beechwood Re and its agents were making in Level 3 assets, a class of assets that are particularly illiquid and speculative.  Some were investments in Platinum-

controlled funds and entities. Some were investments in distressed entities or speculative ventures. Others involved lending to entities known to include disreputable individuals (or some combination of these attributes). Feuer, Taylor and Levy continued insisting that Beechwood Re and its agents were exercising their discretion appropriately.

631. By the end of 2014, Feuer and Taylor finally conceded that Levy had been using his discretion inappropriately, but they again trotted out as the excuse the fact that he had *formerly* been employed at Platinum and was thus overly reliant on Platinum-controlled funds and entities as his source of investments for the trust assets. They promised that Levy would be separated from Beechwood and that Beechwood Re and its agents would divest the trust assets of Platinum-controlled funds and entities, all the while reiterating to WNIC and BCLIC that there was no relationship between Beechwood and Platinum. That was a lie.

632. By late 2014 or early 2015, Feuer and Taylor represented that Levy was no longer at Beechwood and that Danny Saks was replacing him as the CIO of Beechwood Re and its agent, BAM. ███████████████████████████████████ ███████████████████████████████ In fact, Saks was from Platinum, and was just one more senior manager in the integrated Platinum-Beechwood operating platform who wore both hats simultaneously and used the revolving door. The Co-conspirators, including Saks himself, concealed that fact from WNIC and BCLIC.

633. Despite Saks' supposed replacement of Levy as the CIO for Beechwood Re and BAM, little else changed. ███████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████   And, despite promises from Feuer and Taylor that Beechwood Re and BAM would divest the trusts of Platinum-controlled funds and entities with Saks on board, they failed to keep their promises.  Beechwood Re and its agents divested the trusts of *some* Platinum-controlled investments, but not all, and then added new Platinum-controlled funds and entities to the trusts' portfolios of assets during the course of 2015 and 2016.

634.   ████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

████████████

635.   Often, the Co-conspirators shuttled Platinum-controlled investments in and out of the trusts without any disclosure or transparency.  Although Beechwood Re had promised in the Reinsurance (and accompanying) Agreements to provide WNIC and BCLIC transparency and reports showing how Beechwood Re and its agents were investing trust assets, the reality often diverged from those promises.  █████████████████████████████████

636.     The Co-conspirators made these continuing misrepresentations to WNIC and BCLIC about Beechwood's management team knowing such statements were false when making them, to induce WNIC and BCLIC not to terminate the Reinsurance (and accompanying) Agreements.  As to each of the Co-conspirators' misrepresentations, WNIC and BCLIC reasonably relied on the representations to their detriment, including by not terminating the Reinsurance Agreements or taking other actions that could have ameliorated the damages WNIC and BCLIC incurred as a result of these misrepresentations.

### d.  Continuing Misrepresentations about How Beechwood Invested Trust Assets

637.     After the Reinsurance Agreements were signed, the Co-conspirators continued misrepresenting their intentions to WNIC and BCLIC as to how they intended to invest the reinsurance trust assets.  *First*, the Co-conspirators' fraudulent ▮▮▮▮▮▮▮▮▮ was not only continued, but also expanded after the Reinsurance Agreements were signed.  ▮▮▮▮▮▮▮▮

638.

639.  And, the fraud did not end there.

640.



641. ███████████████████████████████████████

642. *Second*, the Co-conspirators continued ████████████████████

Throughout 2014, 2015 and into 2016, WNIC and BCLIC continued questioning the prudency of

Beechwood Re's, BAM's and BAM Administrative's investment of trust assets into speculative and illiquid Level 3 assets and ventures, including but not limited to investments in Platinum-controlled funds and entities.  Although Feuer, Taylor, Levy and others continued denying – and denying vehemently – the existence of any relationship between Beechwood and Platinum, WNIC and BCLIC also questioned whether these Level 3 assets were appropriate for supporting long-term care policy liabilities.  Feuer, Taylor, Levy, Kim and later Saks and Narain – with Saks replacing Levy in 2015, and Narain replacing Saks in 2016 – repeatedly assured WNIC and BCLIC of the prudency of these investments.

643.    Their assurances were fraudulent.   Yet, they never said as much to WNIC and BCLIC, to whom Beechwood Re, BAM and BAM Administrative owed fiduciary duties.  Instead, they kept telling WNIC and BCLIC that

They said the same about their other investments in Level 3 assets that were not made at arm's-length (and that they never revealed to WNIC and BCLIC were not made at arm's-length).

644.    Once Levy allegedly left Beechwood Re, BAM and BAM Administrative in late 2014 –

– the troika of Danny Saks, Stewart Kim and Dhruv Narain (starting in early 2016) took over the reins from Levy and continued the fraud these entities were perpetrating against WNIC and BCLIC.  On a regular basis, when WNIC and BCLIC raised questions about the prudency of these entities'

144

investments of trust assets, Saks, Kim and Narain invariably inveighed upon WNIC and BCLIC

to repose their trust and confidence in the troika's expertise and prudency.  In doing so, however,

the troika also invariably concealed material facts from WNIC and BCLIC, including the

Platinum-Beechwood relationship █████████████████████████████

█████████████████████████████████████ and the facts

demonstrating that the investments were not at arm's-length.  Examples of their continuing

fraudulent conduct are legion, but include the following:







645.     *Third*, after the Reinsurance Agreements were signed, Beechwood Re, BAM and

BAM Administrative continued ████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████ The reality was otherwise.  Nordlicht pulled the strings.  ████

646.

647.   *Fourth*, the Co-conspirators continued perpetrating the fraud that Beechwood Re, BAM and BAM Administrative were providing WNIC and BCLIC with "independent" reports from valuation companies on a quarterly basis.   As noted above, Lincoln was part of the racketeering scheme. ███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████

648.   By late 2014, WNIC and BCLIC requested that Lincoln be removed as the valuation consultant. ████████████████████████████████

███████████████████████████████████████

████████   In early 2015, Beechwood Re, BAM and BAM Administrative then retained a different vendor to replace Lincoln as the valuation consultant.



650.

651.    All of the Co-conspirators' fraudulent dealings with valuation vendors were conducted using the mails and wires of interstate commerce.

652.    The Co-conspirators made all of these continuing misrepresentations to WNIC and BCLIC about how Beechwood invested and intended to invest the trust assets knowing such statements were false when making them, to induce WNIC and BCLIC not to terminate the Reinsurance (and accompanying) Agreements.  As to each of the Co-conspirators' misrepresentations, WNIC and BCLIC reasonably relied on the representation to their detriment, including by not terminating the Reinsurance Agreements or taking other actions that could have ameliorated the damages WNIC and BCLIC incurred as a result of these misrepresentations.

### E.  Secreting the Proceeds of the Racketeering Activity

653.    The Platinum co-founders, along with Feuer, Taylor and Levy, all used or devised asset protection schemes to try to shield from creditors their ill-gotten gains from the conspiracy.

654.    Nordlicht, Huberfeld and Bodner have used two separate asset-protection schemes to try to defraud creditors.  *First*, they have parked proceeds of their racketeering activity in trusts they created, known as Beechwood Trusts Nos. 1 through 19.  Nordlicht has secreted proceeds of the racketeering activity in Beechwood Trusts Nos. 1 through 6, which he created with his children as beneficiaries.  Bodner has secreted proceeds of the racketeering activity in Beechwood Trusts Nos. 7 through 14, which he created with his children as beneficiaries.

Huberfeld has secreted proceeds of the racketeering activity in Beechwood Trusts Nos. 15 through 19, which he created with his children as beneficiaries. They have used these as part of the conspiracy since at least 2013, and continued doing so for years, including into 2016.

655. *Second*, Nordlicht, Bodner and Huberfeld have sought to defraud creditors by parking assets in Beechwood Investments. Nordlicht has secreted proceeds of the racketeering activity in Beechwood Investments' Series A, D, E and I, in which his wife and various other relatives are beneficiaries. Huberfeld has secreted proceeds of the racketeering activity in Beechwood Investments' Series B, E, F, G and H, in which his wife and various other relatives are beneficiaries. Bodner has secreted proceeds of the racketeering activity in Beechwood Investments' Series C, E, F, G and H, in which his wife and various other relatives are beneficiaries. They have used these as part of the conspiracy since at least 2013, and continued doing so for years, including into 2016.

656. Feuer, Taylor and Levy have also sought to defraud their creditors by secreting assets in family trusts, with their wives and children as beneficiaries. Levy parked proceeds of the racketeering activity in Beechwood Trust No. 20, while Feuer used the Feuer Family Trust and Taylor used the Taylor-Lau Family Trust to do so. Upon information and belief, they have been doing so since at least 2013, and have continued doing so for years, including through late 2016.

**F. Beechwood Re's Many Breaches of the Reinsurance (and Accompanying) Agreements**

657. Beechwood Re breached many provisions of the Reinsurance Agreements and breached them repeatedly over the course of the parties' relationship.

658. *First*, Beechwood Re repeatedly breached the provisions relating to the valuation of the assets in the trust accounts and the requirements that it maintain in the trust accounts assets

having a "fair market value" equaling or exceeding certain thresholds set forth in the Agreements.   Under the Reinsurance Agreements, WNIC and BCLIC initially transferred almost $600 million of assets (largely cash) to Beechwood Re and the trustee of the reinsurance trusts, Wilmington Trust.  The $600 million represented 107% of expected future liabilities for long-term care business that WNIC and BCLIC ceded to Beechwood Re.  As noted above, in each of the primary trust accounts for WNIC and BCLIC, Beechwood Re was required to deposit and maintain assets that had an aggregate "fair market value" of 102% of the expected future liabilities for the policies that WNIC or BCLIC (as applicable) ceded under the Agreements.  In each of the supplemental trust accounts for WNIC and BCLIC, Beechwood Re was required to deposit and maintain assets that had an aggregate "fair market value" of 5% of the expected future liabilities for the policies that WNIC or BCLIC (as applicable) ceded under the Agreements.  The trust account assets were to serve as collateral for Beechwood Re's obligation to pay future claims on the ceded policies.

659.    "Fair market value" was defined in the Reinsurance Agreements as being "the price for which an asset would be sold on the open market between an unrelated buyer and seller, with neither under any obligation to do so."  Moreover, in determining whether the "fair market value" of the assets in any of the four trusts met the contractual thresholds, only trust assets in compliance with the Reinsurance Agreements' investment guidelines, labeled as "Qualified Trust Assets," qualified.  "Qualifying Trust Assets" could not include Beechwood Re's, BAM's or BAM Administrative's investment of trust assets with a party in which it had an interest, including a party with which it was "integrated."

660.    Beechwood Re routinely breached these provisions of the Reinsurance Agreements.  It assumed "fair market values" for investments of trust assets in Platinum-

controlled funds and entities (among other trust assets obtained in non-arm's-length transactions) as if Beechwood Re's purchase of those assets for the trusts were with an "unrelated" seller. Moreover, it treated those trust assets as "Qualifying Trust Assets" for purposes of determining Beechwood Re's compliance with the contractual thresholds, even though they were the product of self-dealing, that is, even though Beechwood Re or its affiliates had an interest in those investments.

661.    As noted above, at the end of each quarter, the Reinsurance Agreements required Beechwood Re to top-up the trusts in the event that the fair market value of the assets in the trusts fell below the contractual thresholds.  Based on its misrepresentation of the fair market values of the assets in the trust accounts, Beechwood Re repeatedly (that is, every calendar quarter) failed to top-up the trust accounts in accordance with the requirements of the Reinsurance Agreements.  In fact, it did the opposite.

662.    Likewise, if the fair market value of the trust assets exceeded the contractual thresholds, the Reinsurance Agreements permitted Beechwood Re to withdraw funds from the trusts quarterly as "surplus" and distribute them as it saw fit.  Beechwood Re routinely breached these provisions of the Reinsurance Agreements, and, on a quarterly basis over the course of the parties' relationship, used purportedly "independent" valuation reports to support its bogus representations that the fair market value of the trust assets exceeded the contractual thresholds, and therefore did not require Beechwood Re to top-up the trusts.  In fact, its "fair market valuations" – and those of the non-independent valuation and rating agencies it retained to support its bogus valuations – ignored that its valuation of its egregious investments in Platinum-controlled funds and entities (among other non-arm's-length investments) assumed that such

investments were made "between an unrelated buyer and seller," when in fact they had not been. They were the product of self-dealing.

663.    Beechwood failed to cure these breaches within the time required under the Reinsurance Agreements.  Despite having avoided its obligations under these contractual provisions to top-up the trusts, based on bogus valuation reports, over the course of the parties' relationship, when the time came for Beechwood Re to pay WNIC and BCLIC "cash or admitted invested assets having a fair market value equal to the statutory reserves attributable to the liability [WNIC and BCLIC] recaptured," Beechwood Re breached the Reinsurance Agreements by failing to do so.  Put another way, the Co-Conspirators' concealment of the fact that Beechwood Re was using the trust accounts as a piggybank for Platinum, with which it was "integrated," breached the Reinsurance Agreements.

664.    *Second*, Beechwood Re repeatedly breached its obligations to divest the trust accounts of investments that did not comply with the investment guidelines accompanying the Reinsurance Agreements.  Those non-compliant investments included, but were not limited to, the investments of trust assets in Platinum-controlled funds and entities.  Despite the fact that the Co-conspirators repeatedly lied to WNIC and BCLIC, representing that Beechwood and Platinum were unrelated, when in fact they were "integrated," WNIC and BCLIC nonetheless asked on several occasions, beginning in late 2014, that Beechwood Re divest the trust of all investments in Platinum-controlled funds and entities.  Beechwood Re failed to comply with these requests, despite its repeated promises to do so, and thus Beechwood Re repeatedly failed to cure these breaches of the Reinsurance Agreements.

665.    Beechwood Re's repeated promises that it would divest the trusts of investments in Platinum-controlled funds and entities turns out to have been fraudulent.  As described above,

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████     In fact, even as late as 2016, Beechwood Re, BAM and BAM

Administrative were investing trust assets directly into Platinum (in PPCO), despite having made

many promises since late 2014 that they would not do so.

666.    Moreover, the Co-conspirators admitted not only that they intentionally broke

their promise to divest the trusts of investments in Platinum-controlled funds and entities, but

also that, had they intended to keep their promises, they could not have done so within the time

required by the Reinsurance Agreements to cure their breaches.  In September 2016, shortly

before the termination of the Reinsurance Agreements, Beechwood Re – in the person of its

attorney, Eric Dinallo, then of Debevoise & Plimpton LLP – ultimately admitted to the New

York insurance regulator (which he formerly headed) that Beechwood Re had intentionally

maintained investments in Platinum-controlled funds and entities in the trusts, even though

Beechwood Re had promised to divest the trusts of those investments, and that Beechwood Re

was incapable of divesting the trusts of those investments within 30 days.  Beechwood Re

admitted that it would take months, if not longer, for Beechwood Re to divest the trusts of those

investments, and that admission turned out to have understated the length of time required.

667.    *Third*, Beechwood Re repeatedly (that is, at least every calendar quarter) breached

its obligations to provide WNIC and BCLIC with quarterly reports that accurately reflected the

"fair market value" of the assets in the trust accounts.  Beechwood Re was required to provide

written reports to BCLIC and WNIC that demonstrated the "fair market value" of assets in the trusts.  As noted above, "fair market value" was defined as the "price for which an asset would be sold in a transaction on the open market between an unrelated buyer and seller."  Beechwood Re routinely breached these provisions of the Reinsurance Agreements, providing quarterly reports in which its egregious investments in Platinum-controlled funds and entities were valued and treated as if they had been negotiated "between an unrelated buyer and seller," when in fact they had not been.  They were the product of self-dealing.

668.    *Fourth*, as noted above, upon termination of the Reinsurance Agreements, which occurred on September 29, 2016, Beechwood Re was required to pay WNIC and BCLIC "cash or admitted invested assets having a fair market value equal to the statutory reserves attributable to the liability [WNIC and BCLIC] recaptured." Beechwood Re breached the Reinsurance Agreements by failing to do so.  The fair market value of invested assets that Beechwood Re repaid to WNIC and BCLIC upon termination of the Reinsurance Agreements was more than $110 million less than the statutory reserves attributable to the liabilities that WNIC and BCLIC recaptured.

669.    *Fifth*, upon termination of the Reinsurance Agreements, Beechwood Re was also required to pay WNIC "a proportionate amount of the Negative Ceding Commission as set forth on Schedule 9.3 on the date of recapture."  On the date of recapture, September 29, 2016, the "proportionate amount of the Negative Ceding Commission as set forth on Schedule 9.3" was $42.2 million.  Beechwood Re breached the WNIC Agreement by failing to pay WNIC this amount.

670.    *Sixth*, as noted above, both Reinsurance Agreements and their accompanying Trust Agreements required that, when depositing assets or investments into the trust accounts,

Beechwood Re was required to "execute assignments, endorsements in blank or transfer legal title to the trustee . . . in order [so that WNIC and BCLIC] may whenever necessary negotiate the trust assets without the consent or signature of [Beechwood Re] or any other entity." Beechwood Re routinely breached these provisions of the Reinsurance and Trust Agreements, by failing "to execute assignments, endorsements in blank or transfer legal title" freely for WNIC's and BCLIC's benefit.  These myriad breaches of the Agreements proved extremely damaging to WNIC and BCLIC when their insurance regulators required them to recapture the trust assets due to Beechwood Re's egregious self-dealing and non-compliant investments of trust assets, including but not limited to the investments of trust assets in Platinum-controlled funds or entities.

671.    Moreover, Beechwood Re and the Co-conspirators *knew* when entering into the Reinsurance and Trust Agreements that they intended to breach these provisions.  As discussed above ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

672.    *Eighth*, under the quarterly true-up provisions of the Reinsurance Agreements, if WNIC and/or BCLIC paid claims and/or expenses that Beechwood Re was responsible for paying under the Agreements' terms, then Beechwood Re was obligated to reimburse WNIC and

BCLIC for their payment of such claims and expenses.  When the Reinsurance Agreements terminated, Beechwood Re owed WNIC and BCLIC over $18 million for claims and expenses that WNIC and BCLIC paid for the second and third quarters of 2016 that Beechwood Re was obligated to pay under the Agreements.  Beechwood Re has never reimbursed WNIC and BCLIC for these expenses, and, on many occasions, ███████████████████████████

████████████████████████

673.    *Ninth*, Beechwood Re breached the provisions of the WNIC Reinsurance Agreement requiring it to provide WNIC with annual audited financial statements for Beechwood Re.  Beechwood Re provided WNIC with annual financial statements for year-end 2014, but breached its duty to provide year-end audited financial statements for any other year.



674.    Of course, because Beechwood Re's investments of trust assets in Platinum-controlled funds and entities were just as egregious from the outset of the parties' relationship in 2014, Beechwood Re was required to restate the year-end audited financials it provided to WNIC for year-end 2014, ███████████████████████████

████████████████████████

675.    The bottom line is that Beechwood Re's fraudulent intentions from the outset to cram the trust accounts with egregious Platinum-controlled investments and ██████████

███████████████████████ infected practically every aspect of Beechwood Re's obligations to WNIC and BCLIC.  Nor could Beechwood Re "cure" its fraudulent designs.  Those fraudulent designs were the very reason for Beechwood Re's existence in the first place and for its entry into Reinsurance Agreements with WNIC and BCLIC and its relationships with other insurers.

676.  ████████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

████████ the "cash or admitted invested assets having a fair market value equal to the statutory reserves attributable to the liability being recaptured" that Beechwood Re was required to pay WNIC and BCLIC under Section 9.3 of the Agreements.  █████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████

## G.  The Platinum House of Cards Collapses and Beechwood is Revealed as Integrated with It

677.  On June 8, 2016, Huberfeld was arrested and charged with bribing a union official to make a $20 million investment in one of Platinum's funds.  Following his arrest, the *Wall Street Journal* and other publications began exposing Beechwood's ties to Platinum in the summer of 2016.  These publications reported that Huberfeld and Nordlicht used Beechwood Re

to attract institutional investors for the Platinum-controlled funds and entities.  WNIC and

BCLIC, alarmed by the trusts' continued investment of trust assets in Platinum-controlled funds

and entities, Huberfeld's arrest and media reports concerning the same, began auditing the trusts'

investments, with the aid of counsel and an independent financial consultant that counsel

retained in anticipation of litigation.

678.    On September 29, 2016, state insurance departments in New York (where BCLIC

is domiciled) and Indiana (where WNIC is domiciled) concluded that many assets in the trusts

were "not compliant" with the investment guidelines prescribed by applicable state laws and the

Reinsurance Agreements.  Unbeknownst to WNIC and BCLIC, ███████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

679.    The state insurance regulator in New York gave BCLIC ten days to bring the

BCLIC trusts into compliance, while the state insurance regulator in Indiana required WNIC to

bring the WNIC trusts into compliance immediately.  As Beechwood Re's own attorneys

admitted, however, Beechwood Re could not possibly begin to meet these kinds of deadlines

given the illiquidity of the Platinum-controlled funds and entities into which Beechwood Re had

invested WNIC's and BCLIC's trust assets.  These directives from the New York and Indiana

insurance regulators effectively required WNIC and BCLIC to terminate the Reinsurance

Agreements and recapture the business they ceded to Beechwood Re or else face disciplinary

action, including the loss of their reinsurance credits for the ceded risks.

680.    At each point of this process – from when insurance regulators first notified

WNIC and BCLIC that the trust assets were "not compliant," to when insurance regulators

effectively ordered WNIC and BCLIC to terminate the Reinsurance Agreements and recapture

the business ceded to Beechwood Re – ███████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Had

Beechwood Re and the Co-conspirators not concealed ████████████████████

███████████████████████ the reinsurance transactions here never would have

occurred.

681.    As a result of Beechwood Re's fraud and material breaches of the Reinsurance

Agreements, which Beechwood Re admitted could not be timely cured, if cured at all, as well as

the regulatory directives WNIC and BCLIC received from two state insurance regulators, WNIC

and BCLIC terminated the Reinsurance Agreements on September 29, 2016.  At the same time,

WNIC and BCLIC sought to recapture the reinsurance trust assets, as permitted by the

Reinsurance Agreements, and advised the trustee, Wilmington Trust, to return all trust assets to

WNIC and BCLIC in accordance with those Agreements.

682.    WNIC and BCLIC were not the only ones injured by the Co-conspirators'

racketeering activity.  The Co-Conspirators also succeeded in luring other insurers, including

SHIP and others, into entrusting their funds to Beechwood, which the Co-Conspirators also used

161

to enrich themselves and further Platinum's Ponzi-esque scheme. According to the 9/17 *WSJ* Article, Beechwood put more than $200 million of SHIP money in Platinum-linked investments. The Co-Conspirators' racketeering activity continued into at least late 2016, as Beechwood continued to control the funds of SHIP and/or ACLICO.

683. WNIC and BCLIC have been injured in their business and property by reason of the Co-Conspirators' conducting the affairs of the RICO enterprises through a pattern of racketeering activity, in an amount exceeding $195 million.

**H. The EDNY Indictment and SEC Complaint**

684. On or about December 14, 2016, Nordlicht, Levy and five other Platinum executives were indicted by a federal grand jury in the Eastern District of New York on eight fraud and conspiracy counts, including securities fraud and conspiracy to commit securities fraud, wire fraud and investment adviser fraud. They were arrested shortly after being indicted. U.S. Attorney for the Eastern District of New York, Robert Capers, described their acts as "one of the largest and most brazen investment frauds perpetrated on the investing public, earning Platinum more than $100 million in fees during the charged conspiracy," which "eventually led to Nordlicht and his Co-Conspirators [including nine unnamed co-conspirators] operating Platinum like a Ponzi scheme, where they used loans and new investor funds to pay off existing investors."[25]

685. Contemporaneously, the SEC filed a parallel civil complaint against the same individuals and others for, among other things, various direct and/or aiding and abetting

_____

[25] *Platinum Partners Execs Charged in $1B mini-Madoff Fraud*, USA Today, Dec. 19, 2016 available at http://www.usatoday.com/story/money/2016/12/19/platinum-partners-execs-charged-1b-fraud/95605808/.

violations of Section 17(a) of the Securities Act of 1933, and Section 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)-5 thereunder.

686.    The SEC's allegations against Nordlicht, Levy and other Co-conspirators arose, in large part, out of their involvement in the Black Elk Note scandal.[26]  As the SEC Complaint makes clear, "[c]rucial to this effort [of Nordlicht, Levy and Small to pursue a rigged vote in the consent solicitation] was the transfer of a large number of notes from [Platinum] to [  ] Beechwood affiliates."[27]  Both the EDNY Indictment and SEC Complaint rightfully place Beechwood Re, its affiliates – including BAM – and their Co-Conspirators squarely in the center of the Platinum Ponzi-esque scheme.

**I.    Beechwood Re Is Placed Into Controllership**

687.    In early 2017, CIMA placed Beechwood Re in controllership.  Under Cayman Islands law, CIMA has authority to place a company under controllership only when it is about to become insolvent, acts in a manner "detrimental" to the public trust, breaks the law, or is run or owned by someone who is not "fit and proper."[28]

688.    In 2018, CIMA filed a petition in the Cayman Islands courts to Wind Up Beechwood Re.  In seeking court intervention to Wind Up Beechwood Re, CIMA acknowledged a number of ways in which Beechwood Re had been a scofflaw under Cayman Islands law, including but not limited to the following: (a) it failed to maintain its minimum capital and solvency requirements, including having a $9.3 million shareholder's deficit in 2014; (b) without seeking CIMA's approval, it entered into an $80 million loan agreement with SHIP in 2014 that

---

[26] *See*, *e.g.*, SEC Complaint, ¶¶ 69-102.

[27] *See id.* ¶ 89.

[28] *See* Cayman Islands Insurance Law (2010) § 24(1).

required CIMA's approval; and (c) it failed to file its annual return, including audited financial statements, with CIMA for 2015 and 2016.

### J.   Beechwood Bermuda's Assets Are Sold

689.    On August 2, 2017, *Reuters* reported that "Beechwood, a group of reinsurance and asset management companies, has been sold after it lost clients and suffered a bruised reputation when hedge fund firm Platinum Partners collapsed amid federal investigations and fraud charges."[29]  The purpose of the sale was allegedly to "salvage some of Beechwood's value as opposed to just shutting down the business."[30]

690.    On August 8, 2017, Reuters reported that Global Bankers Insurance Group, a Durham, North Carolina-based subsidiary of Eli Global, purchased certain undisclosed assets "from the Beechwood family of reinsurance and asset management companies."[31]  ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

### K.   Lincoln Actively Participates in the Fraud

#### a.   Platinum Engages Lincoln to Further the Fraud

691.    As the Reinsurance Agreements were being finalized, Beechwood Re found itself in a quandary: in order to comply with the contractual and fiduciary obligations it would owe WNIC and BCLIC under the Reinsurance Agreements, and in order to retain control over the reinsurance trust funds ceded thereunder, Beechwood Re would need a valuation firm to issue

---

[29] *Exclusive: Reinsurer Beechwood Sold Following Hedge Fund Woes – Source*, Reuters, Aug. 2, 2017, available at https://www.reuters.com/article/us-insurance-beechwood-idUSKBN1AI2Y0

[30] *Id.*

[31] *Eli Global Insurance Unit is Confidential Beechwood Buyer: Source*, Reuters, Aug. 8, 2017, available at https://www.reuters.com/article/us-insurance-beechwood-sale-idUSKBN1AO1RV

quarterly reports that would show WNIC and BCLIC the reinsurance trust assets were being safely and prudently invested.  However, the entire purpose of the Platinum-Beechwood fraud scheme, and the only way that it and the fraudsters could stay afloat, was for Beechwood Re, BAM and BAM Administrative to funnel those reinsurance trust funds directly into the "integrated" Platinum enterprise, ███████████████████████████ – *i.e.*, the polar opposite of safe and prudent investing.  Put differently, Beechwood and Platinum needed a valuation firm that could make self-dealing look legitimate.  They found the solution to their problem in Lincoln.

1. ████████████████████████████████████████
████████

692.    In 2013, Lincoln was a new entrant to the portfolio valuation space, eager to grow its business and attract valuation work in relation to other funds valued in the hundreds of millions of dollars.

693.    ████████████████████████████████
████████████████████████████████████
████████████████████████████
████████████████████████████████████
██████████████████████████████
████████████████

694.    ████████████████████████████████
████████████████████████████████
████████████████████████████████████
████████████████████████████████
████████████████████████████████████



695. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

696. ███████████████████████████████████████████

███████████████████████████████████

697. ███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

698. ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

---

[32] ████████████████████████████████████████
████████████

[33] ████████████████████████████████████████
███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████That is to say, Lincoln ████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████

699.    █████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████

700.    In addition, █████████████████████████████████████

██████████████████████████████████████████████████████████████

167

In other words,

What is more,

701. 

702. Ultimately,

What is more,



██████████████████████████████████████████Of course, ██████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████

703.    ████████████████████████As discussed below, ████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

2.   ████████████████████████████████████████████████
████████████████

704.    ██████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████ ██ ████████

████████████████████████████████████████████████

█████████████

---

[34] This is significant, as Slota was the "enforcer" of the integrated Platinum-Beechwood conspiracy, charged with ensuring that the Co-conspirators maintained the deception that

███████████████████████████████████████████████████████

█████████████████████████████████████████

705. ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

█████████████

706. Similarly, ████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

**b.** ██████████████████████████████████████

███████████

707. As described above, ██████████████████████

██████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

708.   Nevertheless, ███████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

███

          1.   ███████████████████████████████████

709.   ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

████████

710.   ████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

711. ████████████████████████████████████████

████████████████████████████████████████████████████ by 2013,

PPVA's books and records were showing the world that PPVA's NAV was nearly $1 billion,

when in fact PPVA's true NAV was *negative* $400-$800 million.  To keep their Ponzi-esque

scheme afloat, Platinum and the Co-Conspirators needed someone to buy Platinum's assets at

grossly inflated values (par or thereabouts for debt instruments, and artificial marks for equity

investments) to make their self-reported $1 billion NAV appear believable.  Since no bona fide

buyer actually existed, Platinum and the Co-conspirators created Beechwood Re to elicit and

then use the money of unwitting institutional investors, like WNIC and BCLIC, to do so.  Upon

information and belief, Lincoln ████████████████████████████████████

████████████████████████████████████████████████████

████████████

712. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

713. ███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

714. Instead, ███████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████ That is, ███████

████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

715. ███████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████  Of course, ██████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████  And WNIC and

BCLIC reasonably relied on Lincoln's valuation reports as evidence that the reinsurance trust

assets were being safely and prudently invested by Beechwood Re, BAM and BAM

Administrative ███████████████████████████

716.   ████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████  ██  ████████████████████

██████████████████████████████

---

717.   *First,* ███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████

718.   *Second*, as discussed further below, ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████   As explained above, Beechwood Re had agreed to provide written quarterly reports setting forth the aggregate fair market value of the trust assets – with "fair market value" expressly defined in the Reinsurance Agreements as "the price for which an asset would be sold in a transaction on the open market *between an unrelated buyer and seller, with neither under any obligation to do so.*" (Emphasis added). Accordingly, any "fair market value" assigned to the Golden Gate, PPCO or Black Elk transactions by Beechwood Re, BAM and BAM Adminstrative was improper and fraudulent under the terms of the Reinsurance Agreement.   ████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████



719.    At all relevant times, Lincoln ██████████████████████████
█████████████████████████████████████████████████████████████
██████████████████████████████████████████████ Consequently,
█████████████████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████Yet, ██████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████████████████████████████
█████████████████████████And WNIC and BCLIC, █████████████████
███████████████████████████████, justifiably relied on them.

720.    The Negative Assurance Letters and Positive Assurance Valuations were significant for several reasons, not least of which was that they constituted the purportedly independent third-party valuations WNIC and BCLIC were entitled to receive under the Reinsurance Agreements.  The accuracy of these valuations was important because, among other things, and as explained above, at the end of each quarter, Beechwood Re was required to top-up

---

[36] █████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████

the trusts if the fair market value of the trust assets fell below a certain threshold, or, in the event of a surplus exceeding the threshold, Beechwood Re could withdraw the surplus funds. ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

721.     As discussed below, Beechwood Re used these valuation reports to justify their withdrawal of millions of dollars from the trusts as purported "surplus" while avoiding its obligation to top up the trusts. ██████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████

722.     To be sure, ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████

723.     Indeed, ████████████████████████████████████

███████████████████████████████████████████████████████████

724.

725.

726.    As set forth above █████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████

727.    What is more, ███████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████ Yet, as noted above, █████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████

728.     ██████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████ And, WNIC and BCLIC relied on Lincoln's valuations, ███████████

████████████. In fact, with the receipt of each of Lincoln's Negative Assurance Letters and

quarterly Positive Assurance Valuations reports, throughout 2014 and into 2015, WNIC and

BCLIC were falsely assured that the investments Beechwood Re, BAM and BAM Adminstrative

were making with their reinsurance trust assets were safe, reliable and valuable. ██████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████

729.     ██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████And yet, as noted above, ████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

730.   ████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████That is to say, ████████████

██████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████

2.   ████████████████████████████████
████████████████████

731.   As referenced above, Lincoln's Negative Assurance Letters and Positive
Assurance Valuations each ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████ However, ████████████████████████

████████████████████████████████████████████████

████████████████████████

732.   ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ an investment can be assigned a fair market value under the Reinsurance

Agreements *only* if it is, among other things, a transaction between two unrelated entities

conducted at arm's-length.  By definition, then, any investment that Beechwood Re, BAM and

BAM Adminstrative made in Platinum or Platinum-related entities was incapable of being

assigned a fair market value under the Reinsurance Agreements, period.  In addition to the terms

of the Reinsurance Agreements, however, it is objectively improper to value a transaction at fair

value as if it was between an unrelated buyer and seller when in fact it is not.  ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████ In fact, ██████████████

████████████████████████████████████████

733.   Nevertheless, ██████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

███████████████ In fact, ████████████████████████████

████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████

█████████████████████████████████

██████████████████████████████████████

████████████

734.    Aside from being a matter of standard industry practice, ██████████████

███████████████████████████████

██████████████████████████████████████

███████████████████████████████████

██████████████████████████████████

███████████████████████████████████

█████████████████████████████████

███████████████████████████████

735.    ██████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████ As discussed above, this investment

was part of the Black Elk Note scandal at the center of the Platinum-Beechwood fraud.

        *3.* ████████████████████████████████████

736.    Beechwood Re had represented to WNIC and BCLIC that it would retain

"independent" agencies to value and rate private investments and level three assets into which

Beechwood Re, BAM and BAM Adminstrative invested reinsurance trust assets.  WNIC and

BCLIC reasonably relied on these representations in entering into the Reinsurance Agreements.

What WNIC and BCLIC could not have known is that ██████████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

737.    █████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████

738. ████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

739. ██████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████

740. █████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████

741.   ██████████████████████████████

██████████████████████████████████

████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████

- ███████████████████████████████

  ██████████████████████████████████

  ████████████████████████████████

  ███████████████████████████████████

  ████████████████████████████████████

  ████████████

- ████████████████████████████████████

  ████████████████████████████████

  ████████████████████████

As discussed above, ███████████████████████

██████████████████████████████

██████████████████████████

██████████████████████████████████

███████████████████████████████████

████████████████████████████████████

██████████████████████

742. ███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

743. ███████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████For example, ███████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

744. ███████████████████████████████████████████

██████████████████████████████████████████████



745.   Other times,

---

[37] And, as noted above,

For example,

Instead,

746.    In other words, ████████████████████████████

747.    ████████████████████████████████████████

748. ███████████████████████████████

█████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

749.    Unsurprisingly, ████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

██████████████████

---

[38] Furthermore, as described above with respect to other investments, ████████████
███████████████████████████████████████████████████████████
██████████████████████████████████████ But, as explained above,
████████████████████████████████████████████████████████████
██████████████████████████

750. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████ As noted above, ████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

751. Likewise, ████████████████████████████████

████████████████████████████████████████████████



4. █████████████████████████████

752.    As discussed above, ████████████████████████████

753. ██████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ it was a sophisticated financial services firm

with an established valuations practice group ██████████████████████████

████████. As such, it would have understood – both as a matter of industry practice and basic

common sense – that the reason its valuation services were needed in connection with such a

transaction was to inform the cedent (here, WNIC/ BCLIC /CNO) on the value of its assets (here,

"insurance obligations") being invested. Moreover, ████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████

754. For example, █████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████

755. Similarly, ██████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████ Specifically: ██████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████ Of course, ████████████████████████

██████████████████████████████

756.   ████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████

757.   ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████ Specifically, ██████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

758. Interestingly, ███████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████

759. To be sure, Lincoln's valuation reports were used to establish whether the actual value of the trust assets reported by Beechwood Re, BAM and BAM Adminstrative was reasonable (or, in the case of the Negative Assurance Letters, at least not unreasonable). In addition to the ways in which they were used by WNIC and BCLIC, described above,

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████

**c.  Lincoln Terminates the Relationship**

760. ████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████

195

761.   As discussed above, ███████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████ And, ███████████

█████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████

762.   ██████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████ As a result,

████████████████████████████████████████████████

█████████████████████████

763.   ██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

---

41 ██████████████████████████████████████



764. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

765. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

766. ███████████████████████████████

767. ████████████████████████████████████
████████████████████████████████████████
████████████████████

768. ██████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████

██████████████████████████████████████
███████████████████████████████
███████████████████████████████████████

██████████████████████████████████
███████████████████████████████
███████████████████████████████

██████████████████████████████
███████████████████████████████
███████████████████████████████
████████████████████████████████████
██████████████████████████

██████████████████████████████████
███████████████████████████████████
███████████████████████████████████
████████

769. 

770.

771.

772. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████

773. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████

774. ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████

775. ████████████████████████████████████
████████████████████████████████████████

776. ██████████████████████████████████

████████████████████████████████. In fact, on information

and belief, ██████████████████████████████

██████████████████████████████████████

██████████████████████████

777. ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████

778. ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

779. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███

780. ████████████████████████████████

███████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████████

█████████████████

781. ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████

[REDACTED]

782.    Lincoln's bogus valuations were essential to the success of the

Platinum/Beechwood fraud.  Not only did Lincoln's bogus valuation reports make it appear as

though the trust assets were being prudently invested – they were not – and therefore kept WNIC

and BCLIC from terminating the Reinsurance Agreements, but the reports also enabled

Beechwood Re to withdraw millions in "surplus" while avoiding its obligations to top-up the

trusts by claiming that the trusts were adequately capitalized because the investments had a fair

market value which they in fact did not have.  This harmed WNIC and BCLIC because it left the

value of the trust assets was thus *below* the contractual threshold, requiring WNIC and BCLIC to

post additional reserves once the trust assets were recaptured on instructions of state insurance

regulators.

783.    Furthermore, [REDACTED]

[REDACTED] Rather,

[REDACTED]

**CLAIMS FOR RELIEF**

**COUNT ONE**

**Violation of Civil RICO – 18 U.S.C. § 1962(c)**
**(Against Nordlicht, Huberfeld, Bodner, Feuer Family Trust,**
**Taylor-Lau Family Trust, Hodgdon, Slota, Small, Leff, Manela,**
**Ottensoser, Kim, Saks, Poteat, Narain, Holdings, BAM,**
**BAM Administrative, BBL, BBIL, PB Investment,**
**as successor-in-interest to BBIH, Beechwood Investments**
**and each Series, Beechwood Trusts Nos. 1-20 and Lincoln)**

784.    WNIC and BCLIC incorporate each and every allegation above as if set forth

verbatim in this paragraph.

785.    WNIC and BCLIC are "persons," as that term is defined in 18 U.S.C. § 1961(3).

786.    Each of the Defendants is a "person," as that term is defined in 18 U.S.C.

§ 1961(3).[43]

787.    Each of the Defendants was employed by or associated with the following

enterprises: (a) the association-in-fact to which Co-conspirators Bodner and Huberfeld have

admitted – that is, the association-in-fact of Platinum, Beechwood and the individuals who

participated in the management, direction and operation of Platinum and Beechwood during the

relevant period (2013 into late 2016), including but not limited to all of the individual

Defendants in this action – and (b) Beechwood Re.  The association-in-fact enterprise to which

Co-conspirators Bodner and Huberfeld have admitted, as well as Beechwood Re, are both

"enterprises" within the meaning of RICO, 18 U.S.C. § 1961(4).  Each of these RICO enterprises

---

[43]  "Defendants," as it is used in this Claims for Relief section, refers to the cross-claim and
third-party defendants sued in each corresponding Count.

had an ascertainable structure and organization, common purposes and existed apart from the predicate acts perpetrated by the Defendants.  At all relevant times, each enterprise engaged in, and its activities affected, interstate commerce.  Each of the Defendants participated directly or indirectly in the management, direction or operation of each enterprise.

788.    A number of the Defendants named herein participated directly or indirectly in the management, direction or operation of each enterprise through their agent.  For example, the Feuer Family Trust, which Feuer established and maintained to secrete his ill-gotten gains, participated directly or indirectly in the management, direction or operation of each enterprise through the acts of its agent, Mark Feuer.  The Taylor-Lau Family Trust, which Taylor established and maintained to secrete his ill-gotten gains, participated directly or indirectly in the management, direction or operation of each enterprise through the acts of its agent, Scott Taylor. Beechwood Trust No. 20, which Levy established and maintained to secrete his ill-gotten gains, participated directly or indirectly in the management, direction or operation of each enterprise through the acts of its agent, David Levy.  Beechwood Trusts Nos. 1 through 19 and Beechwood Series A through I, which Nordlicht, Bodner and Huberfeld established and maintained to secrete their ill-gotten gains, participated directly or indirectly in the management, direction or operation of each enterprise through the acts of their respective agents, Mark Nordlicht, David Bodner and Murray Huberfeld.

789.    Each Defendant conducted or participated in the conduct of the affairs of each of these RICO enterprises through a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).  That is, as is set forth in detail above, each Defendant perpetrated and agreed to perpetrate numerous predicate acts of racketeering activity identified under 18 U.S.C. § 1961(1), specifically, mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.  Each Defendant

perpetrated and agreed to perpetrate two or more acts of racketeering activity in furtherance of their fraudulent schemes or artifices to defraud, with a specific intent to defraud WNIC, BCLIC and other institutional investors and to obtain their money and property by means of false pretenses, representations and promises.  Each Defendant's act of mail and wire fraud constitutes a distinct and separate offense.

790.    These predicate acts of racketeering activity are all related, as the Defendants have perpetrated the predicate acts for the common purpose of furthering their fraudulent schemes, identified and discussed in detail above.  And, their predicate acts of racketeering activity have all had common (a) results (furthering their fraudulent schemes to induce institutional investors such as insurers to entrust assets with Beechwood Re), (b) participants (Defendants and their Co-conspirators), (c) victims (insurers, such as BCLIC and WNIC), (d) methods of commission (the use of fraudulent and deceptive devices to induce insurers into entrusting their assets with Beechwood Re and the false and fraudulent overvaluation of trust assets) and (e) other distinguishing characteristics (such as using Platinum plants as purported Beechwood Re senior managers).

791.    The predicate acts of racketeering have also been continuous.  Defendants began perpetrating predicate acts of racketeering in furtherance of their fraudulent schemes in 2013, at least as to WNIC and BCLIC, and perpetrated them continuously for several years thereafter, including into late 2016.  Their predicate acts of racketeering were ongoing during those years, until WNIC and BCLIC, among others, blew the whistle on them.  The predicate acts of racketeering activity have been an integral part of the enterprises' regular way of doing business.  Thus, the Defendants against whom this claim is brought have engaged in a "pattern" of racketeering activity, as that phrase is defined in 18 U.S.C § 1961(5).

792.    Each Defendant has therefore violated 18 U.S.C § 1962(c) by conducting or participating in the conduct of the enterprises' affairs through a pattern of racketeering activity.

793.    WNIC and BCLIC have been injured in their business and property by reason, and as a proximate result, of each such Defendant's violations of 18 U.S.C. § 1962(c), in at least the following ways: (a) by being fraudulently induced to enter into the Reinsurance Agreements with Beechwood Re, including paying a negative ceding commission to Beechwood Re in an amount exceeding $42 million; (b) by Beechwood Re avoiding their obligations to top-up the trusts based on false and fraudulent over-valuations of trust assets; (c) by the Defendants enriching themselves in the form of compensation, bonuses, dividends and/or other payouts to the Co-conspirators; and (d) by Beechwood Re's failure to pay WNIC and BCLIC, upon recapture of the trust accounts, admitted assets with a fair market value equal to the statutory liabilities being recaptured.

## COUNT TWO

**RICO Conspiracy – 18 U.S.C. § 1962(d)**
**(Against Nordlicht, Huberfeld, Bodner, Feuer Family Trust,**
**Taylor-Lau Family Trust, Hodgdon, Slota, Small, Leff, Manela,**
**Ottensoser, Kim, Saks, Poteat, Narain, Holdings,**
**BAM, BAM Administrative, BBL, BBIL,**
**PB Investment, as successor-in-interest to BBIH, Beechwood Investments**
**and each Series, Beechwood Trusts Nos. 1-20 and Lincoln)**

794.    WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

795.    In violation of 18 U.S.C. § 1962(d), each Defendant and their Co-conspirators agreed and conspired among themselves to violate 18 U.S.C. § 1962(c).

796.    The conspiracy included several purposes.  First, the Co-conspirators joined together and agreed to perpetrate numerous acts to fraudulently induce institutional investors,

such as WNIC and BCLIC, to entrust funds to Beechwood and the Co-conspirators via

reinsurance or other arrangements under which the Co-conspirators would control the

institutional investors' assets. Second, the Co-conspirators joined together and agreed to use

their considerable discretion in investing such funds to further and perpetuate the Co-

conspirators' ongoing Platinum fraud schemes, including (a) the Platinum Ponzi-esque scheme,

(b) Scheme 1, as referenced in the PPVA Action and (c) the scheme to enrich themselves via

fraudulent and inflated management fees and other compensation.

797.   Each Defendant agreed and combined with the Co-conspirators to engage in a

pattern of racketeering activity. Each Defendant agreed to the commission of two or more

predicate acts of mail and/or wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343 and in

furtherance of the Co-conspirators' fraudulent schemes and common purposes. Each Defendant

knew that participation in acts of mail and wire fraud formed part of a pattern of racketeering

activity and agreed to the commission of those acts to further the schemes and common purposes

described in this pleading.

798.



, (b) the admissions of Co-conspirators Huberfeld and Bodner that Platinum

and Beechwood were "integrated,"

and all of

the Co-conspirator admissions and communications set forth above, among many others. It can

also be inferred from the Co-conspirators' close ties to each other and their mutually dependent,

coordinated efforts to achieve the common purposes of the Co-conspirators and each enterprise.

799.    WNIC and BCLIC have been injured in their business and property by reason, and as a proximate result, of each Defendant's conspiracy to violate 18 U.S.C. § 1962(c), in at least the following ways: (a) by being fraudulently induced to enter into the Reinsurance Agreements with Beechwood Re and paying a negative ceding commission to Beechwood Re in an amount exceeding $42 million; (b) by Beechwood Re avoiding its obligations to top-up the trusts based on false and fraudulent over-valuations of trust assets; (c) by the Defendants enriching themselves in the form of compensation, bonuses, dividends and/or other payouts to the Co-conspirators and others; and (d) by Beechwood Re's failure to pay WNIC and BCLIC, upon recapture of the trusts, admitted assets with a fair market value equal to the statutory liabilities being recaptured.

## COUNT THREE

### Fraudulent Inducement and Fraud
### (Against Hodgdon, Slota, Small, Leff, Manela, Ottensoser, Kim, Saks, Poteat and Narain)

800.    WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

801.    As set forth in detail above, many individuals from Beechwood Re, BAM and Beechwood Capital made numerous false representations of material fact to WNIC and BCLIC, knowing such statements were false when making them, to induce WNIC and BCLIC to enter into the Reinsurance (and accompanying) Agreements.  These false representations included, but were not limited to, misrepresentations about: (a) the persons who owned and controlled Beechwood Re, Holdings, BAM and their affiliates; (b) the capitalization of Beechwood Re, Holdings, BAM and their affiliates; (c) Beechwood Re's, BAM's and BAM Administrative's plans and strategies for managing and investing WNIC's and BCLIC's trust assets and the true

210

purposes behind Beechwood Re's entering into the Reinsurance (and accompanying) Agreements; and (d) the senior management team of Beechwood Re, BAM and BAM Administrative.

802.     As set forth in detail above, in 2013 and early 2014, Hodgdon, Slota, Small, Leff, Manela, Ottensoser, Kim and Poteat each made false representations of material fact to WNIC and BCLIC, knowing such statements were false when making them, to induce WNIC and BCLIC to enter into the Reinsurance (and accompanying) Agreements.  Each of these individuals represented that himself and the others were the senior managers of Beechwood Re, BAM and BAM Administrative, when in fact they were senior managers of Platinum, not Beechwood, and were being compensated by Platinum.

803.     In addition, as set forth in detail above, after the Reinsurance (and accompanying) Agreements were signed, Beechwood Re, Beechwood Capital, BAM, BAM Administrative, Feuer, Taylor, Levy, Hodgdon, Slota, Small, Leff, Manela, Ottensoser, Kim, Saks, Poteat and Narain continued the frauds set forth above, including making representations to WNIC and BCLIC, knowing such statements were false when making them, and concealing material facts from WNIC and BCLIC, even though Beechwood Re, BAM and BAM Administrative owed fiduciary duties to WNIC and BCLIC.  The individuals identified in this paragraph, in addition to Beechwood Re, BAM and BAM Administrative, continued to perpetrate these frauds to induce WNIC and BCLIC to not (a) terminate the Reinsurance (and accompanying) Agreements or (b) take other actions to ameliorate the damages that WNIC and BCLIC were incurring while the Agreements were continuing.

804.     For example, as set forth in detail above, after the Reinsurance (and accompanying) Agreements were signed, Hodgdon, Slota, Small, Leff, Manela, Ottensoser, Kim

and Poteat continued representing that himself and the others were the senior managers of Beechwood Re, BAM and BAM Administrative, when in fact they were senior managers of Platinum, not Beechwood, and were being compensated by Platinum.  In addition, Beechwood Re, BAM and BAM Administrative, Feuer, Taylor, Levy, Saks, Kim and Narain, continued misrepresenting the Co-conspirators' plans and strategies for managing and investing WNIC's and BCLIC's trust assets and the true purposes behind Beechwood Re's entering into the Reinsurance (and accompanying) Agreements and concealed material facts about the Co-conspirators' plans and strategies for managing and investing WNIC's and BCLIC's trust assets and the true purposes for Beechwood Re's entering into the Reinsurance (and accompanying) Agreements, even though Beechwood Re, BAM and BAM Administrative owed fiduciary duties to WNIC and BCLIC.  These Co-conspirators continued making the false representations set forth above and continued omitting the materials facts to induce WNIC and BCLIC not to (a) terminate the Reinsurance (and accompanying) Agreements or (b) take other actions to ameliorate the damages that WNIC and BCLIC were incurring while the Agreements were continuing.

805.    WNIC and BCLIC justifiably relied, to their detriment, upon each of the misrepresentations set forth above in both entering into the Reinsurance (and accompanying) Agreements and not terminating them or taking other actions to ameliorate the damages that WNIC and BCLIC were incurring while the Agreements were continuing.

806.    WNIC and BCLIC have been injured as a proximate result of each of these fraudulent acts and concealments in at least the following ways: (a) by being fraudulently induced to enter into Reinsurance (and accompanying) Agreements with Beechwood Re; (b) by not terminating the Reinsurance (and accompanying) Agreements sooner or taking other actions

to ameliorate the damages that WNIC and BCLIC were incurring while the Agreements were continuing; and (c) by incurring significant expenses, exceeding $10 million, including having to pay outside professionals in connection with terminating the Reinsurance Agreements and recapturing and liquidating the trust assets and the activities connected with such terminations, recapturing and liquidations.

807.    Because these frauds were malicious, reckless, outrageous and demonstrated a wanton disregard of WNIC's and BCLIC's rights, WNIC and BCLIC are entitled to punitive damages.

**COUNT FOUR**

**Fraudulent Inducement and Fraud**
**(Against BBL, BBIL and PB Investment,**
**as successor-in-interest to BBIH)**

808.    WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

809.    ███████████████████████ Taylor emailed WNIC's and BCLIC's ████████████admitting for the first time that the Demand Note supporting Beechwood Re's obligations under the Reinsurance Agreements had, without prior notice to WNIC and BCLIC, been reduced from $100 million to $25 million. ██████████████████████ ████████████████ Taylor then represented to WNIC and BCLIC that the "Beechwood Companies have an irrevocable right to the assets within a Delaware Series LLC" that are "valued in excess of $100M."

810.    ████████████████████████

████████████████████████████████████

████████████████████████████████████

213

██████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

811.   ████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████

812.   ████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████

813.   ██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████

814.     WNIC and BCLIC justifiably relied on these misrepresentations to their

detriment, including by not terminating the Reinsurance Agreements or taking other actions that

could have ameliorated the damages WNIC and BCLIC incurred as a result of these

misrepresentations.  BBL, BBIL and and PB Investment are liable to WNIC and BCLIC for

knowingly lying about ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████.

815.     WNIC and BCLIC suffered damages as a proximate result of these

misrepresentations made on behalf of Beechwood Bermuda.  Not only did these

misrepresentations induce WNIC and BCLIC not to recapture the trust assets or terminate the

Reinsurance Agreements, but also, as described above, Beechwood Re's assets were wholly

inadequate to cover its obligations to WNIC and BCLIC under the Reinsurance

Agreements.  When WNIC and BCLIC recaptured the trust assets, the Co-conspirators did not

make the capital of any Beechwood entities, including Beechwood Bermuda, available to satisfy

Beechwood Re's obligations, ██████████████████████████.

## COUNT FIVE

### Fraudulent Misrepresentation and Omission
### (Against Lincoln)

816.     WNIC and BCLIC incorporate each and every allegation above as if set forth

verbatim in this paragraph.

817.     As set forth above, Lincoln ████████████████████████████

████████████████████████████████████████████████████

818.    In addition, as detailed above, Lincoln ███████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

819.    As described above, ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████ As set forth in more detail

in Count Six below, Lincoln had a duty to disclose the accurate and complete facts concerning

Beechwood Re, BAM and BAM Administrative's investments in the valuation reports.

820.    As set forth above ████████████████████████████████

████████████████████ and with the intent of inducing WNIC and BCLIC to believe that

Beechwood, BAM and BAM Administrative's investments were safe, reliable and prudent and

that the contractual threshold was exceeded such that Beechwood Re was entitled to collect the

surplus.

821.    WNIC and BCLIC were thereby actually induced to believe, among other things,

that the investments Beechwood Re, BAM and BAM Administrative were making with their

reinsurance trust assets were safe, reliable, and valuable and that Beechwood Re was entitled to

collect surplus funds. ██████████████████████████████████████

216

████████████████████████████████████████████

████

822.    WNIC and BCLIC justifiably relied upon Lincoln's misrepresentations and omissions in the valuation reports to their detriment.

823.    As a proximate result of Lincoln's fraudulent misrepresentations, omissions, and concealments in the valuation reports, WNIC and BCLIC sustained damages.

824.    Consequently, WNIC and BCLIC are entitled to a judgment of compensatory damages in an amount to be determined at trial, together with interest at the statutory rate.

825.    Because Lincoln's misrepresentations, omissions, and/or concealments in its valuation reports were intentional and deliberate, malicious, outrageous and demonstrated a wanton disregard of WNIC's and BCLIC's rights, WNIC and BCLIC are entitled to punitive damages.

## COUNT SIX

### Negligent Misrepresentation
### (Against Lincoln)

826.    WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

827.    WNIC and BCLIC and Lincoln had a special, privity-like relationship with one another arising out of Lincoln's unique and specialized expertise and its role as the purportedly independent valuation provider with respect to the reinsurance assets ceded by WNIC and BCLIC to Beechwood Re.  When Lincoln was acting as the valuation provider, its reports were WNIC's and BCLIC's only source of information regarding the value of Beechwood Re, BAM and BAM Administrative's investments of the reinsurance assets.  Given the importance of

217

Lincoln's valuation reports to WNIC and BCLIC, Lincoln and WNIC and BCLIC were in a special position of confidence and trust.

828.    Lincoln had a duty, as a result of its special relationship with WNIC and BCLIC, to give WNIC and BCLIC correct information regarding, among other things, the value of Beechwood Re, BAM and BAM Administrative's investments of the trust assets.

829.    As described above, however, ████████████████████████████████ ██████████████████████████████████████████████ ████████████████████ Lincoln should have known that ██████████████████ ████████████████████████████████████████████ █████████████████████████████████████████████████ ███████████████████████████████████ .

830.    As set forth above, ████████████████ its valuation reports were relied upon by WNIC and BCLIC for a serious purpose, including but not limited to evaluating and monitoring the value of the reinsurance trust assets in order to, among other things, ensure that the trust assets were invested in a reliable manner such that they could serve as collateral for Beechwood Re's obligation to pay reinsurance receivables to WNIC and BCLIC for claims on the transferred liabilities.

831.    At all times relevant herein, ████████████████ WNIC and BCLIC both intended to and actually relied and acted upon Lincoln's valuation reports.

832.    At all times relevant herein, WNIC and BCLIC justifiably relied, to their detriment, on each of Lincoln's valuation reports in not terminating the Reinsurance Agreements or taking other actions to ameliorate the damages that WNIC and BCLIC were incurring while the Agreements were continuing.

833.   Consequently, WNIC and BCLIC are entitled to a judgment of compensatory damages in an amount to be determined at trial, together with interest at the statutory rate.

834.   Because Lincoln's misrepresentations were malicious, reckless, outrageous and demonstrated a wanton disregard of WNIC's and BCLIC's rights, WNIC and BCLIC are entitled to punitive damages.

**COUNT SEVEN**

**Aiding and Abetting Fraud**
**(Against Nordlicht, Huberfeld, Bodner, Feuer Family Trust,**
**Taylor-Lau Family Trust, Hodgdon, Slota, Small, Leff, Manela,**
**Ottensoser, Kim, Saks, Poteat, Narain, Holdings, BAM, BAM Administrative,**
**BBL, BBIL, PB Investment, Beechwood Investments**
**and each Series and Beechwood Trusts Nos. 1-20)**

835.   WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

836.   Nordlicht, Huberfeld and Bodner, aided and abetted the fraudulent conspiracy. Among other things, they directed every aspect of the fraudulent scheme and met periodically to coordinate and direct the Co-conspirators' fraudulent activities.  These three individuals were primarily responsible for communicating with the other Co-conspirators, including the other persons and entities sued in this Count, to coordinate the Co-conspirators' perpetration of the fraudulent scheme, as outlined in not only this pleading, but also the EDNY Indictment and SEC Complaint.  The conspiracy they directed encompassed numerous tentacles, including but not limited to their defrauding insurers such as WNIC and BCLIC to entrust their funds with Beechwood, ███████████████, the Black Elk Note scandal, the Demand Note Transfer, "Scheme 1" (as referenced in the PPVA Action) and Platinum's Ponzi-esque scheme generally, among other fraudulent and manipulative devices.

837. Moreover, each one of these three individuals perpetrated the fraud as agent for, on behalf of, and to benefit the entities that they established to secrete their ill-gotten gains. Nordlicht, Huberfeld and Bodner aided and abetted the fraud for themselves and their respective Beechwood Trusts (Trusts Nos. 1 through 19) and each Beechwood Series (A-I) that they established.

838. Hodgdon, Slota, Manela, Ottensoser, Poteat, Leff, Small and Kim aided and abetted the fraud in many ways, including directing and executing the fraudulent, non-arm's-length transactions in which Beechwood, BAM and BAM Administrative invested WNIC's and BCLIC's trust assets, including but not limited to Platinum-controlled funds and entities. So, for example, Small and Ottensoser played critical roles in the Black Elk Note scandal in which they used WNIC and BCLIC trust assets to manipulate the fraudulent consent solicitation. *See* EDNY Indictment and SEC Complaint. ████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

[REDACTED]

839.    Hodgdon aided and abetted the fraud by passing himself off as Beechwood Re's

Managing Director or Chief Underwriting Officer, when he was in fact a Platinum senior

manager.  He kept up this charade not only for himself, but also on behalf of his Co-conspirators.

[REDACTED]

840.    After WNIC and BCLIC entered into the Reinsurance (and accompanying)

Agreements, the troika of Saks, Kim and Narain each played pivotal roles in aiding and abetting

the continuing fraud.  Saks and Narain served as the CIO's for BAM – Saks in 2015 and Narain

in 2016 – and both, along with Kim, repeatedly continued the charade [REDACTED]

[REDACTED]

███████████████████████████████████████

███████████████████████████████████████

841.   WNIC and BCLIC justifiably relied, to their detriment, upon all of the above misrepresentations, material omissions and fraudulent and deceptive devices that Beechwood used to not only induce WNIC and BCLIC to enter into the Reinsurance (and accompanying) Agreements, but to also not terminate them sooner or take other actions to ameliorate the damages that WNIC and BCLIC were incurring.

842.   The substantial assistance of the persons and entities sued on this Count was the proximate cause of WNIC's and BCLIC's injuries in that WNIC's and BCLIC's injuries were *at least* the reasonable foreseeable result of their conduct:  in addition to other ways in which WNIC and BCLIC were injured, their conduct caused WNIC and BCLIC to (a) be fraudulently induced to enter into Reinsurance (and accompanying) Agreements with Beechwood Re; (b) not terminate the Reinsurance (and accompanying) Agreements sooner or taking other actions to ameliorate the damages that WNIC and BCLIC were incurring while the Agreements were continuing; and (c) incur significant expenses, exceeding $10 million, including having to pay outside professionals in connection with terminating the Reinsurance Agreements and recapturing and liquidating the trust assets and the activities connected with such terminations, recapturing and liquidations.

843.   Because Defendants' substantial assistance with the fraud was malicious, reckless, outrageous and demonstrated a wanton disregard of WNIC's and BCLIC's rights and duties, WNIC and BCLIC are entitled to punitive damages.

## COUNT EIGHT

**Aiding and Abetting Fraud**
**(Against Lincoln)**

844.   WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

845.   Lincoln had actual knowledge of, and substantially assisted with, Beechwood Re, BAM and BAM Administrative's fraudulent or negligent misrepresentations, omissions, and concealments of material fact, upon which WNIC and BCLIC relied to their detriment.  As set forth in detail above, Beechwood Re, BAM and BAM Administrative defrauded WNIC and BCLIC by, among other things, (a) fraudulently misrepresenting to WNIC and BCLIC the fair market value of the reinsurance assets that Beechwood Re, BAM and BAM Administrative invested in Platinum-controlled funds and entities, among other investments, which were the product of self-dealing; (b) fraudulently misrepresenting to WNIC and BCLIC that an independent valuation company would issue independent valuations that would reveal whether the reinsurance assets were being safely and prudently invested; (c) fraudulently misrepresenting that Beechwood Re would calculate the amount of any surplus (or deficiency) with respect to the thresholds for trust assets that were set forth in the Reinsurance Agreements based on independent valuations by an independent valuation company; (d) fraudulently misrepresenting that Beechwood Re, BAM and BAM Administrative intended to invest WNIC's and BCLIC's reinsurance assets prudently, and with the intention to safeguard those assets, when in fact Beechwood, BAM and BAM Administrative intended to infect the reinsurance trusts with investments in egregious Platinum-controlled funds and entities ██████████████████ ██████████████████████████████; and (e) fraudulently misrepresenting to WNIC and BCLIC the nature and identities of Beechwood Re's senior

management team as being Beechwood Re personnel, when in fact the individuals were loyal to, if not employed by, Platinum.

846.    Beechwood Re, BAM and BAM Administrative's misrepresentations and/or omissions were made knowingly and were intended to induce WNIC's and BCLIC's reliance by inducing WNIC and BCLIC to enter into the Reinsurance Agreements with Beechwood Re, and not to terminate the Reinsurance (or accompanying) Agreements or to take other actions to ameliorate the damages WNIC and BCLIC were incurring while the Agreements were continuing.  As set forth above, WNIC and BCLIC justifiably relied, to their detriment, upon each of Beechwood Re, BAM and BAM Administrative's false representations and/or omissions.

847.    ███████████████████████████████
█████████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████████
██████████████████████████████████████
██████████████████████████

848.    ██████████████████████████████
█████████████████████████████████████████
███████████████████As explained previously, ████████████████
██████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████

849.   WNIC and BCLIC have been injured as a proximate result of Lincoln's substantial assistance in that WNIC's and BCLIC's injuries were ***at least*** the reasonably foreseeable result of Lincoln's conduct: Lincoln knew that its valuation reports were relied upon by WNIC and BCLIC and that the reports, among other things, falsely assured WNIC and BCLIC that the reinsurance assets were being prudently invested and enabled Beechwood Re to improperly claim its entitlement to, and to remove from the trusts as a result, the purportedly "surplus" assets that WNIC and BCLIC ultimately had to replenish.

850.   Consequently, WNIC and BCLIC are entitled to a judgment of compensatory damages in an amount to be determined at trial, together with interest at the statutory rate.

851.   Lincoln's substantial assistance with the fraud was intentional and deliberate – indeed, as set forth above, ████████████████████████████████

████████████████████████████████████ This evidences a high degree of moral turpitude, and demonstrates Lincoln's wanton dishonesty or reckless disregard of WNIC's and BCLIC's rights.

852.   Because Lincoln's substantial assistance with the fraud was malicious, reckless, outrageous and demonstrated a wanton disregard of WNIC's and BCLIC's rights, WNIC and BCLIC are entitled to punitive damages.

## COUNT NINE

### Conspiracy to Commit Fraud
### (Against Lincoln)

853.   WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

854.   As set forth above, Lincoln had actual knowledge that Beechwood Re, BAM and BAM Administrative were defrauding WNIC and BCLIC by, in part, misrepresenting the value of Beechwood Re, BAM and BAM Administrative's investments of the reinsurance assets.

855.   ███████████████████████████████████

███████████████████████████████████████

██████ Lincoln and Beechwood Re, BAM and BAM Administrative corruptly agreed to defraud WNIC and BCLIC.

856.   Lincoln took overt steps in furtherance of its agreement with Beechwood Re, including but not limited to composing and issuing fraudulent valuation reports overvaluing Beechwood Re, BAM and BAM Administrative's investments of the reinsurance assets, as described in detail above.

857.   Lincoln and Beechwood Re, BAM and BAM Administrative intentionally participated in the furtherance of their common objective of defrauding WNIC and BCLIC.

858.   WNIC and BCLIC have been injured as a proximate result of the conspiracy entered into and furthered by Lincoln in not terminating the Reinsurance Agreements or taking other actions to ameliorate the damages that WNIC and BCLIC were incurring while the Agreements were continuing.

859.   Consequently, WNIC and BCLIC are entitled to a judgment of compensatory damages in an amount to be determined at trial, together with interest at the statutory rate.

860.    Because Lincoln's participation in the civil conspiracy was intentional and deliberate, malicious, reckless, outrageous and demonstrated a wanton disregard of WNIC's and BCLIC's rights, WNIC and BCLIC are entitled to punitive damages.

**COUNT TEN**

**Breach of Contract**
**(Against Beechwood Re)**

861.    WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

862.    WNIC and BCLIC each had valid contracts with Beechwood Re, namely, their Reinsurance (and accompanying) Agreements and accompanying agreements.

863.    As set forth above, Beechwood Re breached the Reinsurance (and accompanying) Agreements with each of WNIC and BCLIC, in numerous ways.

864.    WNIC and BCLIC have been injured as a proximate result of Beechwood Re's numerous breaches of the Reinsurance (and accompanying) Agreements, including in at least the following ways: (a) by not receiving, upon recapture, admitted assets having a fair market value equal to the statutory liabilities being recaptured.  The fair market value of the recaptured assets was at least $110 million less than the statutory liabilities WNIC and BCLIC were required to recapture; (b) WNIC's not receiving, upon recapture, a negative ceding commission previously paid to Beechwood Re in an amount exceeding $42 million; (c) by WNIC's and BCLIC's not being reimbursed in the amount of over $18 million for claims and expenses that they paid in the second and third quarter of 2016 that, under the terms of the Reinsurance Agreements, Beechwood Re was obligated to pay.  Beechwood Re has admitted owing these amounts to WNIC and BCLIC; and (d) by incurring significant expenses, exceeding $10 million, as a proximate result of Beechwood Re's breaches of the Reinsurance (and accompanying), including

having to pay outside professionals in connection with liquidating the trust assets that

Beechwood Re imprudently invested.

865.     As an alien insurer not licensed to do insurance business in this state, Beechwood

Re is subject to the provisions of New York Insurance Law Section 1213(c)(1)(A) (the "**Security**

**Statute**"), which requires Beechwood Re to post security before it will be permitted to defend

itself against WNIC and BCLIC.  This Court should fix the amount of cash or securities that

Beechwood Re must deposit with the clerk of Court to secure Beechwood Re's payment of any

final judgment that may be rendered in this proceeding, in an amount no lower than $180

million.

## COUNT ELEVEN

### Breach of Fiduciary Duty
### (Against BAM, BAM Administrative,
### Hodgdon, Saks, Kim and Narain)

866.     WNIC and BCLIC incorporate each and every allegation above as if set forth

verbatim in this paragraph.

867.     The Reinsurance (and accompanying) Agreements, including the investment

guidelines, afforded Beechwood Re, BAM and BAM Administrative considerable discretionary

authority to manage the assets in WNIC's and BCLIC's trust accounts.  Under the terms of the

Agreements and governing Indiana and New York law, Beechwood Re, BAM and BAM

Administrative were required to manage and invest the assets in WNIC's and BCLIC's trust

accounts as fiduciaries, that is, to maintain and protect the trust assets for the benefit of WNIC

and BCLIC and their policyholders, whose valid claims were to be paid from the trust accounts.

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

868.    Feuer, Taylor, Levy, Hodgdon, Narain, Saks and Kim all made representations to WNIC and BCLIC that were calculated to entice WNIC and BCLIC to repose trust in not only Beechwood Re, Beechwood Capital and BAM, but also themselves, as individuals, in serving as fiduciaries for WNIC and BCLIC under the Reinsurance (and accompanying) Agreements. Feuer, Taylor, Levy and Hodgdon each made these representations to induce WNIC and BCLIC to enter into the Reinsurance Agreements, and they succeeded in inducing WNIC and BCLIC to enter into the Reinsurance Agreements as a result of their representations.  In addition, Feuer, Taylor, Levy, Hodgdon, Narain, Saks and Kim – on behalf of Beechwood Re, BAM and BAM Administrative – all made such representations to WNIC and BCLIC after execution of the Reinsurance Agreements to induce WNIC and BCLIC not to terminate the Agreements or take other actions to ameliorate the damages that WNIC and BCLIC were incurring.  As set forth above, ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████

869.    Each of the Defendants sued on this claim repeatedly breached their fiduciary duties to WNIC and BCLIC by (a) repeatedly investing WNIC's and BCLIC's trust assets in non-arm's-length transactions – including, but not limited to, investments in Platinum-controlled funds and entities – designed to further the Platinum Ponzi-esque scheme and line the pockets of the Defendants and their Co-conspirators, instead of investing the trust assets for the benefit of WNIC, BCLIC and their policyholders; (b) continuously and fraudulently treating and valuing the non-arm's-length investments of trust assets as if they were made at arm's-length, when in

fact they were not, and (c) repeatedly misrepresenting to WNIC and BCLIC that such investments of trust assets were made at arm's-length, when in fact they were not.

870.



871.    Co-conspirators Bodner and Huberfeld similarly admitted that Feuer, Taylor and other Co-conspirators breached their fiduciary duties to WNIC and BCLIC.  In a July 30, 2015 email, Huberfeld and Bodner shared that they were "really concerned that if Ed Bonach [the CEO] from CNO Financial Group Finds [sic] out we invested beechwoods [sic] money into platinum with its illiquid investments (since it didn't exactly fit their investment objective) *he won't trust us and he will take off the aprox [sic] 500 mil, he has invested in beachwood [sic] Out*. That means beechwood would either implode or not be able to function fiancialy [sic] and may have to be dissolved . . . *We weren't exactly honest with [CNO's CEO] Ed [Bonach] about the original investment or that beechwood and platinum really are integrated*.  I'm concerned." Despite his concerns that Beechwood and its principals and other Co-conspirators had breached their fiduciary duties to WNIC and BCLIC by investing trust assets in ████████████ Feuer, Taylor and Beechwood continued doing so.

872.     WNIC and BCLIC have been injured as a proximate result of each of Defendants' breaches of their fiduciary duty in at least the following ways: (a) by not terminating the Reinsurance (and accompanying) Agreements sooner or taking other actions to ameliorate the damages that WNIC and BCLIC were incurring while the Agreements were continuing; (b) by Beechwood Re avoiding its obligations to top-up the trusts based on false and fraudulent over-valuations of trust assets; (c) by the Defendants enriching themselves in the form of compensation, bonuses, dividends and/or other payouts to the Co-conspirators and others; (d) by not receiving, upon recapture, admitted assets having a fair market value equal to the statutory liabilities being recaptured; (e) by not receiving, upon recapture, a negative ceding commission previously paid to Beechwood Re in an amount exceeding $42 million; and (f) by incurring significant expenses, exceeding $10 million, including having to pay outside professionals in connection with terminating the Reinsurance Agreements and recapturing and liquidating the trust assets and the activities connected with such terminations, recapturing and liquidations.

## COUNT TWELVE

**Aiding and Abetting Breaches of Fiduciary Duty
(Against Nordlicht, Huberfeld, Bodner, Feuer Family Trust,
Taylor-Lau Family Trust, Hodgdon, Slota, Small, Leff,
Manela, Ottensoser, Kim, Saks, Poteat, Narain, Holdings,
BAM, BAM Administrative, BBL, BBIL, PB Investment,
as successor-in-interest to BBIH, Beechwood Investments
and each Series and Beechwood Trusts Nos. 1-20)**

873.     WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

874.     Each of the Co-conspirators, which includes each cross-claim and third-party defendant sued in this Count, understood that the essential purpose of their conspiracy was to induce institutional investors such as WNIC and BCLIC to entrust their funds with Beechwood

231

Re, BAM and BAM Administrative so that these Beechwood entities would, in turn, breach their fiduciary duties to the institutional investors by exercising Beechwood's considerable discretionary authority and investing the investors' funds in ███████████████████████

875.    And, in the case of each individual Defendant named herein, the Defendant specifically participated in the breaches of fiduciary duty that Beechwood perpetrated against WNIC and BCLIC. ████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████ Similarly, over the course of Beechwood's two and a half year relationship with WNIC and BCLIC, the three Beechwood CIO's – first Levy, then Saks, then Narain – aided and abetted the breaches of fiduciary duty by

██████████████████████████████████████

████████████████████████████████

███████████████

876.    Other individual Defendants – specifically Saks, Narain and Kim – served as liaisons to WNIC and BCLIC and aided and abetted the breaches of fiduciary duty ██████████

██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

████████████████

877. 

878.    Moreover, many of the individual Defendants named herein aided and abetted the breaches of fiduciary duty as agent for, or on behalf of, the entities that they established to secrete their ill-gotten gains.  Nordlicht, Huberfeld and Bodner aided and abetted the breaches of fiduciary duty as agents for their respective Beechwood Trusts and Beechwood Series – as well as for themselves.

879.    WNIC and BCLIC have been injured as a proximate result of each of Defendants' aiding and abetting of the Co-conspirators' breaches of fiduciary duty in at least the following ways: (a) by not terminating the Reinsurance (and accompanying) Agreements sooner or taking other actions to ameliorate the damages that WNIC and BCLIC were incurring while the Agreements were continuing; (b) by Beechwood Re avoiding its obligations to top-up the trusts based on false and fraudulent over-valuations of trust assets; (c) by the Defendants enriching themselves in the form of compensation, bonuses, dividends and/or other payouts to the Co-conspirators and others; (d) by not receiving, upon recapture, admitted assets having a fair market value equal to the statutory liabilities being recaptured; (e) by not receiving, upon

233

recapture, a negative ceding commission previously paid to Beechwood Re in an amount exceeding $42 million; and (f) by incurring significant expenses, exceeding $10 million, including having to pay outside professionals in connection with terminating the Reinsurance Agreements and recapturing and liquidating the trust assets and the activities connected with such terminations, recapturing and liquidations.

## COUNT THIRTEEN

### Aiding and Abetting Breach of Fiduciary Duty
### (Against Lincoln)

880.    WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

881.    As set forth above, Beechwood Re, BAM and BAM Administrative owed fiduciary duties to WNIC and BCLIC in the investigation, recommendation, management and supervision of WNIC's and BCLIC's reinsurance trust assets.  Beechwood Re, BAM and BAM Administrative breached its fiduciary duties to WNIC and BCLIC by, among other things, making egregious investments of the trust assets in Platinum-controlled funds and entities, misrepresenting ██████████████████████ to WNIC and BCLIC and fraudulently concealing from WNIC and BCLIC ████████████████. Additionally, under the Reinsurance Agreements, Beechwood Re was obligated to add its own funds to the reinsurance trusts if trust assets fell below certain thresholds.  As set forth above, Beechwood Re, BAM and BAM Administrative overvalued trust assets to create the false impression that the trusts had surplus funds, thus allowing Beechwood Re to avoid its obligations to top-up the reinsurance trusts and instead remove as "surplus" more than $100 million from the reinsurance trusts over the course of the relationship with WNIC and BCLIC.  Moreover, under the plain terms of the Reinsurance Agreements, when those Reinsurance Agreements terminated,

Beechwood Re was contractually obligated to return cash or admitted assets equal to the recaptured statutory reserves.  But, again, Beechwood Re did not do that.  It returned cash or admitted assets that had a value of over $110 million *less* than the recaptured statutory reserves.

882.  WNIC and BCLIC have been injured as a proximate result of Beechwood Re's breaches of its fiduciary duties.

883.  ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████

884.  Lincoln knowingly and substantially assisted, participated in, enabled, and promoted Beechwood Re, BAM and BAM Administrative's breaches of their fiduciary obligations to WNIC and BCLIC by, among other things, ███████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████

885.  WNIC and BCLIC have been injured as a proximate result of Beechwood Re, BAM and BAM Administrative's breaches of their fiduciary duties and Lincoln's substantial participation in furthering those breaches.

886.    In other words, Lincoln's actions caused harm upon which the primary liability for the breaches of fiduciary duties is predicated.

887.    Consequently, WNIC and BCLIC are entitled to a judgment of compensatory damages in an amount to be determined at trial, together with interest at the statutory rate.

888.    Because Lincoln's actions were malicious, reckless, outrageous and demonstrated a wanton disregard of WNIC's and BCLIC's rights, WNIC and BCLIC are entitled to punitive damages.

## COUNT FOURTEEN

### Fraudulent Conveyance – New York Debtor and Creditor Law §§ 276, 276-a, 278 and 279
### (Against BBL, BBIL and PB Investment, as successor-in-interest to BBIH)

889.    WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

890.    WNIC and BCLIC are Beechwood Re's creditors under the terms of the Reinsurance (and accompanying) Agreements.  Under these Agreements, Beechwood Re was obligated to top-up the reinsurance trusts with its own funds if trust assets fell below contractual thresholds.  Instead of doing so, Beechwood Re fraudulently, recklessly or with gross negligence overvalued trust assets to create the false impression that the trusts had surplus funds, thus allowing Beechwood Re to improperly avoid its obligations to in fact top-up the trusts.

891.    Moreover, under the plain terms of the Reinsurance Agreements, when those Agreements terminated, Beechwood Re was contractually obligated to pay WNIC and BCLIC admitted assets equal to the statutory liabilities being recaptured.  But Beechwood Re breached its obligations to do so, paying an amount that was at least $110 million less than the amounts it was required to pay WNIC and BCLIC.

236

892.     In addition, WNIC and BCLIC are creditors of Beechwood Re for the damages they suffered as a result of Beechwood Re's other breaches of the Reinsurance Agreements and fraudulent and other wrongful conduct, as set forth in this pleading.  WNIC and BCLIC are tort creditors because they have claims against Beechwood Re for fraud stemming from Beechwood Re's fraudulent, reckless or grossly negligent misrepresentations, as set forth above.

893.     Beechwood Bermuda was aware that WNIC and BCLIC were Beechwood Re's creditors.  Beechwood Bermuda and Beechwood Re were commonly owned and controlled, and were together with other Co-Conspirators engaged in a conspiracy to defraud WNIC and BCLIC. Hence, Beechwood Bermuda knew everything Beechwood Re knew, including that Beechwood Re had defrauded WNIC and BCLIC and that Beechwood Re had breached and planned to continue breaching the Reinsurance Agreements.  ████████████████

████████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████

894.     The Demand Note Transfer constituted a conveyance by Beechwood Re as defined under the New York Debtor and Creditor Law ("*DCL*") section 270.

895.   The Demand Note Transfer was made by Beechwood Re ███████████████████████████ for no consideration with the actual intent to hinder, delay, or defraud the creditors of Beechwood Re.

896.   Beechwood Re made the Demand Note Transfer ███████████████ ████████████████ in furtherance of its fraud scheme, and for the purpose of ensuring that Beechwood Re would have no assets if and when the fraud scheme was discovered.  That is, among the Beechwood entities, ███████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████

897.   The Demand Note Transfer ████████████████████████████with the actual intent to hinder, delay, or defraud the creditors and/or future creditors of Beechwood Re at the time of the Demand Note Transfer.

898.   The Demand Note Transfer has all of the hallmarks of an actually fraudulent conveyance:  (a) there was a close relationship between the parties to the transaction; (2) it was a secret and hasty transfer not in the usual course of business; (3) there was no consideration at all; (4) Beechwood Re knew it was defrauding WNIC and BCLIC and incurring obligations under the Reinsurance Agreements and would be unable to pay WNIC and BCLIC what was owed; and (5) the fraudsters retained control of the Demand Note after the Transfer.

899.   ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████

████████████████████████████ a money judgment may be entered in an amount up to the value of the fraudulently transferred assets.

900.    As a result of the foregoing, under DCL sections 276, 276-a, 278, and/or 279, WNIC and BCLIC are entitled to judgment in the amount of $75 million, plus interest, attorneys' fees and punitive damages.

**COUNT FIFTEEN**

**Fraudulent Conveyance – New York Debtor
and Creditor Law §§ 273, 278 and/or 279
(Against BBL, BBIL and PB Investment, as successor-in-interest to BBIH)**

901.    WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

902.    WNIC and BCLIC are creditors of Beechwood Re for the damages they suffered as a result of Beechwood Re's breaches of the Reinsurance Agreements and fraudulent and other wrongful conduct set forth in this Complaint.

903.    The Demand Note Transfer constituted a conveyance by Beechwood Re as defined under DCL section 270.

904.    Beechwood Re did not receive fair consideration for the Demand Note Transfer. It received no consideration at all.

905.    Beechwood Re was insolvent when it made the Demand Note Transfer, or became insolvent as a result of the Transfer.  As a result of the Transfer, for example, Beechwood Re had only $25 million in "capital," which was insufficient to satisfy all of the liabilities Beechwood Re then had and would incur under the Reinsurance Agreements. Moreover, when the Demand Note Transfer occurred, Beechwood Re was actively participating, with other Co-Conspirators including Beechwood Bermuda, in a massive fraud scheme directed

at WNIC, BCLIC and others and had nowhere near the assets necessary to make its victims whole.

906.    As a result of the foregoing, pursuant to DCL sections 273, 278, and/or 279, WNIC and BCLIC are entitled to judgment in the amount of $75 million, plus interest and punitive damages.

## COUNT SIXTEEN

### Fraudulent Conveyance – New York Debtor
### and Creditor Law §§ 274, 278 and/or 279
### (Against BBL, BBIL and PB Investment., as successor-in-interest to BBIH)

907.    WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

908.    WNIC and BCLIC are creditors of Beechwood Re for the damages they suffered as a result of Beechwood Re's breaches of the Reinsurance Agreements and fraudulent and other wrongful conduct set forth in this Complaint.

909.    The Demand Note Transfer constituted a conveyance by Beechwood Re as defined under DCL section 270.

910.    Beechwood Re did not receive fair consideration for the Demand Note Transfer. It received no consideration at all.

911.    Beechwood Re had unreasonably small capital after the Demand Note Transfer, as Beechwood Re's obligations under the Reinsurance Agreements made it potentially obligated to WNIC and BCLIC for multiples of the amount remaining in its Demand Note post-Transfer. Moreover, when the Demand Note Transfer occurred, Beechwood Re was actively participating, with other Co-Conspirators, including Beechwood Bermuda, in a massive fraud scheme directed at WNIC, BCLIC and others and had nowhere near the capital necessary to make its victims whole.

912.    As a result of the foregoing, pursuant to DCL sections 274, 278 and/or 279, WNIC and BCLIC are entitled to judgment in the amount of $75 million, plus interest and punitive damages.

### COUNT SEVENTEEN

**Fraudulent Conveyance – New York Debtor
and Creditor Law §§ 275, 278 and/or 279
(Against BBL, BBIL and PB Investment, as successor-in-interest to BBIH)**

913.    WNIC and BCLIC incorporate each and every allegation above as if set forth verbatim in this paragraph.

914.    WNIC and BCLIC are creditors of Beechwood Re for the damages they suffered as a result of Beechwood Re's breaches of the Reinsurance Agreements and fraudulent and other wrongful conduct set forth in this Complaint.

915.    The Demand Note Transfer constituted a conveyance by Beechwood Re as defined under DCL section 270.

916.    Beechwood Re did not receive fair consideration for the Demand Note Transfer. It received no consideration at all.

917.    When Beechwood Re made the Demand Note Transfer, Beechwood Re had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay them as the debts matured.  When the Demand Note Transfer occurred, Beechwood Re was actively participating, with other Co-Conspirators, including Beechwood Bermuda, in a massive fraud scheme directed at WNIC, BCLIC and others and had nowhere near the capital necessary to make its victims whole.

918.    As a result of the foregoing, under DCL sections 275, 278, and/or 279, WNIC and BCLIC are entitled to judgment in the amount of $75 million, plus interest and punitive damages.

## COUNT EIGHTEEN

**Contribution and Indemnity**
**(Against Beechwood Re, Feuer, Taylor, Levy, Beechwood Capital Group,**
**Nordlicht, Huberfeld, Bodner, Feuer Family Trust,**
**Taylor-Lau Family Trust, Hodgdon, Slota, Small, Leff, Manela,**
**Ottensoser, Kim, Saks, Poteat, Narain, Holdings, BAM, BAM Administrative,**
**BBL, BBIL, PB Investment, as successor-in-interest to BBIH,**
**Beechwood Investments and each Series,**
**Beechwood Trusts Nos. 1-20, and Lincoln)**

919.    WNIC and BCLIC incorporate each and every allegation above as if set forth

verbatim in this paragraph.

920.    The PPCO Receiver is seeking damages against WNIC and BCLIC, as set forth in

the PPCO Receiver's Complaint.

921.    Should WNIC or BCLIC be found to have any liability to the PPCO Receiver,

such liability will be wholly as a result of the fraudulent and other wrongful conduct of each of

the Cross-claim and Third-party Defendants that WNIC and BCLIC sue in this action, and

therefore WNIC and BCLIC will each be entitled to be indemnified in full by each Cross-claim

and/or Third-party Defendant.

922.    In the alternative, should WNIC or BCLIC be found to have any liability to the

PPCO Receiver, such liability will be as a result of the fraudulent and other wrongful conduct of

each of the Cross-claim and Third-party Defendants that WNIC and BCLIC sue in this action,

and therefore WNIC and BCLIC will each be entitled to contribution from each Cross-claim

and/or Third-party Defendant.

## COUNT NINETEEN

**Unjust Enrichment/Constructive Trust
(Against Nordlicht, Huberfeld, Bodner, Feuer Family Trust,
Taylor-Lau Family Trust, Hodgdon, Slota, Small, Leff, Manela,
Ottensoser, Kim, Saks, Poteat, Narain, Holdings, BAM,
BAM Administrative, BBL, BBIL, PB Investment,
as successor-in-interest to BBIH, Beechwood Investments
and each Series, Beechwood Trusts Nos. 1-20 and Lincoln)**

923.    WNIC and BCLIC incorporate each and every allegation above as if set forth

verbatim in this paragraph.

924.    All of the Cross-claim and Third-party Defendants in this action were unjustly

enriched, at WNIC's and BCLIC's expense.  Beechwood Re avoided its obligations to top-up the

trusts by using bogus valuation reports to claim that the trusts were adequately capitalized with

investments having a fair market value which they in fact did not have; the investments were the

product of self-dealing.  The Defendants used trust assets to keep the Platinum-Beechwood fraud

scheme afloat, and to enrich themselves in the process in the form of compensation, bonuses,

dividends and/or other payouts.

925.    Moreover, many of the individual Defendants named herein were unjustly

enriched as agent for, or on behalf of, the entities that they established to secrete their ill-gotten

gains.  Feuer was unjustly enriched as an agent for the Feuer Family Trust.  Taylor was unjustly

enriched as an agent for the Taylor-Lau Family Trust.  Levy was unjustly enriched as an agent

for Beechwood Trust No. 20.  Nordlicht, Huberfeld and Bodner were unjustly enriched as agents

for their respective Beechwood Trusts and Beechwood Series.

926.    It is against equity and good conscience to permit any of these Defendants to

retain any portion of the trust assets they funneled into Platinum and Platinum-related entities to

keep their fraud scheme afloat and enrich themselves in the form of compensation, bonuses,

dividends and/or other payouts, as Beechwood Re and other Co-conspirators made all of these payouts with the ill-gotten gains they received from WNIC and BCLIC.  WNIC and BCLILC seek an accounting of the monies paid to each of these Cross-claim and Third-party Defendants, and a constructive trust should be imposed on all funds that they or other Co-conspirators removed from WNIC's and BCLIC's reinsurance trust accounts.

## JURY DEMAND

WNIC and BCLIC demand a trial by jury on all issues so triable.

Dated: New York, New York
       March 27, 2019

ALSTON & BIRD LLP

By:  _____ /s/  Adam J. Kaiser _____

Adam J. Kaiser (AK 2122)
John M. Aerni (JA 3394)
Daniella P. Main
Jenna C. Polivy
adam.kaiser@alston.com
john.aerni@alston.com
daniella.main@alston.com
jenna.polivy@alston.com
ALSTON & BIRD LLP
90 Park Avenue
New York, New York 10016
(212) 210-9400
(212) 210-9444 (fax)

245