UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                                                    :
IN RE PLATINUM-BEECHWOOD LITIGATION        :        18-cv-06658 (JSR)
                                                                    :
------------------------------------------------------------------ X
MELANIE L. CYGANOWSKI,                             :
                                                                    :
     Plaintiff,                                       :        18-cv-12018 (JSR)
                                                                    :
     -v-                                              :
                                                                    :
BEECHWOOD RE LTD., et al.,                         :
                                                                    :
     Defendants.                                      :
------------------------------------------------------------------ X


### MEMORANDUM OF LAW IN SUPPORT OF THE BEECHWOOD PARTIES' PARTIAL MOTION TO DISMISS AND BEECHWOOD RE LTD'S MOTION TO COMPEL ARBITRATION


LIPSIUS BENHAIM LAW LLP
Ira S. Lipsius
80-02 Kew Gardens Rd, Suite 1030
Kew Gardens, New York 11415
Tel: (212) 981-8440


*Attorney for Cross-Claim Defendants Mark Feuer, the Feuer Family Trust, Scott Taylor, the Taylor-Lau Family Trust, Beechwood Re Holdings, Inc., B Asset Manager LP, BAM Administrative Services LLC, Beechwood Bermuda Ltd., Beechwood Bermuda International, Ltd., and Beechwood Re (in Official Liquidation) s/h/a Beechwood Re Ltd., and Third-Party Defendants Dhruv Narain and Beechwood Capital Group LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND ..................................................................................... 4

    The Parties .......................................................................................................... 4

    The Alleged Platinum Ponzi Scheme ................................................................. 5

    The Claims Against Beechwood .......................................................................... 5

APPLICABLE LEGAL STANDARD ....................................................................... 7

ARGUMENT ............................................................................................................. 8

    I.     CNO'S CIVIL RICO CLAIMS FAIL AS A MATTER OF LAW
           AND SHOULD BE DISMISSED WITH PREJUDICE (COUNTS
           1 AND 2) ...................................................................................................... 8

    II.    CNO'S CLAIMS FOR CONTRIBUTION AND INDEMNITY
           SHOULD BE DISMISSED (COUNT 18) ................................................. 10

    III.   CNO'S CLAIM FOR UNJUST ENRICHMENT SHOULD BE
           DISMISSED (COUNT 19) ........................................................................ 12

    IV.   CNO'S CLAIM AGAINST NARAIN FOR FRAUDULENT
           INDUCEMENT AND FRAUD SHOULD BE DISMISSED
           (COUNT 3) ................................................................................................ 14

           A.    CNO Fails to Allege a Valid Fraudulent Inducement Claim
                  Against Narain ............................................................................. 14

           B.    CNO Fails to Allege a Valid Fraud Claim against Narain ............ 14

    V.    CNO'S CLAIM AGAINST NARAIN FOR BREACH OF
           FIDUCIARY DUTY SHOULD BE DISMISSED (COUNT 11) ............. 17

    VI.   CNO'S CLAIMS AGAINST BRE MUST BE ARBITRATED
           (COUNTS 10 & 18) .................................................................................. 19

CONCLUSION .......................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ACE Cap. Re Overseas Ltd. v. Central United Life Ins. Co.*,
  307 F.3d 24 (2d Cir. 2002) ........................................................................20

*Alexander v. Possible Prods., Inc.*,
  336 F. Supp. 3d 187 (S.D.N.Y. 2018)..........................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................7

*Bankers Conseco Life Ins. Co. v. Feuer*,
  2018 WL 1353279 (S.D.N.Y. Mar. 15, 2018) ...........................2, 6, 12, 20

*Barron Partners, LP v. LAB123, Inc*.,
  593 F. Supp. 2d 667 (S.D.N.Y. 2009)..........................................................14

*Briarpatch Ltd., L.P v. Phoenix Pictures, Inc*.,
  373 F.3d 296 (2d Cir. 2004)..........................................................................12

*Corsello v. Verizon N.Y., Inc.*,
  967 N.E.2d 1177 (N.Y. 2012).......................................................................13

*Fernandez v. UBS AG*,
  222 F. Supp. 3d 358 (S.D.N.Y. 2016)........................................................7, 8

*Gagnon v. Alkermes PLC*,
  2019 WL 1388700 (S.D.N.Y. Mar. 28, 2019) .............................................12

*Googla Home Decor LLC v. Uzkiy*,
  2009 WL 2922845 (E.D.N.Y. Sept. 8, 2009) ...............................................12

*Greco v. Local.com Corp.*,
  806 F. Supp. 2d 653 (S.D.N.Y. 2011)...........................................................19

*In re Platinum-Beechwood Litig.*,
  2019 WL 1759925 (S.D.N.Y. Apr. 22, 2019)...........................................9, 10

*In re Refco Inc. Sec. Litig.*,
  826 F. Supp. 2d 478 (S.D.N.Y. 2011)...........................................................18

*Javier v. Beck*,
  2014 WL 3058456 (S.D.N.Y. July 3, 2014) ...................................................7

*Kaufman v. Cohen*,
    760 N.Y.S.2d 157 (1st Dep't 2003) ..................................................................15

*Krys v. Butt*,
    486 F. App'x 153 (2d Cir. 2012) ....................................................................18

*Law Debenture v. Maverick Tube Corp.*, 2008 WL 4615896 (S.D.N.Y. Oct. 15,
    2008), *aff'd*, 595 F.3d 458 (2d Cir. 2010) ......................................................13

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)......................................................................14, 15

*Lunsford v. Farrell Shipping Lines, Inc.*,
    1991 WL 150596 (S.D.N.Y. July 26, 1991) ....................................................18

*Meridian Autonomous Inc. v. Coast Autonomous LLC*,
    2018 WL 4759754 (S.D.N.Y. Sept. 30, 2018)............................................12, 19

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006)..............................................................................................9

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993)................................................................................7

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
    651 F.3d 268 (2d Cir. 2011).............................................................................8, 9

*Monisoff v. Am. Eagle Invs., Inc.*,
    955 F. Supp. 40 (S.D.N.Y. 1997)......................................................................11

*Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*,
    85 F. Supp. 2d 282 (S.D.N.Y. 2000), *aff'd*, 2 F. App'x 109 (2d Cir. 2001)............................15

*Picard v. Kohn*,
    907 F. Supp. 2d 392 (S.D.N.Y. 2012)................................................................8

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010)..............................................................................19

*Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*,
    192 F. Supp. 3d 348 (S.D.N.Y. 2016)................................................................7

*S.E.C. v. Zandford*,
    535 U.S. 813 (2002)..........................................................................................8, 9

*Salzmann v. Prudential-Bache Sec.*,
    1993 WL 77374 (S.D.N.Y. Mar. 12, 1993) ........................................................7

*SCM Grp., Inc. v. McKinsey & Co.*,
  2011 WL 1197523 (S.D.N.Y. Mar. 28, 2011) ...................................................................13

*Senior Health Ins. Co. of Pa. v. Beechwood Re Ltd.*,
  345 F. Supp. 3d 515 (S.D.N.Y. 2018) ....................................................................13, 14, 18

*Shearson Lehman Hutton, Inc. v. Wagoner*,
  944 F.2d 114 (2d Cir. 1991) .............................................................................................11

*SmartStream Techs., Inc. v. Chambadal*,
  2018 WL 1870488 (S.D.N.Y. Apr. 16, 2018) ...................................................................13

*SNS Bank, N.V. v. Citibank, N.A.*,
  777 N.Y.S.2d 62 (1st Dep't 2004) .....................................................................................17

*Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*,
  383 F. Supp. 2d 428 (S.D.N.Y. 2008) ...............................................................................17

*Starke v. Gilt Groupe, Inc.*,
  2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) ...................................................................12

*Tyler v. City of New York*,
  2006 WL 1329753 (E.D.N.Y. May 16, 2006) ...................................................................12

*U.S. Capital Partners, LLC v. Stanwich Capital Advisors, LLC*,
  2015 WL 4388421 (S.D.N.Y. July 17, 2015) .....................................................................7

*Vitale v. Steinberg*,
  764 N.Y.S.2d 236 (1st Dep't 2003) ...................................................................................13

*Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*,
  286 F. Supp. 3d 634 (S.D.N.Y. 2017) .................................................................................8

*WorldCrisa Corp. v. Armstrong*,
  129 F.3d 71 (2d Cir. 1997) ...........................................................................................20, 21

**STATUTES AND RULES**

9 U.S.C. § 1 .............................................................................................................................19

9 U.S.C. § 2 .............................................................................................................................19

9 U.S.C. § 3 ........................................................................................................................20, 21

9 U.S.C. § 4 ........................................................................................................................20, 21

15 U.S.C. § 78j .........................................................................................................................8

18 U.S.C. § 1964(c) ..................................................................................................................8

Fed. R. Civ. P 8(a) .................................................................................................7

Fed. R. Civ. P 9(b) .................................................................................................7

**OTHER AUTHORITIES**

Edward M. Fox & James Gadsden, *Rights of Indemnification and Contribution Among Persons Liable for Fraudulent Conveyances*, 23 Seton Hall L. Rev. 1600 (1993) ...............................................................................................11

Cross-Claim Defendants Mark Feuer, the Feuer Family Trust ("Feuer Trust"), Scott Taylor, the Taylor-Lau Family Trust ("Taylor Trust"), Beechwood Re Holdings, Inc. ("Beechwood Holdings"), B Asset Manager LP ("BAM"), BAM Administrative Services LLC ("BAM Admin"), Beechwood Bermuda Ltd. ("BBL"), Beechwood Bermuda International, Ltd. ("BBIL"), and Beechwood Re (in Official Liquidation) s/h/a Beechwood Re Ltd. ("BRe"), and Third-Party Defendants Dhruv Narain and Beechwood Capital Group LLC ("BCG") (collectively, the "Beechwood Parties"), by and through their undersigned counsel, respectfully submit this brief in support of their partial motion, pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure, to dismiss the Cross-Claims and Third-Party Complaint (the "Complaint") of Bankers Conseco Life Insurance Company and Washington National Insurance Company (collectively, "CNO"), for lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted.

## PRELIMINARY STATEMENT

CNO's cross-claims against Beechwood represent an obvious public-relations ploy to foster the false impression that Beechwood was somehow in cahoots with Platinum and surreptitiously invested CNO's assets in Platinum and Platinum-related investments— notwithstanding contemporaneous documents showing CNO's knowledge of Beechwood's relationship to Platinum and knowledge of the nature of its investments.  Despite this smear campaign, the bulk of CNO's cross-claims against Beechwood are deficient as a matter of law and should be dismissed, with prejudice, for the following reasons:

*First*, as this Court already held in the related SHIP action (Case No. 18-cv-06658-JSR, Doc. 292), CNO's civil RICO claims are barred by the RICO amendment to the Private Securities Litigation Reform Act ("PSLRA"), which precludes the assertion of any civil RICO claims based in whole or in part on securities fraud.  Here, as in the SHIP action, each of the

alleged predicate RICO acts involve fraudulent misrepresentations relating to the purchase or valuation of securities, thus mandating dismissal.

*Second*, CNO's claims for contribution and indemnification should be dismissed because Plaintiff[1] lacks standing to assert civil RICO, securities fraud, or common law claims against CNO. And there is no statutory right of indemnification or contribution for fraudulent conveyance claims under New York's Debtor & Creditor Law. Additionally, CNO fails to plead that Beechwood defrauded or committed a tort against PPCO, instead focusing entirely on CNO.

Independently, CNO's claim for contribution and indemnification against Feuer, Taylor, and BCG should be dismissed because CNO is a party to Reinsurance Agreements, which contain a broad arbitration clause. And Judge Ramos has previously ruled that claims between CNO on the one hand and Feuer, Taylor, and BCG on the other are subject to this broad arbitration provision. *Bankers Conseco Life Ins. Co. v. Feuer*, 2018 WL 1353279, at *1 (S.D.N.Y. Mar. 15, 2018).

*Third*, CNO's unjust enrichment claim fails as a matter of law due to the existence of valid agreements governing CNO's claim, *i.e.*, the Reinsurance Agreements. This is true for both signatories and non-signatories alike.

*Fourth*, similar to this Court's decisions in the SHIP action (ECF Nos. 72, 292), CNO also fails to state a claim against Mr. Narain for fraudulent inducement or fraud. Indeed, CNO nowhere alleges that Mr. Narain made any actionable misrepresentations or omissions to induce CNO to enter into any agreement, thus precluding any claim for fraudulent inducement. In

---

[1] The Equity Receiver ("Receiver") for Platinum Partners Credit Opportunities Master Fund LP, Platinum Partners Credit Opportunities Fund (TE) LLC, Platinum Partners Credit Opportunities Fund LLC, Platinum Partners Credit Opportunities Fund International Ltd., Platinum Partners Credit Opportunities Fund International (A) Ltd., and Platinum Partners Credit Opportunities Fund (BL) LLC ("PPCO").

addition, with respect to the sole representation allegedly made by Mr. Narain, CNO fails to: (a) satisfy Rule 9(b)'s heightened pleading standard; (b) adequately plead any justifiable reliance on that purported representation; or (c) allege that CNO suffered any out-of-pocket loss in connection with that representation, thus dooming CNO's fraud claim against Mr. Narain.

*Fifth*, CNO fails to adequately allege any breach of fiduciary claim against Mr. Narain. CNO does not allege anything about Mr. Narain's role as a corporate official that created a personal relationship of trust and confidence. And CNO does not allege facts giving rise to the inference that it had a fiduciary relationship with Mr. Narain personally, thus requiring dismissal of this claim as well.

*Last*, this Court lacks jurisdiction to hear CNO's breach of contract claim against BRe, because that claim is currently the subject of a pending arbitration before the American Arbitration Association, in an action captioned *Bankers Conseco Life Ins. Co., et al. v. Beechwood Re Ltd., et al.*, AAA Case No. 01-16-0004-2510 (the "CNO Arbitration"). Moreover, the sole purpose of CNO's breach of contract claim is to seek additional interim security from BRe even though the Panel in the CNO Arbitration already entered an interim security award under New York Insurance Law § 1213(c)(1)(A) that was confirmed by this Court.

## FACTUAL BACKGROUND

### The Parties

This is one of several actions pending in this Court arising out of the failure of Platinum Partners, formerly a highly-regarded hedge fund manager, whose principals are now subject to various civil and criminal proceedings.[2]

The Beechwood entities are a group of reinsurance companies and asset managers that were formed in 2013.  (ECF No. 75, Compl. ¶ 536.)  The Beechwood entities' initial investors included trusts established for the benefit of the family members of certain Platinum-related individuals.  (*Id.* ¶ 518.)  And Beechwood's first Chief Investment Officer, David Levy ("Levy"), came to Beechwood from Platinum.  (*Id.* ¶ 489.)

Feuer was the Chief Executive Officer and Taylor was the President of these Beechwood companies.  (*Id.* ¶¶ 483, 485.)  Beginning in 2016, Narain was the Chief Investment Officer of BAM, Beechwood's investment management entity.  (*Id.* ¶ 508.)

CNO was Beechwood's first client.  In February 2014, Beechwood entered into reinsurance agreements with two of CNO's subsidiaries (the "Reinsurance Agreements"), under which those subsidiaries ceded blocks of long-term care insurance policies to Beechwood.  (*Id.* ¶ 480; Lipsius Decl., Ex. 2, NY Re. Ins.; Ex. 3, Ind. Re. Ins.)

Both Reinsurance Agreements contain the following, nearly identical, arbitration provisions:

> Except as otherwise provided in this Reinsurance Agreement, all disputes or differences *between the Parties* arising under or relating to this Reinsurance Agreement upon which an amicable understanding cannot be reached shall be decided by arbitration pursuant to the terms of this Section. Except as otherwise provided in this Reinsurance Agreement, the arbitration proceeding shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

---

[2] Factual allegations in the Complaint are taken as true solely for purposes of this motion.

Lipsius Decl., Ex. 2, NY Re. Ins. § 10.1(a) (emphasis added); Ex. 3, Ind. Re. Ins. § 10.1(a) (emphasis added).

**The Alleged Platinum Ponzi Scheme**

In June 2016, news reports first broke about a potential fraud scandal involving Platinum and its principals, including founder Murray Huberfeld and co-chief investment officers Mark Nordlicht and Levy.  That same month, Huberfeld was arrested in connection with a bribe to a pension official in exchange for investing in a fund owned and operated by Platinum.  (*Id.* ¶¶ 473, 677.)  In December 2016, Nordlicht, Levy, and other Platinum-related individuals were charged with securities fraud by the U.S. Attorney's Office for the Eastern District of New York and the Securities and Exchange Commission ("SEC").  (*Id.* ¶¶ 522, 684-85.)  Among other things, the government accused them of "operating Platinum like a Ponzi scheme, where they used loans and new investor funds to pay off existing investors."  (*Id.* ¶ 684.)  Notably, although the government has been investigating Platinum's activities since at least early 2016, none of the Beechwood Parties has been indicted for any conduct or sued by any governmental agency in connection with Platinum's alleged fraud.

**The Claims Against Beechwood**

In June 2016, following Huberfeld's arrest, CNO began auditing its investments, with the aid of counsel and an independent financial consultant that counsel retained in anticipation of litigation.  (*Id.* ¶ 677.)  A short time later, on September 29, 2016, Beechwood received notice that CNO was terminating the Reinsurance Agreements and recapturing the blocks of long-term care insurance policies that had been ceded to Beechwood under the Reinsurance Agreements.

(*Id.* ¶¶ 668-69.)[3]   Simultaneously, CNO filed a lawsuit against Feuer, Taylor, and Levy in the

U.S. District Court for the Southern District of New York, alleging fraud, breach of fiduciary

duty, and racketeering.  *Bankers Conseco Life Ins. Co. v. Feuer*, No. 16-cv-7646 (S.D.N.Y.).

That same day, CNO also submitted an arbitration demand against BRe.  *Bankers Conseco Life

Ins. Co. v. Beechwood Re, Ltd.*, AAA Case No. 01-16-0004-2510 (the "CNO Arbitration").  In

March 2018, Judge Ramos granted a motion to compel arbitration in the federal action, and the

two actions were subsequently joined for arbitration.  *Bankers Conseco Life Ins. Co.*, 2018 WL

1353279, at *1.

On December 20, 2018, the Receiver commenced her action against Beechwood, its

principals, SHIP, Fuzion, and CNO.  *Cyganowski v. Beechwood Re Ltd.*, 18-cv-12018

(S.D.N.Y.).  Following the initiation of that lawsuit, CNO filed Cross-Claims and a Third-Party

Complaint against Beechwood, its principals, and various other parties.  Those pleadings are

similar to CNO's previous lawsuits.  They broadly allege that CNO was misled about

Beechwood's ownership, capitalization, investment strategy, and the composition of its

management team.  (*See, e.g.*, Compl. ¶¶ 538, 551, 572, 616.)  CNO brings claims against

Beechwood for (i) civil RICO violations under 18 U.S.C. § 1962(c), (ii) civil RICO violations

under 18 U.S.C. § 1962(d), (iii) fraudulent inducement and fraud, (iv) aiding and abetting fraud,

(v) breach of contract, (vi) breach of fiduciary duty, (vii) aiding and abetting breaches of

fiduciary duty, (viii) fraudulent conveyance under New York's Debtor and Creditor Law, (ix)

contribution and indemnity, and (x) unjust enrichment.

---

[3] It is BRe's contention that the termination was improper and performed in bad faith, and that it
resulted in a windfall to CNO of tens of millions of dollars that rightfully belonged to BRe.

## APPLICABLE LEGAL STANDARD

To survive a motion to dismiss, a complaint must satisfy Rule 8(a) by stating a claim for relief that is plausible on its face.  Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).  Furthermore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citation omitted).

CNO's non-contract claims based on allegedly fraudulent conduct (*e.g.*, unjust enrichment, breach of fiduciary duty, fraud, and RICO) must also be pled with specificity under Rule 9(b).  Fed. R. Civ. P. 9(b) ("In alleging fraud . . ., a party must state with particularity the circumstances constituting fraud . . . .").[4]  To satisfy the specificity requirement, CNO must "(1) specify the statements that [it] contends [are] fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993).

Moreover, it is well-settled that a party does not comply with Rule 9(b) when it engages in "group pleading"—the practice of making allegations against a group of defendants generally instead of pleading the specifics of a claim against each defendant individually.  *See id.* at 1175; *Javier v. Beck*, 2014 WL 3058456, at *12 (S.D.N.Y. July 3, 2014).  Group pleading is improper because each defendant "is entitled to be apprised of the circumstances surrounding the

---

[4] *See, e.g.*, *Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 388 (S.D.N.Y. 2016) (applying Rule 9(b) to breach of fiduciary duty claims); *Royal Host Realty, LLC v. 793 Ninth Ave. Realty, LLC*, 192 F. Supp. 3d 348, 357 (S.D.N.Y. 2016) (applying Rule 9(b) to unjust enrichment claim); *U.S. Capital Partners, LLC v. Stanwich Capital Advisors, LLC*, 2015 WL 4388421, at *4 (S.D.N.Y. July 17, 2015) (applying rule 9(b) to common law fraud claims); *Salzmann v. Prudential-Bache Sec.*, 1993 WL 77374, at *6 (S.D.N.Y. Mar. 12, 1993) (applying Rule 9(b) to civil RICO and common law fraud claims).

fraudulent conduct with which he individually stands charged" while "blanket references to acts or omissions by all of the defendants" fail to do so.  *Fernandez*, 222 F. Supp. 3d at 388.

## ARGUMENT

### I.    CNO'S CIVIL RICO CLAIMS FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED WITH PREJUDICE (COUNTS 1 AND 2)[5]

Under the PLSRA's RICO Amendment, "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962 [*i.e.*, RICO]." 18 U.S.C. § 1964(c).  The PSLRA also bars civil litigants from "using artful pleading to boot-strap securities fraud cases into RICO cases, with their threat of treble damages."  *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274 (2d Cir. 2011).  As the statute's plain language makes clear, what matters is not whether the conduct relied upon for the RICO claim has in fact formed the basis of a securities fraud action by the plaintiff, but whether it *could* do so in an action by anyone, "be it against, or on behalf of, the plaintiff, defendants or a non-party . . . ." *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 644 (S.D.N.Y. 2017); *See Picard v. Kohn*, 907 F. Supp. 2d 392, 398 (S.D.N.Y. 2012) (Rakoff, J.) (dismissing RICO claim based on allegation that defendants "kept Madoff Securities' Ponzi Scheme alive").

"[F]raud in the purchase or sale of securities," 18 U.S.C. § 1964(c), covers a broad swath of deceptive conduct relating to transactions involving securities.  The Supreme Court has made clear that the almost identical language of § 10(b)—which makes it "unlawful for any person . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance," 15 U.S.C. § 78j—is to be "construed not technically and

---

[5] The Beechwood Parties also adopt and incorporate any additional arguments concerning CNO's civil RICO claims advanced by Daniel Saks and David Bodner in the memoranda of law in support of their motions to dismiss CNO's Cross-Claims and Third-Party Complaint.

restrictively, but flexibly to effectuate [the statute's] remedial purposes." *S.E.C. v. Zandford*, 535 U.S. 813, 819 (2002) (quotation marks omitted).  There need not be a strict temporal sequence between the purported fraud and the securities' purchase or sale.  Rather, "it is enough that the scheme to defraud and the sale of securities coincide" in some fashion.  *Id*. at 822.  For example, courts have found fraud in connection with the purchase or sale of securities where victims maintained an ownership position in fraudulently overvalued securities, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 77, 88 (2006); there was conduct undertaken to keep a Ponzi scheme alive, *MLSMK*, 651 F.3d at 277; or transactions "enabled [a respondent] to convert the proceeds of the sales of [investors'] securities to his own use." *Zandford*, 535 U.S. at 819-20.

Here, as was the case in the related SHIP action, in which this Court dismissed all RICO claims, the gravamen of CNO's civil RICO claims is that Beechwood funneled CNO's assets to Platinum.  *See In re Platinum-Beechwood Litig.*, 2019 WL 1759925, at *8 (S.D.N.Y. Apr. 22, 2019) (dismissing nearly identical claims brought by SHIP).  Just like SHIP, CNO alleges that the Beechwood Parties "fraudulently induce[d] institutional investors such as WNIC and BCLIC, to entrust funds to Beechwood," and that Beechwood then used those funds "to further and perpetuate the Co-conspirators' ongoing Platinum fraud schemes."  (Compl. ¶ 796.)  According to CNO, these schemes included "(a) the Platinum Ponzi-esque scheme, (b) Scheme 1, as referenced in [related case *Trott et al. v. Platinum Management (NY) LLC et al.*, Case No. 18-cv-10936 (S.D.N.Y.) (*i.e.*, investments into Platinum and certain Platinum portfolio companies, including Black Elk)] and (c) the scheme to enrich themselves via fraudulent and inflated management fees and other compensation."  (*Id*.)

Accordingly, for the same reason set forth in this Court's opinion dismissing SHIP's RICO claims (Doc. 292), the virtually identical claims asserted by CNO here should also be dismissed pursuant to the PLSRA RICO Amendment.[6]

## II.   CNO'S CLAIMS FOR CONTRIBUTION AND INDEMNITY SHOULD BE DISMISSED (COUNT 18)[7]

CNO has sued Beechwood for contribution and indemnification, claiming that if it is liable to the Receiver it is only as a result of Beechwood's conduct.  Those claims are meritless.

First, since neither the Receiver nor CNO can assert a valid RICO claim for the reasons set forth in Point I above, CNO cannot seek contribution or indemnification from Beechwood for such legally deficient claim.

Second, assuming that the RICO claim was validly pled (which it is not), CNO's claims for contribution and indemnification should be dismissed because the Receiver lacks standing under the *Wagoner* doctrine to assert (a) civil RICO, (b) securities fraud, (c) aiding and abetting breach of fiduciary duty, (d) aiding and abetting fraud, and (e) unjust enrichment claims against CNO.  *See Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991) ("It is

---

[6] Further, though CNO references the payment of "fraudulent and inflated management fees," it fails to plead with particularity when those withdrawals were actually made.  This Court has already held that withdrawals over a 22-month period were insufficient to constitute a "pattern" for RICO purposes.  *In re Platinum-Beechwood Litig.*, 2019 WL 1759925, at *8 (S.D.N.Y. Apr. 22, 2019) (citing *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 168 (2d Cir. 2004)).  Thus, even if these predicate acts did not fall within the RICO Amendment, CNO's allegations would fall short of satisfying the two-year minimum duration necessary to find closed-ended continuity.  Though CNO broadly alleges that the entire RICO scheme took place over a three-year period (Compl. ¶ 787), any conduct falling within the PSLRA cannot serve as a predicate for CNO's RICO claims.  *In re Platinum-Beechwood Litig.*, 2019 WL 1759925, at *8.  It is thus insufficient for CNO to bootstrap its claims into the unspecified three-year period alleged in the Complaint.

[7] The Beechwood Parties hereby adopt and incorporate any additional arguments concerning CNO's claims for contribution and indemnification advanced by Daniel Saks and David Bodner in the memoranda of law in support of their motions to dismiss CNO's Cross-Claims and Third-Party Complaint.

well settled that a bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself.").  In fact, the only claims the Receiver has standing to bring against CNO under *Wagoner* are claims for fraudulent conveyance under New York's Debtor and Creditor Law via the Bankruptcy Code. And "[t]here is neither an express nor implied right of indemnification or contribution in Article 10 of the Debtor & Creditor Law."  Edward M. Fox & James Gadsden, *Rights of Indemnification and Contribution Among Persons Liable for Fraudulent Conveyances*, 23 Seton Hall L. Rev. 1600, 1605 (1993).

Third, it is well-settled that a "claim for contribution under the federal securities laws must be based on allegations that the third-party defendant violated securities laws, not based on allegations that the third-party defendant defrauded the third-party plaintiff." *Monisoff v. Am. Eagle Invs., Inc.*, 955 F. Supp. 40, 42 (S.D.N.Y. 1997) (Rakoff, J.) (citations and internal marks omitted).  Here, CNO's Cross-Claims and Third-Party Complaint do not allege that Beechwood defrauded PPCO.  To the contrary, CNO at most purports to allege separate torts directed at CNO.  CNO's common law claims suffer from the same defect. *See id.* at 42.  For this reason, CNO's claims for contribution and indemnification should be dismissed.

Fourth, CNO's claims for contribution and indemnification against Feuer, Taylor, and BCG should be dismissed because they arise from or relate to the Reinsurance Agreements[8] and

---

[8] The Court may consider the Reinsurance Agreements on this motion because they are integral to CNO's Cross-Claims and Third-Party Complaint. *See Alexander v. Possible Prods., Inc.*, 336 F. Supp. 3d 187, 194 n.3 (S.D.N.Y. 2018) (citation omitted) (document incorporated by reference where there was a "clear, definite, and substantial reference" to the document in the complaint); *Gagnon v. Alkermes PLC*, 2019 WL 1388700, at *5 (S.D.N.Y. Mar. 28, 2019) (holding that news articles that were identified and quoted in the complaint were incorporated by reference).  CNO relies on these agreements in its Cross-Claims and Third-Party Complaint. (Compl. ¶¶ 861-65.)  Indeed, as discussed below, they form the basis of CNO's duplicative breach of contract claim against BRe, which CNO reasserts in this action even though it is already being litigated elsewhere.  (*Id.*)

are therefore subject to mandatory arbitration.  Lipsius Decl., Ex. 2, NY Re. Ins. § 10.1(a); Ex. 3, Ind. Re. Ins. § 10.1(a).  Accordingly, the claims should be dismissed with prejudice.  *Meridian Autonomous Inc. v. Coast Autonomous LLC*, 2018 WL 4759754, at *8 (S.D.N.Y. Sept. 30, 2018) (dismissing claims subject to arbitration provisions).  In fact, Judge Ramos has already held as much, ruling that claims brought by CNO against Feuer, Taylor, and BCG, which had allegations similar to those here, were subject to the broad arbitration provision in the Reinsurance Agreements.  *Bankers Conseco Life Ins. Co.*, 2018 WL 1353279, at *1; *see also Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (granting motion to dismiss based on arbitration provision); *Tyler v. City of New York*, 2006 WL 1329753 (E.D.N.Y. May 16, 2006) (dismissing claims subject to arbitration); *Googla Home Decor LLC v. Uzkiy*, 2009 WL 2922845, at *6 (E.D.N.Y. Sept. 8, 2009) (granting motion to dismiss because plaintiffs' claims were subject to arbitration under terms of agreement between the parties).

### III.   CNO'S CLAIM FOR UNJUST ENRICHMENT SHOULD BE DISMISSED (COUNT 19)[9]

To state a claim for unjust enrichment under New York law, CNO must allege that "(1) [Beechwood] was enriched, (2) at [CNO's] expense, and (3) equity and good conscience militate against permitting [Beechwood] to retain what [CNO] is seeking to recover." *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc*., 373 F.3d 296, 306 (2d Cir. 2004).  Relief for unjust enrichment is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff."  *Corsello v. Verizon New York, Inc.*, 967 N.E.2d 1177, 1185 (N.Y.

---

[9] The Beechwood Parties hereby adopt and incorporate any additional arguments concerning CNO's claims for unjust enrichment advanced by Daniel Saks and David Bodner in the memoranda of law in support of their motions to dismiss CNO's Cross-Claims and Third-Party Complaint.

2012).  Accordingly, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Id*.

Here, CNO alleges that the Beechwood parties were unjustly enriched when "[BRe] avoided its [contractual] obligation[] to top-up the [CNO] trusts by using bogus valuation reports to claim that the trusts were adequately capitalized with investments having a fair market value which they in fact did not have . . . ."  (Compl. ¶ 924.)  As a result of this alleged breach, CNO maintains, the Beechwood parties were enriched "in the form of compensation, bonuses, dividends and/or other payouts."  (*Id*.)  This claim fails for multiple reasons.

First, it is long settled that an unjust enrichment claim cannot stand where an express agreement governs the rights at issue.  *SCM Grp., Inc. v. McKinsey & Co.*, 2011 WL 1197523, at *6 (S.D.N.Y. Mar. 28, 2011) ("Where, as here, it is undisputed that an express and valid contract governs the right at issue, unjust enrichment claims are precluded"); *see also SmartStream Techs., Inc. v. Chambadal*, 2018 WL 1870488, at *7 (S.D.N.Y. Apr. 16, 2018) ("It is well settled that 'the existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events arising out of the same subject matter.'") (citation omitted).  This is true for both signatories and non-signatories alike.  *Vitale v. Steinberg*, 764 N.Y.S.2d 236, 239 (1st Dep't 2003).  Because CNO's unjust enrichment claim is expressly tied to the Reinsurance Agreements (Compl. ¶ 924), the claim should be dismissed.  *See Law Debenture v. Maverick Tube Corp.*, 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008), *aff'd Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458 (2d Cir. 2010).

Second, as this Court has noted, merely alleging a general, non-specific benefit is insufficient to plead an unjust enrichment claim.  *Senior Health Ins. Co. of Pa. v. Beechwood Re Ltd.*, 345 F. Supp. 3d 515, 533 (S.D.N.Y. 2018) (citation omitted) (allegations that parties were "enriched" were "entirely conclusory" and "not entitled to be assumed true").  That is precisely

what CNO has done here with vague references to "compensation, bonuses, dividends and/or other payouts."  Accordingly, because CNO's allegations are entirely conclusory, this provides a separate and independent basis to dismiss CNO's unjust enrichment claim.

## IV.   CNO'S CLAIM AGAINST NARAIN FOR FRAUDULENT INDUCEMENT AND FRAUD SHOULD BE DISMISSED (COUNT 3)[10]

### A.   CNO Fails to Allege a Valid Fraudulent Inducement Claim Against Narain

To state a claim for fraudulent inducement, CNO "must allege a misrepresentation or material omission on which [it] relied that induced [it] to enter into an agreement."  *Barron Partners, LP v. LAB123, Inc*., 593 F. Supp. 2d 667, 670 (S.D.N.Y. 2009).  A fraudulent inducement claim is subject to the heightened pleading standards of Rule 9(b).  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).

Here, CNO acknowledges that Narain did not arrive at Beechwood until January 2016. (Compl. ¶ 508.)  Thus, there is no allegation that Narain made or could have made any actionable misrepresentation or omission to induce CNO to enter into the Reinsurance Agreements, which pre-date his tenure at Beechwood.  Nor is there any allegation that Narain made an actionable misrepresentation or omission designed to induce CNO into entering any other agreement. Consequently, to the extent CNO's claim is styled as one for fraudulent inducement, it should be dismissed.  *See Senior Health Ins. Co. of Pa.*, 345 F. Supp. 3d at 526 (dismissing a nearly identical claim fraudulent inducement claim brought by SHIP).

### B.   CNO Fails to Allege a Valid Fraud Claim against Narain

"To state a cause of action for fraud, [CNO] must allege a representation of material fact, the falsity of the representation, knowledge by [Narain] that it was false when made, justifiable

---

[10] The Beechwood Parties hereby adopt and incorporate any additional arguments concerning CNO's claims for fraudulent inducement and fraud by Daniel Saks in the memoranda of law in support of his motion to dismiss CNO's Cross-Claims and Third-Party Complaint.

reliance by [CNO] and resulting injury." *See Kaufman v. Cohen*, 760 N.Y.S.2d 157, 165 (1st Dep't 2003). Under Rule 9(b), CNO must "(1) specify the statements [it] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290. "In cases where the alleged fraud consists of an omission and [CNO] is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled [CNO], and (4) what [Narain] obtained through the fraud." *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000), *aff'd*, 2 F. App'x 109 (2d Cir. 2001).

Here, CNO broadly alleges that in 2016, after it entered into the Reinsurance Agreements, Narain "continued misrepresenting the Co-conspirators' plans and strategies for managing and investing WNIC's and BCLIC's trust assets and the true purposes behind [BRe's] entering into the Reinsurance (and accompanying) Agreements." (Compl. ¶ 804.) However, the only specific representation that the complaint attributes to Narain is an alleged ███████████ ████████████████████████████████████████████████████████ (*Id.* ¶ 644.) According to CNO, it ███████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ (*Id.*)

First, these allegations fail to meet Rule 9(b)'s heightened pleading requirements because CNO does not identify the actual statement made, to whom it was made, or any other context.

Second, CNO cannot plead justifiable reliance. The gravamen of CNO's fraud claim is that it had concerns over whether the investment ███████████████████████████████

 CNO's suggestion that it was

misled by Narain makes no sense.  There is no nexus between alleged representation ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ and CNO's conduct ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮.

CNO also does not explain how it relied on any purported misrepresentations to its

detriment when, according to the complaint, it was at that very moment already plotting to

terminate its relationship with Beechwood.  (*See* Compl. ¶ 677.)   Indeed, CNO alleges that

following Huberfeld's arrest on June 8, 2016, "[it] began auditing the trusts' investments, with

the aid of counsel and an independent financial consultant that counsel retained *in anticipation of

litigation*."  (*Id.* (emphasis added).)  A short time later, CNO did in fact bring two lawsuits

against Beechwood and its principals.  *Bankers Conseco Life Ins. Co. v. Beechwood Re,

Ltd.,* AAA Case No. 01-16-0004-2510; *Bankers Conseco Life Ins. Co. v. Feuer*, No. 16-cv-7646

(S.D.N.Y.).  Because CNO did not in fact rely on the purported representations from Narain in

June 2016, its fraud claim must be dismissed.

Third, CNO does not allege that it suffered any damages in connection with ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ let alone any out-of-pocket loss

required of fraud claims under New York law.  *See Spencer Trask Software & Info. Servs. LLC

v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 454 (S.D.N.Y. 2008) ("[T]o sustain an action for fraud,

there must be some actual loss incurred as a direct result of the wrong by the party bringing the

action, and in an action for damages, the plaintiff must make a showing of some concrete pecuniary loss.").

CNO also fails to plead an actionable omission. CNO alleges that Narain and others "concealed material facts about the Co-conspirators' plans and strategies for managing and investing WNIC's and BCLIC's trust assets and the true purposes for [BRe's] entering into the Reinsurance (and accompanying) Agreements." (Compl. ¶ 804.) But Narain did not join Beechwood until years after CNO entered into the Reinsurance Agreement, and CNO has not alleged reasonable reliance or injury as to Narain. Moreover, an omission is only actionable if Narain had an affirmative duty to disclose the information to CNO. *See SNS Bank, N.V. v. Citibank, N.A.*, 777 N.Y.S.2d 62, 66 (1st Dep't 2004) ("[A]n omission does not constitute fraud unless there is a fiduciary relationship between the parties."). Here, CNO does not adequately allege—nor is it the case—that CNO had a fiduciary relationship with Narain. Thus, there was no duty to disclose, and CNO's fraud claim should be dismissed.

## V.   CNO'S CLAIM AGAINST NARAIN FOR BREACH OF FIDUCIARY DUTY SHOULD BE DISMISSED (COUNT 11)[11]

CNO alleges that Narain as a BAM employee owed it certain fiduciary duties, which he breached by "making representations to [CNO] after execution of the Reinsurance Agreements [] not to terminate the Agreements or to take other actions to ameliorate the damages that [CNO] were incurring. (Compl. ¶¶ 867-69.) Those allegations are baseless, and CNO's claim against Narain for breach of fiduciary duty should be dismissed.

---

[11] The Beechwood Parties hereby adopt and incorporate any additional arguments concerning CNO's claims for breach of fiduciary duty by Daniel Saks in the memoranda of law in support of his motion to dismiss CNO's Cross-Claims and Third-Party Complaint.

It is well-settled in New York that an individual's status as an officer or director of a company does not establish a personal fiduciary duty towards its customers. *In re Refco Inc. Sec. Litig.*, 826 F. Supp. 2d 478, 512 (S.D.N.Y. 2011). Instead, CNO must allege facts giving rise to the inference that it had a fiduciary relationship with Narain personally, and make specific allegations as to the nature of the fiduciary relationship, when and how it arose, and how it was breached. *See Lunsford v. Farrell Shipping Lines, Inc.*, 1991 WL 150596, at *8 (S.D.N.Y. July 26, 1991). Here, CNO's complaint rests simply on Narain's corporate position and contains none of these required allegations. *See, e.g.*, *Krys v. Butt*, 486 F. App'x 153, 156 (2d Cir. 2012) (affirming dismissal where complaint "failed to indicate that there was anything about [officer's] role as a corporate official that created a personal relationship of trust and confidence").

CNO's complaint includes a single, conclusory allegation that Narain and others "made representations to [CNO] that were calculated to entice [CNO] to repose trust in not only [BRe, BCG] and BAM, but also themselves, as individuals, in serving as fiduciaries for [CNO] under the Reinsurance (and accompanying) Agreements." (Compl. ¶ 868.) CNO, however, fails to identify what these representations were. Indeed, other than the conclusory allegation above, CNO's complaint "does not 'indicate that there was anything about [Narain's] role as a corporate official that created a personal relationship of trust and confidence.'" *Senior Health Ins. Co. of Pa.*, 345 F. Supp. 3d at 525 (citing *Krys*, 486 F. App'x at 156). Accordingly, CNO's claim against Narain for breach of fiduciary duty should be dismissed.

Moreover, as discussed in Point IV, above, the only supposed representation in the complaint that is attributed to Narain is ██████████████████████████████████ ████████████████████████████████████ That alone, however, does not create a personal relationship of trust and confidence. And, as set forth above, CNO did not rely on this statement in any way. First, the statement concerned ██████████████████

18

███████████████████████████████████████████████████  Second,

as CNO concedes, the statement took place when CNO was planning to terminate its reinsurance

relationship with Beechwood in light of the Huberfeld arrest—a process that culminated on

September 29, 2016 when CNO wrongfully recaptured millions of dollars of Beechwood assets

and filed two lawsuits nearly identical to the instant one.

## VI.    CNO'S CLAIMS AGAINST BRE MUST BE ARBITRATED (COUNTS 10 & 18).

CNO's cross-claims against BRe must be arbitrated under § 4 of the FAA because

they raise disputes arising under the broad scope of the arbitration provisions contained in

the Reinsurance Agreements.  As set forth below, the FAA applies to this matter, and

under that statute, disputes related to the Reinsurance Agreements must be arbitrated.

At the outset, the FAA applies to this matter because the transactions at issue

involve interstate commerce.  *See* 9 U.S.C. §§ 1, 2.  Among other reasons, the FAA applies

as the parties are citizens of multiple states and the Reinsurance Agreements apply to

policies of insurance issued to individuals in multiple states.  (Compl. ¶ 594; Lipsius Decl.,

Ex. 2 at B0000221-47; Ex. 3 at B0000031-38.)  CNO has recognized the applicability of

the FAA to these Reinsurance Agreements as it has moved this Court, "pursuant to 9

U.S.C. § 9," to confirm two interim awards entered by the arbitration panel in the CNO

Arbitration.  (ECF No. 120); *see, e.g.*, *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d

115, 121 (2d Cir. 2010) ("The parties do not dispute that the agreement at issue here affects

interstate commerce and, accordingly, there is no question that the FAA applies.").

Section 3 of the FAA requires the Court to stay an action "upon being satisfied"

that an issue in the action is "referable to arbitration."  9 U.S.C. § 3.  Under § 4, upon a

showing that a party has failed to comply with a valid arbitration agreement, the Court

"shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. §  4.

In order to determine whether the allegations contained in the pleading must be arbitrated, the court first determines whether the parties agreed to arbitrate their disputes. If so, then the court must determine "whether the dispute at issue comes within the scope of the arbitration agreement."  *ACE Cap. Re Overseas Ltd. v. Central United Life Ins. Co.,* 307 F.3d 24, 28 (2d Cir. 2002).  Here, the Reinsurance Agreements mandate arbitration and the issues raised by CNO fall within the scope of their arbitration provisions.

The allegations against BRe are virtually identical to those against Feuer and Taylor in *Bankers Conseco Life Ins. Co. v. Feuer*, No. 16-cv-7646 (S.D.N.Y.).  As previously noted, in March 2018, Judge Ramos granted a motion to compel arbitration in that action.  *Bankers Conseco Life Ins. Co.*, 2018 WL 1353279, at *1.  For that reason alone, CNO's claims should be dismissed.

Independent of Judge Ramos's decision, CNO and BRe entered into valid agreements that contain broad arbitration provisions requiring the parties to arbitrate "all disputes or differences between the Parties arising under or relating to" the Reinsurance Agreements.  (Lipsius Decl., Ex 2, Ind. Re. Ins. § 10.1(a) (emphasis added); Ex. 3, NY Re. Ins. § 10.1(a).)  CNO does not and cannot dispute the validity of those provisions because it is currently arbitrating against BRe under the Reinsurance Agreements in the CNO Arbitration.

There is a "strong federal policy in favor of arbitration" that "creates a presumption of arbitrability" such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration...."  *WorldCrisa Corp. v. Armstrong,*

129 F.3d 71, 74 (2d Cir. 1997) (citation omitted); *Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 481 (2d Cir. 2011) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." (citation omitted)).  To require arbitration, the Second Circuit holds that allegations need only "touch matters" covered by the contract containing the arbitration clause.  *WorldCrisa Corp.*, 129 F.3d at 75.  Here, CNO's cross-claims do not merely "touch matters" relating to the Reinsurance Agreements, but directly arise from the Reinsurance Agreements.  Specifically, CNO's Count 10 contends that BRe breached the Reinsurance Agreements in "numerous ways."  (Compl. ¶¶ 863-64.)  CNO's Count 18 seeks contribution and indemnity from BRe for the same alleged misconduct.  *(Id.* ¶¶ 920-22.)  CNO is already arbitrating the exact same claims and issues with BRe in the CNO Arbitration.  *See, e.g.*, *Bankers Conseco Life Ins. Co.*, 2018 WL 1353279, at *2 n.5 ("The Arbitration Demand sets forth claims for various violations and breaches of the Reinsurance Agreements.")  CNO's cross-claims must therefore be arbitrated under the FAA, and the Court must stay this action against BRe.  *See* 9 U.S.C. §§ 3-4.

To make matters worse, CNO's cross-claims against BRe are completely pretextual. CNO is bringing those claims for the sole purpose of seeking security from BRe under New York Insurance Law § 1213(c)(1)(A).  (Compl. ¶ 865.)  But CNO already sought and received security from the Panel in the CNO Arbitration based on the same Insurance Law, securing against the same claims and allegations.  And the Panel's security Orders were recently confirmed by this Court and reduced to judgment.  (ECF No. 120, 124.)  Accordingly, any claim for security in this action is barred by the doctrines of res judicata and collateral estoppel, among other grounds.  Should CNO petition this Court for any such security, BRe will present evidence demonstrating claim and issue preclusion.

## **CONCLUSION**

For the foregoing reasons, the Beechwood Parties respectfully request that the Court

enter an order granting Beechwood's partial motion to dismiss, and such other and further relief

as this Court deems just and proper.

Dated:  May 16, 2019
    Kew Gardens, New York

                LIPSIUS BENHAIM LAW LLP

              By:   */s/ Ira S. Lipsius*
                    Ira S. Lipsius
                    80-02 Kew Gardens Rd, Suite 1030
                    Kew Gardens, New York 11415
                    Tel: (212) 981-8440

                    *Attorney for Cross-Claim Defendants*
                    *Mark Feuer, the Feuer Family Trust,*
                    *Scott Taylor, the Taylor-Lau Family*
                    *Trust, Beechwood Re Holdings, Inc., B*
                    *Asset Manager LP, BAM Administrative*
                    *Services LLC, Beechwood Bermuda*
                    *Ltd., Beechwood Bermuda*
                    *International, Ltd., and Beechwood Re*
                    *(in Official Liquidation) s/h/a*
                    *Beechwood Re Ltd., and Third-Party*
                    *Defendants Dhruv Narain and*
                    *Beechwood Capital Group LLC*